**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| PRISCILLA STERLING, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 3:22-cv-00531-KHJ-MTP |
| | ) |
| THE CITY OF JACKSON, MISSISSIPPI, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT SIEMENS INDUSTRY, INC.'S BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Siemens Industry, Inc. ("Siemens") submits this brief in support of its motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 26).

**INTRODUCTION**

Clearly, the long-running and widely-reported issues with contaminated water and an unreliable water supply in Jackson are very serious. But as media articles, EPA assessments, and other reports all make clear, Jackson's water issues are complex, multifaceted, and stretch back for decades. Siemens is not responsible for each and every water-related problem in Jackson, and Plaintiffs have no viable negligence claim against Siemens for the issues raised in this case.

Siemens and the City of Jackson entered a contract in 2013 for very specific work involving the City's water and sewer systems. Among the major components, Siemens and its subcontractors (i) replaced the City's old water meters with new meters manufactured and supplied by others, and (ii) installed a new billing system for the City's Water Department to use. After the City sued Siemens for alleged problems with the meters and billing system in 2019, Siemens agreed to refund the entire contract price (nearly $90 million) to the City. The City

Council approved that full and final settlement, which is publicly available in its entirety, in 2020.

In this new action, Plaintiffs' Complaint primarily focuses on the City's alleged misconduct in failing to prevent lead contamination in drinking water and to provide reliable water flow. The very limited allegations about Siemens point to entirely different issues -- namely, meters and a billing system -- that have nothing to with water quality or supply, and which the City addressed in prior litigation. Even if true, Plaintiffs' alleged injuries from contamination and poor supply are so far removed from Siemens' contract work that they cannot be considered a reasonably foreseeable result. Thus, under Mississippi law, there can be no actionable duty owed by Siemens to Plaintiffs and the claims against Siemens cannot proceed.

Another judge in this district dismissed a previous class action in which other customers of the City's water system asserted a negligence claim against Siemens based on the same project work. In that case, the court found that Siemens (which had a contract with the City but not individual residents) owed no actionable duty to the City's customers. The same is true here. Although the injuries and damages alleged in Plaintiffs' Complaint are serious, they cannot be attributed to Siemens as a matter of law.

## BACKGROUND

As Plaintiffs note, the City's water supply system has been neglected for decades. Doc. 1 at ¶ 2. The City relies on an aging network of pipes to deliver water, including some water mains that are over 100 years old. *Id.* at ¶ 45. Plaintiffs assert that some older cast-iron piping under the City's streets has a solid band of lead every 20 feet. *Id.* at ¶ 48.

Lead from these old pipes has contaminated the City's water supply. For the 2010-2012 monitoring period – which predated the City's contract with Siemens – the City reported lead

contamination levels that should have raised concerns about the potential health risk to public water system customers. *Id.* at ¶ 51. In 2011, the Mississippi State Department of Health tagged Hinds County as "high-risk for lead poisoning," with children "especially at risk." *Id.* at ¶ 50.

Siemens signed a contract with the City in early 2013 (the "Contract"), the largest component of which covered Siemens' provision of new water meters manufactured by others, and a water-billing system for the City. A copy of the Contract, including its four amendments, is attached as Exhibit 1.[1] The City expressly agreed in the Contract that Siemens "shall not be responsible for the adequacy of the health or safety programs or precautions related to the [City's] activities or operations . . . ." Ex. 1 at § 6.3.

A dispute arose about the water meters and billing system, and the City filed a complaint against Siemens in Mississippi state court in 2019. A copy of the complaint is attached as Exhibit 2.[2] The City and Siemens subsequently entered into a settlement under which Siemens paid the City $89.8 million, or the full Contract amount. In exchange, the City released Siemens for all matters relating to the Contract. *See* Doc. 1 at ¶ 274; Ex. 1 at Amendment 4; Ex. 3 (court order approving the settlement).

