**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

PRISCILLA STERLING, et al.,    )
                                )
       Plaintiffs,       )
                                )     Case No. 3:22-cv-00531-KHJ-MTP
v.                         )
                                )
THE CITY OF JACKSON, MISSISSIPPI,  )
et al.,                     )
                                )
       Defendants.    )
                                )

**DEFENDANT SIEMENS INDUSTRY, INC.'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Siemens Industry, Inc. ("Siemens") submits this reply brief in support of its motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 26).

**INTRODUCTION**

Plaintiffs attempt to avoid dismissal by relying on factual allegations not pled in their Complaint and legal standards that do not exist under Mississippi law. Contrary to Plaintiffs' position that a "factual record and experts" (Doc. 40 at 6) are necessary to decide the legal issues raised in Siemens' motion to dismiss, those purely legal issues can and must be resolved now.

This Court must determine upfront whether it has subject-matter jurisdiction, and here, jurisdiction is lacking. Plaintiffs failed to meet their burden to establish Article III standing by showing that their alleged injuries are fairly traceable to Siemens—an issue that this Court decides based on the allegations in Plaintiffs' Complaint, not speculative assertions sprinkled throughout Plaintiffs' opposition brief.

1

Even assuming Plaintiffs have shown subject-matter jurisdiction, the Court must also decide whether Plaintiffs have stated a claim against Siemens based on the allegations actually pled in the Complaint. They have not. This is the second putative class action filed on behalf of presumably tens of thousands of residents against Siemens based on its contract work for the City and the City's longstanding, wide-ranging water problems. The prior case was dismissed, with the court holding that the private party plaintiffs had failed to plead "'a duty of care recognized by tort law.'" *Poindexter Park After-School Club v. Siemens Indus., Inc.*, No. 3:19-cv-00474-TSL-LRA, 2020 WL 13526629, at *9 (S.D. Miss. June 2, 2020) (quoting *Clausell v. Bourque*, 158 So.3d 384, 391 (Miss. Ct. App. 2015)). The same is true here.

This Court also must decide the legal question whether any member of the general public can bring a claim for professional negligence under Mississippi law. Plaintiffs cite zero cases in which a Mississippi court has even hinted that targeted claim can be universally asserted. That makes sense—a plaintiff asserting a professional negligence claim must have relied on the professional work of another in performing its own work, not just have used or somehow been impacted by the end product.

For all those reasons, Plaintiffs' Complaint against Siemens should be dismissed it its entirety.

## LEGAL STANDARD AND FACTUAL ALLEGATIONS

"Where, as here, the movant mounts a facial attack on jurisdiction [in a Rule 12(b)(1) motion] based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Comms, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (internal quotations and citations omitted).

Likewise, "when deciding a Rule 12(b)(6) motion, a district court generally must limit itself to the contents of the pleadings, including attachments thereto." *Estes v. JP Morgan Chase Bank, Nat. Ass'n*, 613 F. App'x 277, 280 (5th Cir. 2015) (internal quotation and citation omitted). In other words, "Rule 12(b)(6) motions are decided based on what was actually pleaded." *Okeke v. Am. Express Co.*, No. 3:15CV455-DPJ-FKB, 2015 WL 7078784, at *2 (S.D. Miss. Nov. 13, 2015) (citations omitted).

Given the very few and exceedingly conclusory assertions against Siemens in the Complaint, Plaintiffs' opposition brief is forced to wander far beyond the allegations actually pled and relevant to Siemens' motion. Among other things, Plaintiffs repeatedly and improperly rely on stories from internet websites, as well as disputed allegations from completely separate litigation that the City ultimately settled.[1] Doc. 40 at 7, 8 & n.1, 11 n.2, 14, 21 & n.8. Plaintiffs' Opposition also repeatedly makes brand new factual assertions that are nowhere to be seen in the Complaint itself.

Indeed, Plaintiffs' Complaint focuses on decades of allegedly willful failure by the City and its officials to address known problems with lead contamination and water-supply reliability, followed by flawed efforts from the City's contractor Trilogy. Plaintiffs' opposition brief, however, completely reverses course. Attempting to avoid dismissal, Plaintiffs now try to re-characterize water meters and a billing system as a key "cause" of separate lead-contamination and water-supply issues that Plaintiffs admit actually long pre-dated Siemens' Contract.[2] But

---

[1] While the Court can take judicial notice of the filing of state-court pleadings because the filing is an undisputed matter of public record, *see* Doc. 27 at 3 n.2, the Court cannot take judicial notice of disputed allegations contained in such pleadings. *See, e.g., Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830-31 (5th Cir. 1998); *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007).

