# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| PRISCILLA STERLING, RAINE BECKER, SHAWN MILLER, AND JOHN BENNETT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF JACKSON, MISSISSIPPI; CHOKWE A. LUMUMBA; TONY YARBER; KISHIA POWELL; ROBERT MILLER; JERRIOT SMASH; SIEMENS INDUSTRY, INC.; AND TRILOGY ENGINEERING SERVICES LLC.,<br><br>Defendants. | Civil No. 3:22-cv-531-KHJ-MTP<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO TRILOGY ENGINEERING SERVICES, LLC'S MOTION TO STRIKE PARAGRAPH 208 OF PLAINTIFFS' COMPLAINT** |

**PRELIMINARY STATEMENT**

Despite including statements distorting the record, Defendant Trilogy Engineering Services, LLC's ("Trilogy")'s motion still cannot meet the legal standard to strike an allegation. Although it seeks to strike a single sentence from Plaintiffs' complaint, Trilogy's motion fails to quote that sentence accurately. While Plaintiffs do allege that Trilogy's CEO held an "unreported campaign fundraiser," Trilogy's motion incorrectly inserts words like "off-the-books" that do not appear in Plaintiff's pleadings. Trilogy also fails to inform the Court that it submitted a similar motion to United States District Judge Carlton Reeves in a related case in this district. *J.W. v. The City of Jackson, Mississippi et al.*, 3:21-cv-00663-CWR-LGI. Judge Reeves summarily denied it. *Id.* Dkt. 72.

Judge Reeves's simple analysis applies in full here. Trilogy does not meet the incredibly high standard necessary to strike an allegation. Its motion targets one sentence in Plaintiffs' complaint, as part of their story of how Jackson ("the City") hired Trilogy to fix its water system. That sentence (in full) reads: "LeBlanc [Trilogy's CEO] held an unreported campaign fundraiser for [then Mayor] Yarber in 2014." Compl. ¶ 208 ("¶ 208"). Despite characterizing that allegation as immaterial and inflammatory, Trilogy does not articulate how that history "unfairly prejudice[s]" it given the allegations against it here. The quality of the work that Trilogy did, after Mayor Yarber hired it following his fundraiser, is the central issue in the case against Trilogy. In response, it may argue that Jackson's governance failures—unrelated to its conduct—are more responsible for the water crisis. How and why the City hired Trilogy is relevant in this context. It is also relevant to claims against Mr. Yarber himself. For all of these reasons, Trilogy's motion to strike should be denied.

**FACTUAL BACKGROUND**

By at least early 2014, Jackson's government understood that corrosion was causing lead

to leach from pipes into its public water system. Compl. ¶¶ 84–86. As a result, then Mayor Lumumba instructed his administration to plan and estimate the cost of a repair to reduce lead contamination. *Id.* ¶¶ 95–97. Jackson's Public Works department developed a repair plan, which it estimated would cost $400,000. *Id.* ¶¶ 89–91. Lumumba worked with City Counsel to allocate funding from the City's budget to fund the $400,000 plan. *Id.* ¶¶ 95–97. Unfortunately, Mayor Lumumba passed away on February 25, 2014, before the City could implement it. *Id.* ¶ 98.

In April 2014, Jackson held an emergency election to quickly fill the vacant seat. *See id.* ¶¶ 98–99; Fed. R. Evid. 201. During the election, Thessalonian LeBlanc, CEO of Trilogy, held an unreported fundraiser for then-candidate Tony Yarber. Compl. ¶ 208. Mr. Yarber won the election. *Id.* ¶ 99. Prior to the election, Mayor Yarber had been serving on the City Counsel, sitting on the budget committee, attending meetings about the corrosion repair plan. *Id.* ¶ 100–05. He knew about the $400,000 plan and its importance. *Id.*

Nevertheless, after becoming Mayor, Yarber stripped the money from the budget that the City had previously earmarked to fix corrosion. *Id.* ¶¶ 105–07. Instead, Mayor Yarber negotiated a contract with Trilogy CEO for a *private* plan that focused on studying rather than fixing the problem. *See id.* ¶ 210. That contract was for nearly $400,000—the same amount that the Lumumba administration had determined could fix the problem directly. *Id.* ¶¶ 89–91. Hiring Trilogy disrupted public attempts to fix Jackson's water problem and its study resulted in recommendations that would make the problem worse. *Id.* ¶¶ 211–31. Over the next few years, as Jackson's water crisis worsened, citizens of Jackson sued Trilogy for negligence.

