# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**Priscilla Sterling, Raine Becker, Shawn
Miller, and John Bennett, individually and on
behalf of all others similarly situated
Plaintiffs**

**v.**                                                      **Civil No. 3:22-cv-531-KHJ-MTP**

**The City of Jackson, Mississippi; Chokwe A.
Lumumba; Tony Yarber; Kishia Powell;
Robert Miller; Jerriot Smash; Siemens
Corporation; Siemens Industry, Inc.; and
Trilogy Engineering Services LLC**                          **Defendants**

## CITY OF JACKSON'S MEMORANDUM IN SUPPORT
## OF MOTION FOR JUDGMENT ON THE PLEADINGS

The City's Motion raises two questions, each rooted in established law:

> First, in each case the Fifth Circuit found a bodily-integrity
> violation, the plaintiff alleged a state actor coerced the plaintiff to
> engage in an act that violated his or her right to bodily integrity.
> Here, Plaintiffs make no such allegations. Should this Court
> expand substantive-due-process rights into unrecognized territory
> when the Fifth Circuit cautions against expanding due-process
> rights and Plaintiffs fail to plead facts demonstrating conscience-
> shocking state action?

> Second, the Fifth Circuit has repeatedly declined to recognize a
> state-created-danger theory of liability. Nevertheless, Plaintiffs
> assert a state-created-danger claim against the City without
> pleading essential elements of the claim. Should the Court
> disregard Fifth Circuit precedent to recognize a claim not
> sufficiently pleaded?

In short, no and no. Accordingly, the Court should dismiss Counts I and II of Plaintiffs'

Complaint against the City.

## RELEVANT FACTUAL AVERMENTS

In sum, Plaintiffs "assert claims for personal injuries based on [the City's] deprivation of

Plaintiffs' right to bodily integrity protected by the Due Process Clause of the Fourteenth

Amendment to the United States Constitution", *see, e.g.*, Compl. [Doc. 1] at 2 (¶4), and "to be free from state-created danger." *Id*. at 11 (¶29). They claim the City did so "by creating and perpetuating the ongoing exposure to contaminated water." *E.g., id.* at 82 (¶ 375).

Plaintiffs also claim the City violated their constitutional rights by "denying and obstructing Plaintiffs' access to safe drinking water." *See, e.g., id.* at 82 (¶ 376).

Plaintiffs baldly (and generally) assert the alleged harm caused by the crisis was discrete and special to each Plaintiff. *Id.* at 84-85 (¶ 386). Plaintiffs do not claim the alleged harm was inflicted by a private, non-state actor.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a party's complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.2d 631, 634 (5th Cir. 2014); *Petersen Indus., Inc. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-FKB, 2011 U.S. Dist. LEXIS 13338, *3 (S.D. Miss. Feb. 9, 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3-4 (quoting *Iqbal*, 556 U.S. at 678). The facial plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see also Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3 ("A plaintiff's complaint must provide more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(quoting *Twombly*, 550 U.S. at 555).

If the exhibits attached to or incorporated into the complaint contradict the allegations of

the complaint, the exhibits control. *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp. 2d

500, 513-14 (S.D. Tex. 2000) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.

1995)). The Court is also free to consider matters of public record or other matters appropriate

for judicial notice. *Id.*; *see also Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist.

LEXIS 174049, at *17-18 (S.D. Miss. Sept. 14, 2021).

The legal standard is the same for dismissal motions filed under Rule 12(c). *In re Great

Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010); *Atwood v. Tullos*, 312 F. Supp.

3d 553, 559-60 (S.D. Miss. 2018) ("In deciding a 12(c) motion, the court accepts all well-

pleaded facts as true, viewing them in the light most favorable to the plaintiff.") (internal

quotations omitted).

## ARGUMENT

Section 1983 does not create substantive rights. *Hernandez v. Tex. Dep't of Protective &

Reg. Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). Instead, it provides a vehicle through which an

individual may pursue civil remedies for alleged deprivations of substantive rights. *Id.*

Therefore, "the threshold issue presented by any case arising under Section 1983 is whether the

plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution." *Id.* To

state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution

or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a

person acting under color of state law." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194,

198 (5th Cir. 2015) (citing *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Plaintiffs fail to plead facts sufficient to demonstrate a violation of their substantive-due-process rights.