---

[1] Plaintiffs reference the Contract in their complaint, and the Contract is central to their claims because Siemens' work under it gives rise to the claims against Siemens. Doc. 1 at ¶¶ 265-71. The Contract can, therefore, be considered to be part of the pleadings by this Court in deciding this motion to dismiss. *See Travelers Indem. Co. v. Forrest Cnty.*, 164 F. Supp. 3d 899, 902 (S.D. Miss. 2016) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (citations omitted)).

[2] In deciding this motion to dismiss, this Court can take judicial notice of pleadings in prior state court proceedings because they are matters of public record. *See, e.g., Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (holding that a filing in a state court action was a matter of public record that can be considered in deciding a motion to dismiss); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (same).

This is not the first purported class action filed in this court by local residents alleging damages as a result of Siemens' contract performance. In *Poindexter Park After-School Club v. Siemens Industry, Inc.*, No. 3:19-cv-00474-TSL-LRA, 2020 WL 13526629 (S.D. Miss. June 2, 2020) (Lee, J.), four Jackson residents sued Siemens "asserting several contract and tort-based claims grounded on or arising from Siemens' alleged failure to adequately discharge its obligations under [the Contract] to improve both the City's provision of water and sewer services and its billing system for these services." *Id.* at *1. Plaintiffs' causes of action included negligence, *id.,* based on allegations that Siemens' project work resulted in "economic losses caused by the loss of reliable service" and "amounts attributable to overpayment for water." *Id.* at *2.

The court dismissed all claims in *Poindexter Park*. Specific to the negligence count, the court held that "Plaintiffs [did] not state[] a cognizable claim for relief based on any failure by Siemens with respect to the water delivery system." *Id.* at *9. The court found, *inter alia*, that Siemens owed no duty of care to the plaintiffs independent of the Contract and that the breach of any duty owed under the Contract was not actionable in tort. *Id.* Furthermore, the court noted that "[u]nder Mississippi law, . . . there is no recovery for pure economic loss in claims based on a defective product." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 387 (Miss. Ct. App. 1999)).

Plaintiffs filed this new action in September 2022 seeking to represent a class of "[a]ll persons who resided in Hinds County and have been exposed to water from Jackson's Public Water System anytime from January 1, 2009 to present." Doc. 1 at ¶ 359. The start of the proposed class period predates the Contract by more than three years. Plaintiffs assert claims for professional negligence and ordinary negligence against Siemens. Doc. 1 at ¶¶ 391-409.

Plaintiffs contend that they have suffered personal injuries as a result of consuming water provided by the City that was contaminated with lead and other pollutants. Doc. 1 at ¶¶ 19-20, 313, 341, 354. They claim additional injuries due to the City's inability at times to provide them any water at all. Doc. 1 at ¶¶ 316, 326-30, 344, 357. Plaintiffs allege malfeasance by the City, numerous City officials, and the City's engineering consultant that resulted in lead-poisoning of Plaintiffs. Doc. 1 at ¶¶ 84-175, 199-202, 210-229.[3]

Plaintiffs do not allege that any act or omission of Siemens directly contaminated the water they consumed, or had any direct relationship whatsoever to old, lead-containing water supply pipes that have been under the City's streets for decades. Nor do they allege that any act or omission of Siemens directly caused any interruption of the public water supply.

Instead, Plaintiffs claim that, in connection with the Contract, (a) Siemens did not properly install 20,000 water meters; (b) some meters could not transmit readings to the City and other meters transmitted inaccurate readings; (c) the meters were incompatible with the new billing system; (d) Siemens complicated the Contract work and increased costs by hiring certain contractors who did not provide any meaningful equipment or services; (e) these problems impaired the City's ability to charge for water and required the City's attention, which led to a lack of attention or resources to repair and maintain the City's water-supply system; and (f) the diminished system revenue caused the City's credit rating to drop, which made it harder for the City to fund projects to fix the water-supply system. Doc. 1 at ¶¶ 267-75. Plaintiffs conclude by essentially alleging that Siemens' purported negligence somehow passively allowed the City's

---

[3] In a related vein, the United States filed a separate action in this district against the City on November 29, 2022, alleging violations of the Safe Water Drinking Act related to, *inter alia*, the presence of lead contamination in the City's public water system. *See United States v. City of Jackson, Mississippi*, Case No. 3:22-cv-686-HTW-LGI, Doc. 1 (S.D. Miss. November 29, 2022).