[2] Capitalized terms have the same meaning in this brief as in Siemens' opening brief.

because Motions to Dismiss are resolved based on allegations in complaints rather than narratives in briefs, Plaintiffs' new assertions and recharacterizations cannot prevent dismissal.

## ARGUMENT

**I.      The Court lacks subject-matter jurisdiction over Plaintiffs' claims against Siemens because Plaintiffs do not have Article III standing.**

The existence of subject-matter jurisdiction is a threshold inquiry for the Court. Plaintiff's response to Siemens' jurisdictional argument, addressed near the end of their brief, fails to show that Plaintiffs met their burden of establishing Article III standing.[3]

Plaintiffs concede that (i) they must show that their injuries are fairly traceable to Siemens' conduct in order to establish standing, (ii) "[t]raceability requires something more than conjecture," and (iii) they must "show[] that defendant's violations were of a type that causes or contributes to the kinds of injuries alleged by the plaintiffs."  Doc. 40 at 19-20 (internal quotations, citations, and emphases omitted).  They do not, however, squarely address the Complaint's failure to meet the "no-conjecture" requirement.

While Plaintiffs correctly note that they need not prove Siemens "caused the precise harm suffered by the plaintiffs," Doc. 40 at 20 (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir. 1996)), Plaintiffs still must plead facts establishing the steps in the chain of causation to show that their injuries are fairly traceable to Siemens' conduct.  The Supreme Court held unequivocally in *Allen v. Wright* that a plaintiff cannot establish links in that logical chain by resorting to speculation about how third parties will act.  468 U.S. 737, 757-59 (1984).  Indeed, the Supreme Court has made clear its "reluctan[ce] to endorse standing theories

---

[3] Although Plaintiffs' brief references their "nuisance" claim, *see, e.g.*, Doc. 40 at 12, 13, 19, there is no nuisance claim asserted in the Complaint.

4

that require guesswork as to how independent decisionmakers will exercise their judgment."
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412-13 (2013).

Trying to avoid the holding in *Allen*, Plaintiffs argue that Siemens' conduct essentially disrupted unspecified *other* projects to mitigate the City's water-contamination and reliable-supply problems. But the Complaint contains no such allegations. Instead, the Complaint makes the generalized allegation that lower-than-anticipated revenues under the Siemens Contract inherently meant the City lacked "the attention or resources to repair and maintain the PWS or address known problems with equipment, infrastructure, and staffing." Doc. 1 at ¶ 271.

That sort of "conclusory allegation" is not sufficient to avoid dismissal. *See Beavers v. Metro Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (internal quotation marks omitted). Instead, to establish that alleged injuries from water contamination and unreliable supply are fairly traceable to Siemens, Plaintiffs would have had to include specific allegations that the City and its officials (*i.e.*, independent decisionmakers) would have otherwise devoted time and attention to those problems. Plaintiffs made no such allegation in the Complaint (which in fact tells the opposite story, *i.e.,* that City officials consistently neglected massive water supply and quality problems, both long before and after Siemens had anything to with the City's meter and billing systems, s*ee, e.g.*, Doc. 1 at ¶¶ 2-3, 84-175, 199-202).

Because "the plaintiff[s] do[] not carry [their] burden clearly to allege facts demonstrating that [they are] proper part[ies] to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015) (internal quotations and citations omitted).

## II.    Plaintiffs' negligence claims fail as a matter of law.

### A.  Because Siemens owed no legal duty to Plaintiffs, the claim for ordinary negligence fails.

As Siemens demonstrated in its opening brief, Plaintiffs' ordinary-negligence claim fails because Siemens owed no duty to Plaintiffs.[4]

#### 1.  Because Plaintiffs' injuries were not the reasonably foreseeable result of Siemens' alleged conduct, Siemens owed no duty to Plaintiffs.