In 2022, in a consolidated lead poisoning case related to this one, Trilogy brought a motion seeking to strike a paragraph that contains language that matches ¶ 208 verbatim. *J.W. v. The City of Jackson, Mississippi et al.*, 3:21-cv-00663-CWR-LGI, Dkt. 72 ¶ 8 (moving to strike

the statements that "LeBlanc held an unreported campaign fundraiser for Yarber in 2014.") On October 25, 2022. Judge Reeves denied Trilogy's motion to strike in its entirety, finding that it failed to meet the standard under *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962). *Id.* Dkt 132, at 1. The instant motion was filed after that decision, but makes no reference to it.

## **LEGAL STANDARD**

Rule 12(f) of the Federal Rules of Civil Procedure outlines when a court may strike allegations from a pleading. It states: "The court may strike … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[A]n order striking a pleading is 'a drastic remedy to be resorted to only when required for the purposes of justice.'" *Mullen v. Nationwide Mut. Ins. Co.*, No. 1:11-cv-351-HSO-MTP, 2011 U.S. Dist. LEXIS 141686, at *2 (S.D. Miss. Dec. 8, 2011) (quoting *Augustus*, 306 F.2d 862, 868 (5th Cir. 1962)). Motions under Rule 12(f) are viewed with disfavor and are infrequently granted. *Florance v. Buchmeyer*, 500 F. Supp. 2d 618 (N.D. Tex. 2007) (citing *FDIC v. Niblo*, 821 F. Supp. 411, 449 (N.D. Tex. 1993)).

Further, "[i]f there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) (quoting 2 Moore's Fed. Prac., 2d ed., P12.21(2), pp. 2317-2318); *see also Augustus*, 306 F.2d at 868 (a motion to strike "should be granted only when the pleading to be stricken has no possible relation to the controversy.")  "Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Spoon v. Bayou Bridge Pipeline*, LLC, 335 F.R.D. 468, 471 (M.D. La. 2020) (quoting *Augustus*, 306 F.2d at 868).

**ARGUMENT**

**I.      Paragraph 208 is Material and Should Not be Struck.**

Trilogy cannot meet its burden to show how ¶ 208 is immaterial, impertinent, or scandalous as required by Fed. R. Civ. P. Rule 12(f). That showing requires Trilogy to demonstrate that the pleadings have "no essential or important relationship to the claim for relief," or that the pleadings consist of "statements that do not pertain, and are not necessary, to the issues in question." *Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 470-71 (M.D. La. 2020) (*quoting* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2004)). "In determining whether a party's pleading is impertinent or scandalous, a court should view all well-pleaded facts in their most favorable light" and "the general rule [is] that in deciding motions to strike a court should not consider matters outside the pleadings…" *OKC Corp. v. Williams*, 461 F. Supp. 540, 550 (N.D. Tex. 1978).

Other than repeating terms like "inflammatory" in a conclusory fashion, Trilogy's motion does not attempt to make the required legal showing.[1] Its motion fails to even quote the single sentence paragraph it attempts to strike accurately. It incorrectly inserts several words—including an adjective—that Plaintiffs never uttered. *Compare* Dkt. 1 ¶ 208 ("208. LeBlanc held

---

[1] Nor can Trilogy establish that ¶ 208 is scandalous. "'Scandalous' in Rule 12(f) 'generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 645 (N.D. Tex. 2007) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 280 (D.D.C. 2004)). An unreported fundraiser during a short, contentious, emergency mayoral election is material to the claims here. LeBlanc hosted the unreported fundraiser for Yarber and after Yarber won the election he reversed a predecessor's decision to award her company a contract. While confronting this information might make Defendants uncomfortable, that does not make the allegations scandalous. *United States v. Coney*, 689 F. 3d 365, 380, (5th Cir. 2012) (quoting *Hope ex rel. Clark v. Pearson*, 38 B.R., 423, 424-25 (Bankr. M.D. Ga. 1984)) (holding that a pleading is not "scandalous" merely because "the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action.")