## I.    The United States Constitution Does Not Guarantee Access to Clean Water.

No court has recognized a fundamental right to water services. *In re Detroit*, 841 F.3d 684, 700 (6th Cir. 2016) ("[T]here is no fundamental right to water service.") (quoting *Golden v. City of Columbus*, 404 F.3d 950, 961 (6th Cir. 2005)). Nor has a court recognized a Constitutional right to clean water; in fact, all have denied its existence. *See, e.g.*, *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5-6 (1st Cir. 1992) (holding that the plaintiffs had no "'constitutional right' to safe drinking water," and that even if they did, their claims were preempted by the Safe Drinking Water Act); *Brown v. Detroit Pub. Sch. Comm. Dist.*, 763 F. App'x 497, 503 (6th Cir. 2019) (rejecting claim the defendants' provision of contaminated water violated plaintiff's right to bodily integrity because "neither the text nor history of the Due Process Clause" supports a right to a contaminant-free environment); *see also Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *10 (E.D. Mich. Feb. 28, 2017) (finding found no fundamental constitutional right to "freedom from harmful contaminants"); *Concerned Citizens of Neb. v. United States NRC*, 970 F.2d 421, 426-27 (8th Cir. 1992) (rejecting constitutional claims for exposure to radiation from a radioactive waste disposal facility); *MacNamara v. Cty. Council of Sussex Cty.*, 738 F. Supp. 134, 142 (D. Del. 1990) (finding no substantive due process right to health where plaintiff claimed the placement of an electrical substation would harm her health); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1063 (N.D.W. Va. 1973) (holding that plaintiffs failed to state a constitutional claim for damage from a "rain of pollutants [with] the [attendant] stench of gasses [sic] and fumes.").

And, the United States' executive branch agrees.  In the United States' Explanation of Position on the United Nations Human Rights Council's recognition of the right to water as a human right, the United States government states, **"The right to safe drinking water and sanitation is not one that is protected in our Constitution, nor is it justiciable as such in U.S. courts**, though various U.S. laws protect citizens from contaminated water."  The United States, *Observations by the United States of America on the Relationship Between Climate Change and Human Rights*, http://www.ohchr.org/Documents/Issues/ ClimateChange/Submissions/USA.pdf (emphasis added).

Plaintiffs asks this Court to disregard legal precedent and clear pronouncements from our government, and to expand the scope of the Fourteenth Amendment to guarantee rights not set forth in the first eight Amendments to the Constitution or rooted in the United States' history and tradition.  *See, e.g.*, Compl. [Doc. 1] at 82 (¶376) (claiming the City violated Plaintiffs' constitutional rights by "denying and obstructing Plaintiffs' access to safe drinking water"); 83-85 (¶¶ 381-89) (claiming, among other things, access to clean water gave rise to a constitutional violation).   The Supreme Court's recent decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) decision cautions against such expansion.  The Court warned,

> In interpreting what is meant by the Fourteenth Amendment's reference to 'liberty,' we must guard against the natural human tendency to confuse what that Amendment protects with our own ardent views about the liberty that Americans should enjoy. That is why the Court has long been 'reluctant' to recognize rights that are not mentioned in the Constitution.

*Id.* at 2247-48 (quoting *Collins* v. *Harker Heights*, 503 U. S. 115, 125 (1992)).

The Court should join its sister courts, and reject Plaintiffs' attempt to move substantive-due-process jurisprudence into the environmental-control arena, an area one court has noted "the

judicial process, through constitutional litigation, is peculiarly ill suited." *See Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 536 (S.D. Tex. 1972).

## II.    The Fifth Circuit Has Not Recognized a Substantive Due Process Violation Arising From Exposure to Environmental Contaminants.