5

water-supply system to continue deteriorating, which in turn contributed to the City's overarching failure to provide safe water to Plaintiffs.  Doc. 1 at ¶ 275.

## APPLICABLE LEGAL STANDARD

This Court reviews the motion to dismiss according to the following standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A complaint does not need detailed factual allegations, but the facts alleged must be enough to raise a right to relief above the speculative level.

*Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (internal quotations and citations omitted).  Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A merely 'speculative' inference is not enough, and [a court] ignore[s] the complaint's legal conclusions in determining facial plausibility." *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (citations omitted). "At end, determining facial plausibility is a 'context-specific task' that requires [the court] to draw on [its] 'judicial experience and common sense.'" *Id.*

"[T]he same plausibility standard that applies in the Rule 12(b)(6) context also applies to Rule 12(b)(1)." *Id.* at 463-64.

## ARGUMENT

**I.  This Court lacks subject-matter jurisdiction over Plaintiffs' claims against Siemens because Plaintiffs do not have Article III standing.**

Because Plaintiffs do not have Article III standing to assert their claims against Siemens, the claims must be dismissed.  As courts of limited subject-matter jurisdiction, federal courts can only hear claims involving "Cases" and "Controversies" as defined by Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992).  To establish Article III standing, a plaintiff must show

"(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) **that the injury was caused by the defendant**, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020) (emphasis added). When there are multiple defendants, a plaintiff must have standing to sue each individual defendant. *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 542 (5th Cir. 2022) ("Standing to sue one defendant does not, on its own, confer standing to sue a different defendant.").

To satisfy the second-prong of the Article III standing inquiry, "there [must] be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant." *Bennett v. Spear*, 520 U.S. 154, 167 (1997). Further, to be fairly traceable for purposes of the standing analysis, "the defendant's violations [must have been] of a type that causes or contributes to the kinds of injuries alleged by the plaintiffs." *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368-69 (5th Cir. 2020), as revised (Aug. 3, 2020) (internal quotations and citations omitted). "The 'fairly traceable' requirement ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (cited by *Env't Texas Citizen Lobby,* 968 F.3d at 368) (citations omitted).

Plaintiffs bear the burden of establishing Article III standing. *Three Expo Events, L.L.C. v. City of Dallas, Texas*, 907 F.3d 333, 341 (5th Cir. 2018). To meet that burden at the pleading stage, Plaintiffs must "allege **facts** tending to establish that [their] injuries are fairly traceable to misconduct engaged in by [this] specific defendant[]." *High v. Karbhari*, 774 F. App'x 180, 183 (5th Cir. 2019) (emphasis added).

7

The Supreme Court has made clear that plaintiffs cannot rely on speculation to establish links in a chain of causation to meet their burden on the fairly-traceable element. *See Allen v. Wright*, 468 U.S. 737, 757-59 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In *Allen*, the plaintiffs alleged that the IRS's failure to deny tax-exempt status to racially discriminatory schools caused them injury by reducing their children's ability to receive a racially integrated education. *Id.* at 756-57. The Supreme Court refused to allow the plaintiffs to speculate as to the actions of third parties to establish the fairly-traceable element. *Id.* at 758-59. Specifically, the Supreme Court found it was "entirely speculative . . . whether withdrawal of a tax exemption from any particular school would lead the school to change its policies." *Id.* at 758. Furthermore, the Court deemed it "just as speculative whether any given parent of a child attending such a private school would decide to transfer the child to public school as a result of any changes in educational or financial policy made by the private school once it was threatened with loss of tax-exempt status." *Id.* Because the *Allen* plaintiffs could not establish the fairly-traceable element without those speculative links in the chain of causation, the Supreme Court held that the district court properly dismissed the complaint for lack of subject matter jurisdiction.