Seeking to salvage an ordinary-negligence claim, Plaintiffs' brief misstates controlling Mississippi law on how to determine whether a duty exists.  Plaintiffs contend that "[n]early any citizen can assert a claim for breach of the universal duty of reasonable care," subject only to a purported exception that a claim cannot be asserted for an "unfathomable type of danger."  Doc. 40 at 9-10.  Mississippi courts, however, have never recognized a "universal duty" with only an unfathomable-injury exception.  Instead, a duty exists only when "the injury is reasonably foreseeable," *Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004) (internal quotations and citations omitted), as assessed "from the point of view of the actor prior to occurrence," *Foster by Forster v. Bass*, 575 So. 2d 967, 975 (Miss. 1990) (internal quotations and citations omitted).

Contrary to Plaintiffs' argument, the analysis whether Siemens owed a duty to Plaintiffs must focus on the injuries for which Plaintiffs seek relief, namely, (i) bodily injuries from lead in decades-old pipes, and (ii) economic losses from the City's failure to provide a reliable water flow.  Taking Plaintiffs' pleaded allegations at face value, if Siemens could not have reasonably foreseen that its performance of a Contract focused on installation of water meters and a billing

---

[4] Plaintiffs do not dispute that the Contract cannot be the source of a duty to support their ordinary-negligence claim.

system would cause injuries of that "particular kind or class" to members of the general public, then Siemens had no duty that can support a negligence claim in this case. *See Fried Alligator Films, LLC v. N.Y. Life Ins. Co.*, No: 4:16-CV-175-DMB-JMV, 2017 WL 4355825, at *8 (N.D. Miss. Sept. 29, 2017) (quoting *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1278 (Miss. 2007)).

Plaintiffs seek to widen the circumstances in which a legal duty exists by arguing that Siemens need only have foreseen "any expected category of risk," Doc. 40 at 12, not the particular kind or class of injuries actually alleged in the Complaint. That overbroad analysis cannot be squared with Mississippi law. As the Fifth Circuit has made clear, the purpose of Mississippi's reasonably-foreseeable standard for determining the existence of a negligence duty is that "no one is expected to guard against events which are not reasonably to be anticipated or that are so unlikely that the risk would be commonly disregarded." *Karpovs v. Mississippi*, 663 F.2d 640, 649 (5th Cir. 1981).

In addition to misstating the applicable standard, Plaintiffs' Opposition is flat wrong in claiming that "foreseeability [is] a factual question that only a jury can resolve". Doc. 40 at 13. The case on which Plaintiffs rely concerned foreseeability as part of the *causation* analysis, not foreseeability for purposes of the *duty* analysis. *See Eli Invs., LLC v. Silver Slipper Casino Venture, LLC*, 118 So. 3d 151, 154-56 (Miss. 2013). Mississippi law is crystal clear that "[w]hile duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury." *Rein*, 865 So. 2d at 1143 (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999)).

Finally, in arguing that they satisfied the reasonably-foreseeable standard, Plaintiffs try to rely on numerous assertions not contained in their Complaint. They variously suggest, for

example, that Siemens knew about state reports identifying the City's water problems prior to the Contract, Doc. 40 at 7, that Siemens "pitched the project as a part of a solution to the system's historical problems, of which it was well aware," Doc. 40 at 13, and that "when a PWS, especially one like Jackson's, breaks down, the most likely adverse consequences are water contamination, delivery problems, and billing issues." Doc. 40 at 11-12. But even assuming for the sake of argument that these disputed assertions are both entirely correct and sufficient to meet foreseeability requirements under Mississippi law, these new allegations outside the Complaint cannot be considered in deciding a motion to dismiss.

Based on the Complaint's actual allegations, there is no basis to conclude that Siemens should reasonably have foreseen that its conduct in performing the work under the Contract would lead to water customers' injuries from lead contamination and an unreliable water supply. Those injuries are simply not of the particular class or kind that would typically flow from alleged problems with the performance of Siemens' work. Just as the construction company in *Rein* "may have reasonably foreseen an insect infestation as a result of improper construction techniques . . . [but] could not [have] reasonably foreseen that [a nursing home resident] would be attacked and killed by fire ants two years after construction of the [nursing home]," 865 So. 2d at 1146, Siemens would not have reasonably foreseen that taking on a meter and billing project makes it responsible for preventing the lead-contamination and water-supply issues at the heart of Plaintiff's claims.[5] As a result, Siemens owed no duty to Plaintiffs for those particular injuries, and the ordinary-negligence claim should be dismissed.