an *unreported* campaign fundraiser for Yarber in 2014.") (emphasis added) *with* Dkt. 37 ¶ 5 (claiming, "the Complaint alleges that "[i]n 2014, LeBlanc held an *off-the-books* fundraiser" for the then-Mayor of Jackson, Tony Yarber." (brackets in original, emphasis added). Trilogy's motion does not explain why either of these characterizations ("off-the-books" or "unreported") would be inflammatory. With respect to the term Plaintiffs actually used—unreported—Trilogy does not contend that the fundraiser was, in any shape or form, reported.

Trilogy's only substantive attempt at balancing is to assert that ¶ 208 has "absolutely zero connection" to its alleged scope of professional services. Mtn. at 4. That argument is based on an unsupported premise that Trilogy's liability is limited to the quality of its engineering work. Indeed, its central actor in these allegations, Mr. LeBlanc, is not an engineer. But it also ignores the unusual context in which Trilogy was hired, which is important to Plaintiffs' claims against Trilogy; other Defendants it may try to blame; and Plaintiffs' case against Yarber. The alleged impropriety behind Trilogy's contract could help explain why their performance was so poor and failed to fix Jackson's water system. If Trilogy tries to blame poor City governance for the crisis, ¶ 208 demonstrates how Trilogy's conduct is part-and-parcel of that story. Additionally, separate and apart from Trilogy's role as a Defendant, Yarber's decision to contract with Trilogy after his fundraiser with LeBlanc is relevant to Plaintiffs' case against Yarber himself (including the reasonableness of his conduct and whether—in the context of a potential immunity defense—it shocks the conscience). There is no reason to strike ¶ 208, which is material to the claims here. *J.W. v The City of Jackson, Mississippi et al.*, 3:21-cv-00663-CWR-LGI, Dkt. 132 (reaching the same conclusion).

## II. The Cases Trilogy Relies On Do Not Support its Motion to Strike.

Trilogy's motion cites three categories of cases, which generally fail to support its position here. First, Trilogy cites cases where no allegations were struck. *E.S. v. Best W. Int'l,*

*Inc.*, 510 F. Supp. 3d 420, 435 (N.D. Texas 2021) involved more serious "salacious and unopposed allegations" of sex trafficking that were ultimately not struck. Trilogy also cites *OKC Corp. v. Williams*, 461 F. Supp. 540, 550 (N.D. Tex. 1978) where the court denied the U.S. Securities and Exchange Commission's motion to strike paragraphs from plaintiff's pleadings, explaining, "[w]hen taken as true, the challenged paragraphs are certainly relevant to [plaintiff's] claims and do not contain the extreme sort of accusation that unnecessarily reflects adversely on the defendants." *Id* at 550. *See also Spoon v. Bayou Bridge Pipeline*, LLC, 335 F.R.D. 468 (M.D. La. 2020) (same).

Second, Trilogy relies on cases that decided motions to strike insufficient defenses. These cases do not support Trilogy's motion because determining whether to strike defenses is a different analysis than striking allegations in a complaint. Rather than assessing whether statements have any relevancy to the controversy or are scandalous, in deciding motions to strike defenses courts instead determine whether, as a matter of law, the defendant sufficiently alleged facts supporting a legally cognizable defense. *Fed. Deposit Ins. Corp. v. Butcher*, 660 F. Supp. 1274, 1277 (E.D. Tenn. 1987); *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993); *Seattle v. Monsanto Co.*, 387 F. Supp. 3d 1141, 1163 (W.D. Wash. 2019).