Plaintiffs claim the City violated their substantive-due-process right to bodily integrity in Count I of the Complaint. *See* Compl. [Doc. 1] at 93-94 (¶¶ 383-90). Fifth Circuit "case law in this area is sparse." *Young v. Isola, Miss.*, No. 3:15cv108, 2016 WL 6916790, at *5 (N.D. Miss. Nov. 23, 2016), *rev'd on other grounds*, 708 F. App'x 152 (5th Cir. 2017) (per curiam). The few cases "exploring the constitutional liberty interest in bodily integrity defines this right as the right to be free from *intentional* injury inflicted by a state actor." *Bickford v. Boerne Indep. Sch. Dist.*, No. 5:15-CV-1146-DAE, 2016 U.S. Dist. LEXIS 69101, at *11 (W.D. Tex. May 26, 2016) (dismissing substantive due process claim for student's injury in school production of *Grease*) (emphasis in original). As the *Bickford* court noted, in the Fifth Circuit, the right to bodily integrity "appears to arise almost exclusively in the context of sexual abuse by a teacher in a school setting, where a school superintendent was deliberately indifferent to such conduct, despite receiving reports from students, teachers, and parents that the abuse was taking place." *Id.* at *11 n.4; *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 50-51 (5th Cir. 1994); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995); *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020).

In *every* case in which the Fifth Circuit has found a violation of bodily integrity, a state actor has coerced the plaintiff to act in a manner that violated his or her bodily integrity. For example, in the *Doe* cases cited above, a teacher sexually abused a student. In *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir. 1987), a teacher tied a second grader to a chair. And, in *United States v. Guidry*, 456 F.3d 493, 506 (5th Cir. 2006), a police officer

sexually assaulted female arrestees. In short, those cases all involve the government forcing an intrusion upon the plaintiff's body.

Absent coercion, the Fifth Circuit has declined to find a substantive-due-process violation. In *Pierce*, the court found no violation of the substantive due process right to bodily integrity when a student was killed while driving his teacher's ATV. 600 F. App'x at 194. In reaching that conclusion, the Fifth Circuit distinguished sexual abuse and corporeal punishment cases, finding that the teacher did not "deliberately abuse, restrain, threaten or touch [the deceased]." *Id.* at 199. The court noted Supreme Court precedent, warning courts against expanding substantive due process rights by turning a negligence claim into a constitutional matter. *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

Coercion is what distinguishes a viable bodily-integrity claim from a meritless environmental-harm claim under § 1983. The latter is meritless because a robust consensus of cases holds there is *no* substantive-due-process right to a clean environment. In each of those cases, the plaintiff claimed that some pollutant—whether sewage, mold, chemicals, tobacco smoke, or radiation—had entered or threatened to enter her body and that the government was aware of and responsible for the risk. None found a violation of the plaintiff's bodily integrity. (To the extent the Complaint states a cause of action, it is a common-law tort claim, at best. Nothing precludes Plaintiffs from properly pursuing that remedy.).

For instance, in *Gasper v. Louisiana Stadium & Exposition District*, 418 F. Supp. 716 (E.D. La. 1976), a group of nonsmokers brought constitutional claims to ban smoking in the Louisiana Superdome. The plaintiffs alleged that "allowing patrons to smoke in the Louisiana Superdome, [the Louisiana Stadium and Exposition District] is causing other nonsmokers involuntarily to consume hazardous tobacco smoke, thereby causing physical harm and

discomfort to those nonsmokers…." *Id.* at 717.  The district court found there is "no constitutional right to a clean environment."  *Id.* at 720-21.  The Fifth Circuit agreed.  *See Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897 (5th Cir. 1978).

The *Gasper* district court relied on *Tanner*, 340 F. Supp. 532.  In *Tanner*, the plaintiffs brought substantive due process claims for petroleum refineries' emissions of pollutants into the air, which the plaintiff alleged caused pulmonary damage.  *Id.* at 534.  The district court found that, assuming plaintiffs could plead sufficient state action, they still failed to state a constitutional claim.  The court noted,

> [F]rom an institutional viewpoint, the judicial process, through
> constitutional litigation, is peculiarly ill-suited to solving problems
> of environmental control. Because such problems frequently call
> for the delicate balancing of competing social interests, as well as
> the application of specialized expertise, it would appear that their
> resolution is best consigned initially to the legislative and
> administrative processes.

*Id.* at 536.[1]  This Court should not, either.

---

[1] The Sixth Circuit's holding in *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019), is neither controlling nor persuasive.  The *Guertin* court found that "a government actor violates individuals' right to bodily integrity by knowingly and intentionally introducing life-threatening substances into individuals without their consent, especially when such substances have zero therapeutic benefit." *Id.* at 921.  The Sixth Circuit quoted its earlier decision in *Boler v. Earley*, 865 F.3d 391, 408 n.4 (6th Cir. 2017), for the proposition that a "plaintiff need not 'establish any constitutional significance to the means by which the harm occurs.'"  The *Boler* court made this statement, unsupported by any citation, in a footnote.  In fact, *Boler* did not even decide whether the plaintiffs stated a bodily integrity claim.  *See id.* at 408.