In this case, Plaintiffs likewise fail to plead sufficient facts to show that their alleged injuries are fairly traceable to Siemens' performance under the Contract. Plaintiffs claim injuries from lead and other contaminants in City-provided water and from lack of access to City-provided water during certain time periods. Doc. 1 at ¶¶ 19-20, 316, 326-30, 344, 357. Notably, Plaintiffs do *not* allege that any acts or omissions by Siemens directly caused lead to be introduced into the public water supply, or for water to be unavailable. Rather, Plaintiffs focus

8

on the improper installation of water meters, meter inaccuracy, meter incompatibility with the billing system, and the work of project subcontractors. Doc. 1 at ¶¶ 267-70.

The hypothetical chain of causation on which Plaintiffs base their claims against Siemens requires vast and impermissible speculation. In essence, Plaintiffs contend that (a) Siemens did not properly perform its Contract with the City; (b) notwithstanding Siemens' 100% refund of the Contract price to the City (plus the City keeping 100% of all equipment and other work on the project), Siemens' caused a lack of financial resources for the City to address broad and long-running problems with the water-supply system, including a diminished credit rating that made it harder for the City to fund unnamed hypothetical projects to fix the system; and (c) as a result, the City's system continued to deteriorate, contributing to the City's failure to provide safe water. Doc. 1 at ¶¶ 271-75. According to Plaintiffs, this equates to Siemens "causing" Plaintiffs' injuries.

But there is a fatal flaw in Plaintiffs' logic. Plaintiffs can only speculate that the City and its officials would have used additional resources and time to fix the lead pipes and other problems that are actually tied to Plaintiffs' alleged injuries. Plaintiffs plead no specific facts which, if true, would actually link their injuries to anything Siemens did or did not do under the Contract.[4]

Just as in *Allen*, such speculation cannot establish the fairly-traceable element here. As a matter of law, the Complaint's allegations against Siemens do not permit this Court to conclude that Siemens' alleged misconduct—involving problems with water meters and a billing system—

---

[4] In stark contrast, Plaintiffs' Complaint includes numerous pages describing alleged malfeasance by City officials, including a decision not to spend available funds to solve known lead-contamination problems and a willful cover-up of the lead hazard in the City's water. Doc. 1 at ¶¶ 84-175, 199-202.

9

is "of a type that causes or contributes to the kinds of injuries alleged by the plaintiffs." *Env't Texas Citizen Lobby*, 968 F.3d at 368-69 (internal quotations and citation omitted).  Therefore, this Court should dismiss Plaintiffs' claims against Siemens based upon the failure to establish Article III standing.

      **II.**      **Plaintiffs' negligence claims fail as a matter of law**

Plaintiffs' only causes of action against Siemens are for ordinary negligence and professional negligence.  Those claims fail as a matter of law.

      **A. Because Siemens owed no legal duty to Plaintiffs, the claim for ordinary negligence fails.**

Plaintiffs' ordinary negligence claim against Siemens should be dismissed because Siemens owed no duty to Plaintiffs.  To survive a motion to dismiss on a negligence claim, the plaintiff must "allege facts necessary to establish a legal duty or standard of care."  *Ward v. Life Invs. Ins. Co. of Am.*, 383 F. Supp. 2d 882, 889-90 (S.D. Miss. 2005); *accord Bevis v. Linkous Constr. Co.*, 856 So. 2d 535, 540 (Miss. Ct. App. 2003) (complaint must include "allegations setting out a factual scenario giving rise to the alleged duties").  "The existence *vel non* of a duty of care is a question of law to be decided by the Court."  *Foster by Foster v. Bass*, 575 So. 2d 967, 972 (Miss. 1990).