---

[5] Notably, Plaintiffs' misconception of duty, if applied as law, would open the door to nearly limitless liability for anyone who impacts City revenues. Under Plaintiffs' universal-duty view, anyone injured anytime because the City might theoretically have provided more or better services with more revenues would have a cause of action against anyone else who allegedly

**2. Based on very similar allegations, the *Poindexter Park* court concluded that Siemens owed no duty to the City's water customers and thus dismissed the customers' negligence claim.**

Siemens' opening brief explained that another judge in this district has already decided Siemens owed no duty directly to the City's water customers arising from Siemens' performance under the Contract. Doc. 27 at 14-16 (citing *Poindexter Park*, 2020 WL 13526629). The *Poindexter Park* plaintiffs alleged the same misconduct that Plaintiffs allege here (flawed water meters and billing system), brought the same claim that Plaintiffs bring here (ordinary negligence), and claimed the same economic injuries that Plaintiffs claim here (economic losses from unreliable service). The result in *Poindexter Park*—dismissal of the ordinary-negligence claim—should also be ordered here.

Plaintiffs' efforts to distinguish *Poindexter Park* are unavailing.

First, Plaintiffs seize on the *Poindexter Park* court's reliance on the economic loss rule as one basis for dismissal of the ordinary-negligence claim.[6] But that's a red herring: after addressing the economic loss rule, the *Poindexter Park* court went on to hold that the plaintiffs failed to establish the existence of any duty to support an ordinary-negligence claim. As Siemens' opening brief demonstrates, the allegations concerning the duty element in the *Poindexter Park* complaint and Plaintiffs' Complaint are essentially the same. Doc. 27 at 14 n.6. Plaintiffs neither dispute the overlap nor credibly explain why the *Poindexter Par*k court's conclusion that those allegations were insufficient to establish a duty is unpersuasive here.

---

deprived the City of revenue by breaching a contract or not paying a bill. That is not the law in Mississippi.

[6] Siemens has not asserted the economic loss doctrine as a basis for dismissal of the ordinary-negligence claim in this case.

Second, Plaintiffs suggest that the *Poindexter Park* ruling on the absence of an ordinary-negligence duty should be disregarded because "the economic loss doctrine had already eliminated tort duties." Doc. 40 at 17. But in reality, the *Poindexter Park* court squarely reached the question of whether there was a tort duty because the plaintiffs in that case had made allegations that could fall outside the economic loss rule. 2020 WL 13526629, at *9.

Third, Plaintiffs argue that *Poindexter Park* does not apply because their negligence claim arises from services, not products, and they contend that the economic loss doctrine does not apply to claims based on provision of services. Doc. 40 at 18. But that argument essentially tries to rewrite Plaintiffs' Complaint. Plaintiffs alleged that Siemens was negligent because it installed water meters that (i) transmitted no or inaccurate readings to the City, Doc. 1 at ¶¶ 267-68, and (ii) would not pair with Siemens' billing software, Doc. 1 at ¶ 269. As Plaintiffs never alleged that Siemens was negligent in providing any services unrelated to the water meters and billing system, their effort to distinguish *Poindexter Park* fails on the facts.[7]

Finally, Plaintiffs argue that the *Poindexter Park* duty ruling has no relevance here because Plaintiffs have sought damages for personal injuries, unlike the *Poindexter Park* plaintiffs. Doc. 40 at 17. But that distinction hurts, rather than helps, Plaintiffs. As discussed above, a defendant owes a tort duty under Mississippi law to prevent an injury only if "the injury is 'reasonably foreseeable.'" *Rein*, 865 So.2d at 1146 (citation omitted). As compared to the economic injuries alleged in *Poindexter Park* (*e.g.*, overbilling for water services), the physical

---

[7] In addition, Plaintiffs overlook that the *Poindexter Park* court considered allegations related to both products and services in concluding that Siemens did not owe Jackson residents a tort duty with respect to performance of the Contract. 2020 WL 13526629, at *9.

injuries alleged here (*e.g.*, lead poisoning) are far *less* foreseeable consequences of an allegedly defective water-metering-and-billing system.