Third, in the cases that Trilogy cites where courts granted motions to strike paragraphs from complaints, they did so due to statutory insufficiencies in the pleadings that Trilogy does not allege here. For instance, in *Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 912-13 (M.D. Fla. 1995), the court partially granted the defendant's motion to strike references to the Florida Civil Rights Act because the plaintiffs had not filed a charge of discrimination with the Florida Commission on Human Relations to exhaust their administrative remedies prior to filing their complaint. Similarly, the court in *Brown v. Seebach*, 763 F. Supp. 574, 583 (S.D. Fla.

1991), struck plaintiff's allegations from the pleadings as they were not permitted by Florida law. There are no statutory insufficiencies in the allegations Trilogy seeks to strike from Plaintiffs' Complaint, thus *Williams* and *Brown* do not support Trilogy's motion.

Moreover, *Spencer v. Dixon*, 290 F. Supp. 531 (W.D. La. 1968), is readily distinguishable from the circumstances here. The court in *Spencer* granted a motion to strike paragraphs from the plaintiffs' complaint because it contained "scandalous, insulting, and abusive language in irrelevant criticism of a judge, impairing the dignity of the court and respect for its authority in violations of the laws of Louisiana." *Spencer*, 290 F. Supp. at 532. Paragraph 208 does not rise to the level of the scandalous, insulting, and abusing language and irrelevant criticism about the judiciary that "permeated" the complaint in *Spencer*. Thus, the case law Trilogy cites in support of its motion to strike does not provide support for striking ¶ 208 from Plaintiffs' Complaint and this Court should deny its motion.

## CONCLUSION

As Judge Reeves noted, Trilogy's motion does not justify striking any allegations. It does not conduct a complete 12(f) analysis and fails to establish that Plaintiff's allegations concerning Trilogy's fundraising are scandalous or acknowledge and balance the extent to which they are material to this case. Accordingly, Trilogy's motion should be denied.

Should this Court grant Trilogy's motion, Plaintiffs request leave to amend their pleading to cure any defects.

Dated: February 6, 2023 Respectfully submitted,

/s Robert L. Gibbs_____
Robert L. Gibbs (Bar No. 4816)
Gibbs Travis PLLC
210 East Capitol Street, Suite 1801
Jackson, MS 39201
Telephone: 601-487-2640
Fax: 601-366-4295
rgibbs@gibbstravis.com

Mark P. Chalos (Admitted *Pro Hac Vice*)
*Lead Counsel*
Kenneth S. Byrd (Application for Admission *Pro Hac Vice* Forthcoming)
Lieff Cabraser Heimann & Bernstein, LLP
222 2nd Avenue South, Suite 1640
Nashville, TN 37201-2379
Telephone: 615-313-9000
Facsimile: 615-313-9965
mchalos@lchb.com
kbyrd@lchb.com

Tiseme G. Zegeye (Admitted *Pro Hac Vice*)
Jacob H. Polin (Admitted *Pro Hac Vice*)
Amelia A. Haselkorn (Admitted *Pro Hac Vice*)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008
tzegeye@lchb.com
jpolin@lchb.com
ahaselkorn@lchb.com

Stuart C. Talley (Admitted *Pro Hac Vice*)
Kershaw Talley Barlow, P.C.
401 Watt Avenue, Suite 1
Sacramento, CA 95864
Telephone: 916-779-7000
stuart@ktblegal.com

Larry Moffett (Bar No. 3401)
Law Office of Larry D. Moffett PLLC
P.O. Box 1418
39 CR 231
Oxford, MS 38655
Telephone: 662-298-4435
larry@larrymoffett.com

*Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, Jacob H. Polin, declare as follows:

I am employed in the law firm of Lieff Cabraser Heimann & Bernstein, LLP, whose address is 275 Battery Street, 29th Floor, San Francisco, California 94111-3339. I am readily familiar with the business practices of this office. At the time of transmission, I was at least eighteen years of age and not a party to this action.

On February 6, 2023 I directed that the foregoing document be filed via the U.S. District Court's CM/ECF electronic system and a copy thereof was served upon all counsel of record:

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO TRILOGY ENGINEERING SERVICES, LLC'S MOTION TO STRIKE PARAGRAPH 208 OF PLAINTIFFS' COMPLAINT**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this declaration was executed on February 6, 2023.

*/s/ Jacob H. Polin*
Jacob H. Polin