The *Guertin* majority looked to *Washington v. Harper*, 494 U.S. 210, 213-17 (1990), to support its analysis.  But in *Washington*, the Supreme Court found that the "*forcible* injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty."  *Id.* at 229 (emphasis added).  In other words, in *Washington*, a state actor intentionally interfered with a person's body by forcing him to take medicine.  The *Guertin* court cited no case in which a state actor did not intentionally act directly upon the plaintiff's body.

Ultimately, the *Guertin* court greatly expanded the law of substantive due process to analogize a state's forcible injections to a state's assurances that contaminated water was safe to drink.  Because the Fifth Circuit has cautioned against expanding substantive due process rights, and because the Fifth Circuit

In sum, Plaintiffs have not stated a bodily-integrity claim against the City, because they fail to allege the City coerced them to consume the tap water.  (The means and methods by which the City provides tap water are not subject to Constitutional review.  *See, e.g.*, *In re Detroit*, 841 F.3d at 700 ("[T]here is no fundamental right to water service."); *Mattoon*, 980 F.2d at 5-6 (holding that the plaintiffs had no "'constitutional right' to safe drinking water"); *Brown*, 763 F. App'x at 503 (rejecting claim the defendants' provision of contaminated water violated plaintiff's right to bodily integrity because "neither the text nor history of the Due Process Clause" supports a right to a contaminant-free environment).  Plaintiffs' own pleadings and the exhibits referenced therein highlight the absence of coercion.

Immediately after the City received notice that 13 samples tested in June 2015 detected lead levels above the federal action level, the City promptly informed the public.  *See* Compl. [Doc. 1] at 33 (¶ 149); Anna Wolfe & Sara Fowler, *Jackson, MSDH Report Lead Detection in City Water*, CLARION-LEDGER (Jan. 29, 2016), identified in Compl. [Doc. 1] at 35 n.42.  During a press conference, announcing the results, Powell reported she "immediately dispatched crews to those homes" for samples that showed an exceedance.  *See*  R.L. Nave, *Jackson Has Long Been at High Risk for Lead Poisoning*, JACKSON FREE PRESS (Feb. 3, 2016), identified in Compl. [Doc. 1] at 16 n.10.  She also stated, "We want people to understand how they should be flushing their internal plumbing system before using water…These are just measures you take."  *See id.* Specific recommendations and precautions were issued for small children and pregnant women. *See* Tim Summers, Jr., *As the Water Turns, City Wrestles Over Corrosion Study*, JACKSON FREE PRESS (Mar. 16, 2016), identified in Compl. [Doc. 1] at 28 n.34.

---

has *never* recognized a bodily integrity violation without an intentional, direct action upon a plaintiff's body, this Court should decline finding such a violation here.

The recommendations and measures included, among others, running tap water on cold for one to two minutes before consumption; never using hot water for consumption; children under 5 and pregnant women not consuming tap water; using filtered or bottled water when mixing formula; and screening children under 6 for lead. *See, e.g.*, Anna Wolfe, *6 Things to Know About the Lead Water in Jackson*, CLARION-LEDGER (Mar. 25, 2016), identified in the Compl. [Doc. 1] at 43 n.55.

Since that press conference, the City has been consistent by continually advising residents (1) to run the cold tap for one to two minutes before using tap water; (2) not to use hot water for cooking or drinking; (2) pregnant women and small children should refrain from using tap water; (3) to refrain from mixing baby formula with tap water; and (4) to screen small children for lead. *See* Anna Wolfe, *Jackson Hit with Technical Violation for Water Treatment*, Clarion-Ledger (June 9, 2016), identified in Compl. [Doc. 1] at 20 n.24 (noting that precautions for pregnant women and children would stay in place); Justin Vicory, *Department of Health Says Jackson Is In Violation of Safe Drinking Water Requirements*, Clarion-Ledger (July 18, 2018), identified in Compl. [Doc. 1] at 39 n.49.