Plaintiffs seemingly rely on two sources for the possible existence of a legal duty owed to them by Siemens.  First, Plaintiffs seek to piggyback a duty to the general public onto Siemens' contract obligations to the City.  Doc. 1 at ¶ 266.  Second, Plaintiffs apparently rely on general common law pertaining to duty in ordinary negligence cases, without regard to Siemens' Contract with the City.  Mississippi law does not support the existence of a duty in this case based on either source.

10

### 1. The Contract cannot be the source of a duty to support an ordinary negligence claim.

Plaintiffs cannot rely on the Contract to support their ordinary negligence claim. "Under Mississippi law, 'the breach of a contract (whether described as "negligent" or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law.'" *Poindexter Park*, 2020 WL 13526629, at *9 (quoting *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss Ct. App. 2015)); *accord Hodges v. Allstate Ins. Co.*, No. No. 3:21-CV-536-KHJ-MTP, 2022 WL766452, at *3 (S.D. Miss. March 11, 2022).[5]

### 2. Because Plaintiffs' injuries were not the reasonably foreseeable result of Siemens' alleged conduct, Siemens owed no duty to Plaintiffs.

While the Contract cannot create a duty supporting Plaintiffs' ordinary negligence claim, neither does Mississippi tort law support Plaintiffs' claims in this case. Under settled Mississippi law, "the important component of the **existence of the duty** is that the injury is **reasonably foreseeable**, and thus it is appropriate for the trial judge to decide." *Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004) (internal quotations and citations omitted) (alterations in original). To satisfy the foreseeability requirement, "the plaintiff's injuries and damages [must] fall within a particular kind or class of injury or harm which reasonably could be expected

---

[5] Even if Plaintiffs could rely on a contract as a source of duty to support their negligence claim (and they cannot under Mississippi law), they still would have an insurmountable hurdle— Plaintiffs are not third-party beneficiaries of the Contract. The Contract expressly disavows any intent for third parties to have any rights or benefits under the Contract. Ex. 1 at § 12.2. Under Mississippi law, "unambiguous clauses that prohibit third parties from being treated as beneficiaries to the contract must be accepted as the intent of the parties and enforced as written." *Poindexter Park*, 2020 WL 13526629, at *6 (internal quotations and citations omitted); *accord Garrett Enters. Consol., Inc. v. Allen Utils., LLC*, 176 So. 3d 800, 805-06 (Miss. Ct. App. 2015).

11

to flow from the defendant's negligence." *Fried Alligator Films, LLC v. New York Life Ins. Co.*, No. 4:16-CV-175-DMB-JMV, 2017 WL 4355825, at *8 (N.D. Miss. Sept. 29, 2017) (quoting *Glover ex rel. Glover v. Jackson State Univ.*, 968 So.2d 1267, 1278 (Miss. 2007)). "The rationale behind this foreseeability requirement is that no one is expected to guard against events which are not reasonably to be anticipated or that are so unlikely that the risk would be commonly disregarded." *Karpovs v. Mississippi*, 663 F.2d 640, 649 (5th Cir. 1981) (applying Mississippi law). "[T]he standard for determining whether the actor should have foreseen the probability of harm from his conduct is an external one, from the point of view of the actor prior to occurrence." *Foster by Foster*, 575 at 975 (internal quotations and citations omitted).

The Mississippi Supreme Court rejects the existence of a duty when a plaintiff's injuries involve "an unusual, improbable, and extraordinary occurrence." *Rein*, 865 So. 2d at 1146. In *Rein*, a woman who lived in a nursing home died after being bitten by fire ants that had invaded the facility. *Id.* at 1137. The trial court dismissed plaintiff's claims against the construction company because it could not have reasonably foreseen the woman's death due to fire-ant bites, and thus the construction company owed no duty. *Id.* at 1146. Affirming the dismissal, the Mississippi Supreme Court held that the woman's death "was a mere possibility, and no more," and thus not sufficiently foreseeable to establish a legal duty owed by the construction company. While the construction company "may have reasonably foreseen an insect infestation as a result of improper construction techniques and poor planning of the drainage system," it "could not [have] reasonably foreseen that Mrs. Rein would be attacked and killed by fire ants two years [later]." *Id.* at 1146.