The bottom line is this: *Poindexter* Park is directly on-point authority, from this district, confirming Siemens owed no common-law duty to Plaintiffs.

### B. Liability for professional negligence does not extend to members of the general public.

Siemens' opening brief also shows that Plaintiffs' professional-negligence claim must be dismissed because under Mississippi law, this claim cannot be asserted by members of the general public.

In responding, Plaintiffs do not cite any Mississippi case that has ever held or suggested that a professional-negligence claim can be asserted by members of the general public who claim to be affected in some adverse way by a professional's work. Indeed, if a professional-negligence claim swept that broadly, there would be no difference between professional-negligence and ordinary-negligence claims.

Plaintiffs make two meritless arguments in opposition to dismissal of this claim. First, they claim that limiting the claim to persons who relied on the professional's work "would be at odds with Mississippi law, which recognizes that engineers' duties of professional care arise from the common law, independent of any contract." Doc. 40 at 19 (citing *John C. Nelson Const., LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222-KS-MTP, 2020 WL 5578692, at *3 (S.D. Miss. Sept. 17, 2020)). But just because Mississippi looks to the common law for a professional's standard of care does not mean that Mississippi cannot base the duty underlying a professional-negligence claim on a professional's contractual obligations to the owner. *See Magnolia Const. Co. v. Miss. Gulf S. Eng'rs Inc.*, 518 So. 2d 1194, 1202 (Miss. 1988) (duty in a professional-negligence claim arises from professional's contract with the owner).

Second, Plaintiffs argue that Siemens is advocating for a contractual privity requirement. In its opening brief, however, Siemens noted that Mississippi recognizes professional negligence claims by a variety of entities—such as general contractors, subcontractors, and contractors' sureties—who use a professional's design. Doc. 27 at 16. Neither the Mississippi courts nor Siemens have suggested that contractual privity is required.

In sum, Mississippi has created a cause of action for professional negligence with a limited scope. Because Plaintiffs do not fall within that scope, their claim should be dismissed.

### III.    Plaintiffs cannot obtain the requested medical monitoring relief as a matter of law.

While Plaintiffs have abandoned their request for injunctive relief, they still improperly seek an order that Siemens "[e]stablish a medical monitoring process . . . for residents exposed to unsafe water." Doc. 1 at p. 97. Plaintiffs do not dispute that the Mississippi Supreme Court has expressly rejected medical monitoring based on mere exposure without actual symptoms. Doc. 40 at 22 (citing *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 5 (Miss. 2007)). Because the order that Plaintiffs seek is impermissible under Mississippi law, that aspect of the Complaint should be dismissed.

In response, Plaintiffs make two failed arguments. First, they suggest that the requested relief should remain in the Complaint because all the Plaintiffs allege that they have symptoms. Plaintiff Becker, however, does not allege any physical injury. Doc. 1 at ¶¶ 326-29. More importantly, the medical-monitoring relief sought in the Complaint is not limited to the named Plaintiffs, nor is it limited to residents with symptoms. As a result, the requested relief is impermissible under Mississippi law.

Second, Plaintiffs suggest that this Court, sitting in diversity in a case where Mississippi law applies, should be open to ignoring Mississippi's strict limits on medical-monitoring and

12

instead rely on California and West Virginia standards for medical monitoring in lead-exposure

cases.  Doc. 40 at 23.  The Fifth Circuit has made clear, however, that in diversity cases, federal

courts must apply the decisions of the applicable state's highest court.  *See Camacho v. Ford

Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021).  Thus, Plaintiffs' invitation to ignore the

Mississippi Supreme Court's controlling opinion should be rejected, and Plaintiffs' overbroad

medical monitoring claim should be dismissed.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Siemens' opening brief, Plaintiffs'

claims against Siemens should be dismissed.

Respectfully submitted,

DATED: February 6, 2023                    */s/ Roy D. Campbell, III*
                                           *One of the Attorneys for*
                                           *Defendant Siemens Industry, Inc.*

OF COUNSEL:

Roy D. Campbell, III
Simon Turner Bailey
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 1000
188 East Capitol Street
Jackson, MS 39201
Telephone: (601) 948-8000
Facsimile:  (601) 948-3000
rcampbell@bradley.com
sbailey@bradley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Roy D. Campbell, III*
OF COUNSEL