Whether the measures the City took to inform the public were sufficient does not give rise to a Constitutional claim for bodily integrity. *See Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008). In *Benzman*, plaintiffs sued the EPA administrator for issuing press releases with false and misleading statements. *Id.* at 123-24. Specifically, the plaintiffs alleged the EPA administrator knew that the air was not safe to breathe and falsely represented in press releases that it was. *Id.* at 125. The Second Circuit noted that "no court has ever held a government official liable for denying substantive due process by issuing press releases or making public statements." *Id.* The court held that only if the statements had been made with a subjective

intent to harm could they rise to the level of conscience-shocking. *Id.* Because the statements were not, the court found no substantive due process violation.

Admittedly, when faced with an identical bodily-integrity claim (and the City's identical arguments) another Court in the Southern District of Mississippi disagreed with the City's similar arguments. *See* Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 33-36. But, that ruling is not binding on this Court. Further, respectfully, the City disagrees with that Court's conclusion, especially where Plaintiffs fail to allege the City did anything with a subject intent to coerce or harm Plaintiffs.

Further, for the reasons set forth in Mayor Chokwe A. Lumumba and Robert Miller's, Tony Yarber and Kisha Powell's, and Jerriot Smash's respective Motions for Qualified Immunity and to Dismiss, which the City incorporates by reference here, Plaintiffs have not pleaded facts showing the City engaged in conscience-shocking state action. The bodily integrity claim fails for that reason, too.

**III.    The Fifth Circuit Does Not Recognize State-Created-Danger Claims.**

Count II of the Complaint is not legally cognizable and is due to be dismissed. The Fifth Circuit has repeatedly declined to recognize a state-created-danger theory of liability, including in cases in which the "theory's viability has been squarely presented." *See, e.g.*, *Beltran v. El Paso*, 367 F.3d 299, 307 (5th Cir. 2004). Most recently, the Fifth Circuit refused to recognize a state-created-danger claim in *Fisher v. Moore*, No. 21-20553, 2023 U.S. App. LEXIS 6317, *8-*9 (5th Cir. Mar. 16, 2023) ("The Fifth Circuit has never recognized the state-created-danger exception. In our published, and thus binding, caselaw, we have repeatedly declined to recognize the state-created danger doctrine.") (cleaned up). *See also Robinson v. Webster Cty.*, 825 F. App'x 192, 195 (5th Cir. 2020) ("[T]his Court has declined to join our sister circuits in

recognizing [the state-created-danger] theory on several occasions."); *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020) ("[T]he Fifth Circuit has never recognized this 'state-created-danger' exception."); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017) ("Subsequent panels have 'repeatedly noted' the unavailability of the [state-created-danger] theory.").

There is no need to revisit well-established Fifth Circuit precedent, especially where Plaintiffs have not alleged they suffered an injury from a third party. *See generally Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions…that will have no effect on the outcome of the case."). Judge Carlton Reeves reached the same conclusion in consolidated litigation, captioned *J.W., et al. v. The City of Jackson, et al.*, in which the plaintiffs pled an identical state-created danger claim. Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 43 ("A state-created danger claim requires that a third party – not the defendant state actor – cause the plaintiff's injury.").[2]

Although the Fifth Circuit has explicitly refused to recognize the state-created-danger theory of liability, it has articulated a standard for such a claim. Like its sister circuits, the Fifth Circuit recognizes the state-created-danger theory of liability redresses a state actor's failure "to protect an individual from injuries inflicted by a third party if the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to [an] individual's injury" only. *See McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002).[3] Count II

---

[2] "The City of Jackson's primary argument . . . namely that the Plaintiffs have failed to identify the third-party, non-state actor who is responsible [sic] their injuries. The City's argument is well-taken." Or. [Doc. 135] at 43.

[3] Some Circuits read the language of *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), to impose a duty on state actors to protect individuals from injuries inflicted *by a third*

is devoid of a third-party-inflicted injury allegation. *See* Compl. [Doc. 1] at 83-86 (¶¶ 380-90) (failing to identify any injury inflicted by a non-state actor). This alone is fatal to Count II.