Applying an analogous foreseeability standard under maritime law, the Fifth Circuit held that a plaintiff's injuries are not foreseeable when "beyond the pale of general harm which

reasonably might have been anticipated" by the allegedly negligent defendant. *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 213 (5th Cir. 2010) (internal quotations and citations omitted). In that case, a group of plaintiffs sued companies responsible for dredging the wetlands near New Orleans, which allegedly amplified the damage caused by Hurricane Katrina. *Id.* at 205-06. In affirming dismissal, the court noted that there was "no knowledge of an immediate and pending natural disaster that would affect how [a dredging company] conducted [its] dredging operations." *Id.* at 213. The court further reasoned that "it cannot be said that any dredger could have foreseen that performing its dredging activities negligently—as opposed to in conformity with the Corps of Engineers' specifications—would probably result in the series of events culminating in the catastrophic damages that occurred during Hurricane Katrina." *Id.* Based on that analysis, the court concluded that the dredging companies owed no duty to the plaintiffs because "[t]he damages alleged here are beyond the pale of general harm which reasonably might have been anticipated by negligent dredgers." *Id.* (internal quotations and citation omitted).

Just as with the construction company in *Rein* and the wetlands dredgers in *Great Lakes Dredge & Dock*, Siemens could not have reasonably foreseen that an alleged failure to properly install water meters and a customer billing system, as Plaintiffs allege, would cause Plaintiffs to suffer injuries from lead in decades-old pipes and the City being unable to provide a reliable flow of water to its customers. Indeed, the sequence of events to get to that result could hardly have been deemed possible, let alone reasonably foreseeable, prior to the occurrence. For example, Siemens would have had to reasonably foresee that (a) City officials would ignore and hide a known lead contamination problem, including firing a whistleblower employee who sought to alert the public; (b) City officials would decide to draw water from sources that exacerbated the

lead problem; (c) the engineer hired by the City to solve the lead problem would actually make it worse; and (d) the City would fail to comply with a State-mandated compliance plan. *See generally* Doc. 1 at ¶¶ 36-231. The alleged sequence of events linking problems with water meters and the billing system to the serious personal injuries and economic harms alleged by Plaintiffs is "an unusual, improbable, and extraordinary occurrence." *Rein*, 865 So. 2d at 1146.

Because the harm to Plaintiffs was not the reasonably foreseeable consequence of Siemens' alleged conduct, Siemens owed no duty to Plaintiffs. Thus, the ordinary negligence claim fails as a matter of law.

      **3. Based on very similar allegations, the *Poindexter Park* court concluded that Siemens owed no duty to Jackson water customers and thus dismissed the customers' negligence claim.**

The ruling by this court in the *Poindexter Park* class action—a case with extensive overlapping allegations concerning economic harm—confirms the absence of a duty sufficient to support Plaintiffs' ordinary negligence claim. As explained above, the *Poindexter Park* case involved claims by Jackson water customers for the same economic harms claimed by Plaintiffs, and this court dismissed those customers' negligence claim due to lack of a duty. Just as Plaintiffs here claim economic losses due to (a) the absence of reliable water supply and (b) charges for water that was not delivered, Doc. 1 at ¶¶ 316, 328-30, 344, 357 & p. 93, § (d), the *Poindexter Park* plaintiffs sought damages for (a) "economic losses caused by the loss of reliable service" and (b) "amounts attributable to overpayment for water." *Poindexter Park*, 2020 WL 13526629 at *2. Likewise, the allegations in the complaints in *Poindexter Park* and this case concerning the duty element of the negligence claims are closely similar.[6]

---

[6]     Plaintiffs here make only the following conclusory allegations about the existence of a duty:

266. The Siemens Defendants knew that the services they were to provide for the City were necessary for the continued functioning of its [Public Water System], which they knew that residents of Jackson would depend on. They knew that their work was for the benefit of residents of Jackson and that if their project failed, residents of Jackson would suffer. As a result, and because it is obvious to contractors performing work for a government entity related to its services that this work being requested [*sic*] for the benefit of that government's people, the Siemens Defendants' duties of care to the City of Jackson (and related entities) also extended to Plaintiffs (as residents of Jackson).