That notwithstanding, the Fifth Circuit has identified the following elements a plaintiff must demonstrate for a state-created-danger claim: "(1) that the environment created by the state actor is dangerous, (2) the state actor must know it is dangerous (deliberate indifference), and (3) the state actor must have used its authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Dixon v. Alcorn Cnty. Sch. Dist.*, 499 F. App'x 364, 366-67 (5th Cir. 2012).[4] The state-created-danger theory "is inapposite without a known victim." *Doe*, 675 F.3d at 865. A plaintiff must "demonstrate the existence of an immediate danger facing a known victim." *Id.* at 866 (quoting *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999)). Identifying a known victim requires more than singling out a segment of the general public at large that may be affected by state action; the test articulated by the Fifth Circuit requires plaintiffs to plead the state actor was aware of an immediate danger to a specific and identifiable individual. *See id.* at 865; *see also Dixon*, 499 F. App'x at 368 (finding potential harm to students in general is inadequate to satisfy the known-victim requirement); *Doe*, 675 F.3d at 865-66 (same).

---

*party* if the state actor played an affirmative role in creating or exacerbating the dangerous situation that led to the individual's injury.

[4] The often-articulated test includes two elements. *See, e.g.*, *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 864-65 (5th Cir. 2012) (en banc) (explaining "the state-created danger theory requires a plaintiff to show (1) the defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate indifference to the plight of the plaintiff."). "[T]he second element is then subdivided into three prongs, which combine to subsume the original first element." *Dixon*, 499 F. App'x at 367 n.3. *See generally Doe*, 675 F.3d at 865 (stating that to establish deliberate indifference, a plaintiff must plead facts that "the environment created by the state actors must be dangerous; they must know it is dangerous; and they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur").

The Complaint does not allege the City singled out any Plaintiff, instead alleging each Plaintiff is a "Jackson water user." *See* Compl. [Doc. 1] at 84-85 (¶ 386). That allegation is insufficient to state an essential element of a state-created-danger claim. *See Cancino v. Cameron Cnty.*, 794 F. App'x 414, 417 (5th Cir. 2019) ("It is not enough for the Plaintiffs to allege that the Defendants knew of a risk to a class of people that included the Plaintiffs, namely people whose 'geographical proximity…put them in a zone of danger.'"); *Rios v. City of Del Rio*, 444 F.3d 417, 424 n.7 (5th Cir. 2006) ("[L]iability exists only if the state actor is aware of an immediate danger facing a known victim and does *not* extend to all foreseeable victims.") (emphasis in original) (internal quotations omitted). Importantly, that self-serving allegation contradicts Plaintiffs' class allegations in which they explicitly state they are bringing suit on behalf of all persons who resided in Hinds County . . . from January 1, 2009 to present. *See* Compl. [Doc. 1] at 77 (¶359). Again, when faced with an identical state-created danger, Judge Reeves agreed with the City, finding, "Nothing in the Amended Complaint suggests that the City or State Defendants knew that these specific Plaintiffs would be at an enhanced risk of harm as a result of the Defendants' (in)actions." Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 44. Count II should be dismissed.

The Fifth Circuit has not considered a state-created-danger claim under a set of facts similar to those featured here, but federal courts in the Sixth Circuit rejected a virtually identical state-created-danger theory of liability in the "Flint Water Cases" because the plaintiffs failed to identify a private, third-party actor. *See, e.g.*, *Marble v. Snyder*, 453 F. Supp. 3d 970, 990 (E.D. Mich. 2020). The courts also found the plaintiffs failed to identify a special danger to each plaintiff in particular. *See id.* at 990-91. This Court should reach the same conclusion.

14

**CONCLUSION**

The Court should dismiss Counts I and II against the City.

RESPECTFULLY SUBMITTED, this the 12th day of May, 2023.

/s/ Clarence Webster, III
CLARENCE WEBSTER, III

Clarence Webster, III (MSB #102111)
Kaytie M. Pickett (MSB #103202)
Adam Stone (MSB #10412)
Abbey Reeves (MSB #105720)
JONES WALKER LLP
190 E. Capitol Street, Suite 800
Jackson, MS 39201
Telephone: (601) 949-4900
Facsimile: (601) 949-4804
cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
areeves@joneswalker.com
*Counsel for the City of Jackson*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2023, I electronically filed the foregoing pleading with

the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all

counsel of record.

/s/ Clarence Webster, III
CLARENCE WEBSTER, III