Doc. 1 at ¶ 266.

Additional allegations about duty in Count IV added nothing substantive to that general statement:

402. The Siemens Defendants undertook, for consideration, to render services for the City of Jackson, which they should have recognized as necessary for the protection of Plaintiffs.

403. Based on its undertaking, the Siemens Defendants had a duty to Plaintiffs, as users of water provided by [the Public Water System], to exercise a reasonable degree of care.

Doc. 1 at ¶¶ 402-03.

The duty allegations in *Poindexter Park* were essentially the same:

> Siemens undertook numerous obligations owed to the [City's water-sewer customers], including "the duty to install numerous infrastructure and hardware components such as, but not necessarily limited to, water delivery and drainage mains and pipes and the installation of properly working meters in a functioning and workmanlike condition" [and the] "duty to inspect all components of the water delivery system as installed, upgraded and maintained to ensure that those components, including but not limited to water mains and meters, were functioning properly as intended. [Siemens] accordingly held and holds an ordinary duty of care to the [customers of the City water and sewer authority]."
>
> . . . Siemens knew or should have known that the deficient performance of its obligations to Plaintiffs and all [of the City's water-sewer customers] would foreseeably result in the interruption of water services and in the inaccurate overbilling to [customers] without effective recourse to said [customers] for delivery of water and sewer services. Despite this knowledge, [Siemens] negligently breached its duty of ordinary care owed to Plaintiffs. As a proximate result of [Siemens'] tortious and negligent breach, Plaintiffs have suffered direct and foreseeable damages, including but not limited to foreseeable economic losses in the form of inaccurate overbillings and the cost and expense of disputing and resolving said inaccurate overbillings as recited herein. Plaintiffs have further incurred

15

The court in *Poindexter Park* dismissed the negligence claim because it concluded Siemens owed no duty to those plaintiffs. Specifically, the Court held that "[b]ut for the contract, however, Siemens had no . . . duty." *Id.* at *9. There is no substantive difference between *Poindexter Park* and this case regarding the duty issue. The ordinary negligence claim in *Poindexter Park* failed due to the absence of a duty, and the ordinary negligence claim in this case fails for the same reason.

### B. Liability for professional negligence does not extend to members of the general public.

Plaintiffs' claim for professional negligence should be dismissed because an engineer or other professional's liability under this cause of action does not extend to members of the general public, i.e. Plaintiffs.

"Mississippi law allows third parties to rely on a design professional's contractual obligation to the owner . . . [, and] because of this contractual obligation to the owner, the [professional] owes a further duty, sounding in tort, **to the contractor who relies upon the design to his economic detriment**." *Magnolia Const. Co. v. Mississippi Gulf S. Eng'rs Inc.*, 518 So. 2d 1194, 1202 (Miss. 1988) (internal quotations and citations omitted) (emphasis added). Mississippi courts have referred to both architects and engineers as design professionals who owe this further duty. *Id.* Courts have recognized the limited scope of this professional-negligence duty, only applying it to parties who utilize the professional's design, such as general contractors, subcontractors, and a contractor's surety. *Id.*; *accord S. Indus. Contractors, LLC v.*

---

proximate and foreseeable damages in the form of unreasonable interruptions to the provision of necessary water services that would not have occurred but for [Siemens'] negligent breach of its ordinary duty of care.

*Poindexter Park*, 2020 WL 13526629, at *9 (alterations in original).

16

*Neel-Schaffer, Inc.*, No. 1:17CV255-LG-JCG, 2019 WL 2870102, at *3 (S.D. Miss. July 3, 2019) (duty extends to contractor); *Mayor & City Council of Columbus, Miss. v. Clark-Dietz & Assocs.-Eng'rs Inc.*, 550 F. Supp. 610, 624 (N.D. Miss. 1982) (same); *Owen v. Dodd*, 431 F. Supp. 1239, 1242 (N.D. Miss. 1977) (same). Courts applying Mississippi law have not suggested that this professional-negligence duty extends to members of the general public. And that makes sense because the general public does not foreseeably rely on the professional's work in the same manner that a contractor does.

Because Plaintiffs do not allege that they relied in any way on the design work undertaken by Siemens, Siemens cannot be liable under professional-negligence theories to Plaintiffs. Plaintiffs' professional-negligence claim fails as a matter of law.

### III. Plaintiffs cannot obtain much of relief that they seek as a matter of law.

Even if the Court does not dismiss the negligence claims against Siemens in their entireties (and the Court should do so), the Court should dismiss Plaintiffs' claims for medical monitoring and injunctive relief.

#### A. Plaintiffs cannot obtain the requested medical monitoring relief.

Plaintiffs seek to have this Court order that Siemens "[e]stablish a medical monitoring process . . . for residents exposed to unsafe water," Doc. 1 at p. 93, ¶ (f), but Mississippi law does not permit that requested relief. Under settled Mississippi law, "[e]xposure to a potentially harmful substance does not in itself constitute a personal injury." *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 5 (Miss. 2007). A court therefore cannot award "medical monitoring costs for mere exposure to a harmful substance" as damages. *Id.* at 5-6. By the same logic, this court should not award Plaintiffs an injunction requiring Siemens to provide medical monitoring; such an injunction would simply be an end run around the prohibition on medical-

monitoring damages. A plaintiff must establish a physical injury before any form of medical monitoring would be a permissible form of relief. *Id.* In light of that controlling law, this Court should dismiss Plaintiffs' request for an order requiring medical monitoring based only on exposure to unsafe water.

### B. Plaintiffs cannot obtain the injunctive relief they seek against Siemens.

This Court should dismiss Plaintiffs' request for wide-ranging equitable relief against Siemens because Siemens lacks the ability to take the requested actions. In order for a court to enter permanent injunctive relief against a particular party, that party must be "in a position to provide the requested relief." *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008); *see also Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (en banc) (injunction against two state officials was improper because those officials "have no power to redress the asserted injuries"). That's just common sense. So, for example, when a plaintiff sought to obtain an injunction prohibiting the release of certain pollutants from an entity that did not own or control the offending facility, the court threw out the request because the defendant in question could not comply if the court entered the requested injunction. *See Taylor v. Denka Performance Elastomer LLC*, 332 F. Supp. 3d 1039, 1050-51 (E.D. La. 2018).

Here, Plaintiffs seek an injunction with which Siemens could not possibly comply. Plaintiffs ask that Siemens be ordered to take extensive actions with respect to the infrastructure and operation of the water supply system. Doc. 1 at p. 93, ¶¶ (a)-(e), (h)-(i). But since Plaintiffs do not allege that Siemens owns or controls the system, Siemens cannot provide the requested relief. As a result, that request for injunctive relief should be dismissed as to Siemens.

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against Siemens.

Respectfully submitted this 12th day of December, 2022.

>*/s/ Roy D. Campbell, III*
>Roy D. Campbell, III
>Simon Turner Bailey
>BRADLEY ARANT BOULT CUMMINGS LLP
>One Jackson Place, Suite 1000
>188 East Capitol Street
>Jackson, MS 39201
>Telephone:  (601) 948-8000
>Facsimile:  (601) 948-3000
>rcampbell@bradley.com
>sbailey@bradley.com
>
>*Attorneys for Defendant Siemens Industry, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2022, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

>*/s/ Roy D. Campbell, III*
>OF COUNSEL