## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**Priscilla Sterling, Raine Becker, Shawn
Miller, and John Bennett, individually and on
behalf of all others similarly situated
Plaintiffs**

**v.**                                                              **Civil No. 3:22-cv-531-KHJ-MTP**

**The City of Jackson, Mississippi; Chokwe A.
Lumumba; Tony Yarber; Kishia Powell;
Robert Miller; Jerriot Smash; Siemens
Corporation; Siemens Industry, Inc.; and
Trilogy Engineering Services LLC**                             **Defendants**

### MAYOR CHOKWE A. LUMUMBA AND ROBERT MILLER'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR QUALIFIED IMMUNITY AND JUDGMENT ON THE PLEADINGS TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES

The Amended Complaint's allegations naturally raise concerns, particularly for public servants like Mayor Lumumba and former Public Works Director Miller. The facts pleaded, however, demonstrate that Mayor Lumumba and Miller worked to address those concerns, and Plaintiffs' claims should be dismissed as a matter of law. Plaintiffs bring two substantive due process claims under Section 1983 against Mayor Lumumba and Miller in their individual capacities: (1) a state-created-danger claim, and (2) a bodily integrity claim.

The Fifth Circuit has never recognized a state-created-danger claim, so that claim fails as a matter of law, as explained in the City's Motion for Judgment on the Pleadings, which Mayor Lumumba and Miller adopt and incorporate by reference.

The Fifth Circuit has also never recognized a bodily-integrity violation for exposure to an environmental harm, so that claim fails, too. To demonstrate a substantive due process violation of bodily integrity, a plaintiff must plead facts showing a public official's actions shock the

1

conscience and his decisions were made with deliberate indifference.  The news articles and exhibits Plaintiffs identify in their pleadings show neither Mayor Lumumba, nor Miller, made the kind of outrageous decisions necessary to state a substantive due process claim.

Both Mayor Lumumba and Miller are entitled to the protection afforded by qualified immunity, which protects government officials from liability for reasonable decisions, the outcome of those decisions notwithstanding.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.") (cleaned up).  Whether, in hindsight, Mayor Lumumba or Miller could have made different decisions is irrelevant; what matters is whether "*no* reasonable [official] could have acted as [Mayor Lumumba or Miller] did here, or every reasonable officer faced with the same facts would not have [acted as Mayor Lumumba or Miller did]."  *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019).  Plaintiffs do not meet that burden.[1]

Last, to the extent Plaintiffs assert Count V against Mayor Lumumba or Miller in his individual capacity, Count V should be dismissed, because Plaintiffs pleaded each "acted in the course and scope of [his] employment."

---

[1] Judge Carlton W. Reeves granted Mayor Lumumba and Miller's request for qualified immunity on other grounds in consolidated litigation, captioned *J.W., et al. v. The City of Jackson, et al.*, in which the plaintiffs pled facts and claims against Mayor Lumumba and Miller similar to those alleged here.  Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 27-33

## RELEVANT FACTUAL BACKGROUND[2]

The allegations in the Amended Complaint related to Mayor Lumumba and Miller are limited.

Plaintiffs claim Mayor Lumumba "consistently" did not take "appropriate actions to ensure that sufficient staff are available to provide Jackson's citizens with clean and safe drinking water," which Plaintiffs claim "is partially responsible for the City of Jackson's failure to provide safe drinking water." Am. Compl. [Doc. 57] at 65 (¶¶ 284, 287). The articles Plaintiffs incorporate into the Complaint contradict that assertion, and in fact demonstrate Mayor Lumumba's—and the City's—efforts to fill two positions at O.B. Curtis (an instrument technician and plant operations supervisor) and hire two operators at J.H. Fewell. *See e.g.*, Steve Wilson, *EPA Emails Reveal City's Continued Violations*, NORTHSIDE SUN (Sept. 8, 2021), identified in Am. Compl. [Doc. 57] at 41 n.54. The Complaint also confirms the City installed components for optimizing the water system's corrosion control after Mayor Lumumba assumed office. *See id.* at 40 (¶ 182).

Miller was the City's Public Works Director from "at least October 2017 to July 2020." The only allegations in the Complaint relevant to Miller are that he (1) made the "true" statement "'there's been no detecting of lead or copper in the water supply'"; and (2) "assured Jackson's citizens water users that '[t]he water is still safe to drink.'" *Id.* at 37-38 (¶¶ 168-71). Regarding the second statement, Miller and Mayor Lumumba, among others, consistently emphasized that Jackson water users should "continue to use precautions." Those precautions included:

> [U]sing filtered or bottled water for pregnant women, children 5 years old and younger, and for making formula. Residents should

---

[2] Mayor Lumumba assumed office on July 3, 2017. There are no allegations he or Miller engaged in conduct giving rise to Plaintiffs' claims before June 3, 2017.

> run the water for one to two minutes in the morning before using it
> for the first time; clean faucet aerators; and make sure children
> have adequate lead testing done. Jacksonians should also not drink
> hot water from the tap.

Marie Weidmayer, *City Violated Water Treatment Procedure, Still Safe to Drink*, JACKSON FREE

PRESS (July 19, 2018), identified in Am. Compl. [Doc. 57] at 38 n. 50.

As of June 2021, "[r]egulators and public-work officials agree[d] that Jackson's water-

treatment facilities have completed key improvements…." *See* Nick Judin, *EPA Tours Jackson*

*Water Treatment Plants as City Faces Long Road to Rehab*, MISSISSIPPI FREE PRESS (July 26,

2021), identified in Am. Compl. [Doc. 57] at 65 n.112.  Importantly, Jackson's water system has

not exceeded the lead action level of 0.015 mg/L since Mayor Lumumba assumed office.  *See*

Notice of Noncompliance, attached to Am. Compl. [Doc. 57] as Exhibit 5, at 3.

## ARGUMENT AND AUTHORITIES

### I.    Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of a party's complaint.  *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570

(2007).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to

relief that is plausible on its face." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748

F.2d 631, 634 (5th Cir. 2014); *Petersen Indus., Inc. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-

FKB, 2011 U.S. Dist. LEXIS 13338, at *3 (S.D. Miss. Feb. 9, 2011).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Petersen Indus.*, 2011 U.S.

Dist. LEXIS 13338, at *3-4 (quoting *Iqbal*, 556 U.S. at 678).

The facial plausibility standard "demands more than an unadorned, the-defendant-

unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678.  "[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3 ("A plaintiff's complaint must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555).

If the exhibits attached to or incorporated into the complaint contradict the pleadings, the exhibits control. *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp. 2d 500, 513-14 (S.D. Tex. 2000) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). The Court is also free to consider matters of public record or other matters appropriate for judicial notice. *Id.*; *see also Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist. LEXIS 174049, at *17-18 (S.D. Miss. Sept. 14, 2021).

The legal standard is the same for dismissal motions filed under Rule 12(c). *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010); *Atwood v. Tullos*, 312 F. Supp. 3d 553, 559-60 (S.D. Miss. 2018) ("In deciding a 12(c) motion, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.") (internal quotations omitted). The standard for a qualified immunity motion brought at the pleadings stage is the same as any other Rule 12(b)(6) or 12(c) motion, save for one difference: the burden is on the *plaintiff*, not the movant, to demonstrate the inapplicability of the defense. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

## II.   Mayor Lumumba and Miller are entitled to qualified immunity.

For Plaintiffs to meet their burden on a motion to dismiss for qualified immunity, the pleading must allege "(1) defendants committed a constitutional violation under current law and (2) the defendants' actions were objectively unreasonable in light of the law that was clearly

5

established at the time of the actions complained of." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (internal quotations omitted). The Court may consider the prongs in either order; and the failure to satisfy one prong is fatal to a § 1983 claim. *See Pearson*, 555 U.S. at 236. Plaintiffs cannot satisfy either prong.

### 1.    The United States Constitution Does Not Guarantee Access to Clean Water.

No court has recognized a fundamental right to water services. *In re Detroit*, 841 F.3d 684, 700 (6th Cir. 2016) ("[T]here is no fundamental right to water service.") (quoting *Golden v. City of Columbus*, 404 F.3d 950, 961 (6th Cir. 2005)). Nor has a court recognized a constitutional right to clean water; in fact, all have denied its existence. *See, e.g.*, *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5-6 (1st Cir. 1992) (holding that the plaintiffs had no "'constitutional right' to safe drinking water," and that even if they did, their claims were preempted by the Safe Drinking Water Act); *Brown v. Detroit Pub. Sch. Comm. Dist.*, 763 F. App'x 497, 503 (6th Cir. 2019) (rejecting claim the defendants' provision of contaminated water violated plaintiff's right to bodily integrity because "neither the text nor history of the Due Process Clause" supports a right to a contaminant-free environment); *see also Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *10 (E.D. Mich. Feb. 28, 2017) (finding found no fundamental constitutional right to "freedom from harmful contaminants"); *Concerned Citizens of Neb. v. U. S. NRC*, 970 F.2d 421, 426-27 (8th Cir. 1992) (rejecting constitutional claims for exposure to radiation from a radioactive waste disposal facility); *MacNamara v. Cty. Council of Sussex Cty.*, 738 F. Supp. 134, 142 (D. Del. 1990) (finding no substantive due process right to health where plaintiff claimed the placement of an electrical substation would harm her health); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1063 (N.D.W. Va. 1973) (holding that

#101495639v3

plaintiffs failed to state a constitutional claim for damage from a "rain of pollutants [with] the [attendant] stench of gasses [sic] and fumes.").

Recently, Judge Carlton W. Reeves concluded that the Constitution does not guarantee positive rights to "contamination-free water" or "a clean environment", stating, "After all, it is black-letter law that the Fourteenth Amendment generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property." *See* Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 34 (internal quotations omitted).

And, the United States' executive branch agrees.  In the United States' Explanation of Position on the United Nations Human Rights Council's recognition of the right to water as a human right, the United States government states, **"The right to safe drinking water and sanitation is not one that is protected in our Constitution, nor is it justiciable as such in U.S. courts**, though various U.S. laws protect citizens from contaminated water."  The United States, *Observations by the United States of America on the Relationship Between Climate Change and Human Rights*, http://www.ohchr.org/Documents/Issues/ ClimateChange/Submissions/USA.pdf (emphasis added).

Because access to a public water supply is not a right protected by the Constitution, necessarily, the quality or quantity of the water provided by a public supply is not a matter of constitutional concern (although it may fall into the realm of tort law, statutory law, or various regulatory regimes).  Nevertheless, Plaintiffs ask this Court to disregard legal precedent and clear pronouncements from our government, and to expand the scope of the Fourteenth Amendment to guarantee "Plaintiffs' access to safe drinking water", a right not set forth in the first eight Amendments to the Constitution or rooted in the United States' history and tradition.  *See, e.g.*,

Am. Compl. [Doc. 57] at 78 (¶361) (claiming the City violated Plaintiffs' constitutional rights by "denying and obstructing Plaintiffs' access to safe drinking water"). The Supreme Court's recent decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) cautions against such expansion. The Court warned,

> In interpreting what is meant by the Fourteenth Amendment's reference to 'liberty,' we must guard against the natural human tendency to confuse what that Amendment protects with our own ardent views about the liberty that Americans should enjoy. That is why the Court has long been 'reluctant' to recognize rights that are not mentioned in the Constitution.

*Id.* at 2247-48 (quoting *Collins* v. *Harker Heights*, 503 U. S. 115, 125 (1992)).

The Court should join its sister courts, and reject Plaintiffs' attempt to move substantive-due-process jurisprudence into the environmental-control arena, an area one court has noted "the judicial process, through constitutional litigation, is peculiarly ill suited." *See Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 536 (S.D. Tex. 1972).

      **2.      Neither Mayor Lumumba nor Miller violated Plaintiffs' right to bodily integrity.**

      a.      <u>Bodily-integrity law does not encompass exposure to contaminants.</u>

Plaintiffs claim the Mayor Lumumba and Miller violated their substantive-due-process right to bodily integrity in Count I of the Complaint. *See* Am. Compl. [Doc. 57] at 77-78 (¶¶ 356-64). Fifth Circuit "case law in this area is sparse." *Young v. Isola, Miss.*, No. 3:15cv108, 2016 WL 6916790, at *5 (N.D. Miss. Nov. 23, 2016), *rev'd on other grounds*, 708 F. App'x 152 (5th Cir. 2017) (per curiam). In the few cases in which a plaintiff claimed a bodily-integrity violation due to exposure to environmental contaminants, courts have declined to expand the scope of substantive due process to encompass environmental control. For instance, in *Gasper v. Louisiana Stadium & Exposition District*, 418 F. Supp. 716 (E.D. La. 1976), a group of nonsmokers brought constitutional claims to ban smoking in the Louisiana Superdome. The

#101495639v3

plaintiffs alleged that "allowing patrons to smoke in the Louisiana Superdome, [the Louisiana Stadium and Exposition District] is causing other nonsmokers involuntarily to consume hazardous tobacco smoke, thereby causing physical harm and discomfort to those nonsmokers…." *Id.* at 717.  The district court found there is "no constitutional right to a clean environment."  *Id.* at 720-21.  The Fifth Circuit agreed.  *See Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897 (5th Cir. 1978).

The *Gasper* district court relied on *Tanner*, 340 F. Supp. 532.  In *Tanner*, the plaintiffs brought substantive due process claims for petroleum refineries' emissions of pollutants into the air, which the plaintiffs alleged caused pulmonary damage.  *Id.* at 534.  The district court found that, assuming the plaintiffs could plead sufficient state action, they still failed to state a constitutional claim.  The court noted,

> [F]rom an institutional viewpoint, the judicial process, through constitutional litigation, is peculiarly ill-suited to solving problems of environmental control. Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes.

*Id.* at 536.  This Court should not expand the scope of substantive due process into the environmental-control arena, either.

In the Fifth Circuit, the right to bodily integrity "appears to arise almost exclusively in the context of sexual abuse" cases.  *Bickford*, 2016 U.S. Dist. LEXIS 69101, at *11 n.4; *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 50-51 (5th Cir. 1994); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995); *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020).  In *every* case in which the Fifth Circuit has found a violation of bodily integrity, a state actor has coerced – either directly through force or otherwise -- the plaintiff to act in a

manner that violated his or her bodily integrity. For example, in the *Doe* cases cited above, a teacher sexually abused a student. In *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir. 1987), a teacher tied a second grader to a chair. And, in *United States v. Guidry*, 456 F.3d 493, 506 (5th Cir. 2006), a police officer sexually assaulted female arrestees. In short, those cases all involve the government forcing an intrusion upon the plaintiff's body.

Absent coercion (e.g., assault, rape, sexual assault or harassment, or nonconsensual stripping, prolonged nudity and manual manipulation of the privates for a state actor's sexual gratification[3]), the Fifth Circuit has declined to find a substantive-due-process violation. For example, in *Pierce*, the court found no violation of the substantive due process right to bodily integrity when a student was killed while driving his teacher's ATV. 600 F. App'x at 194. In its opinion, the Fifth Circuit distinguished sexual abuse and corporeal punishment cases from a traditional claim of negligence, finding that the teacher did not "deliberately abuse, restrain, threaten or touch [the deceased]." *Id.* at 199. The court noted Supreme Court precedent, warning courts against expanding substantive due process rights by turning a negligence claim into a constitutional matter. *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Likewise, in *Bickford*, the Court declined to find plaintiff pleaded a bodily-integrity violation arising out of a stage-production accident, in which the plaintiff's spine was crushed, lungs were punctured, and legs were shattered. 2016 U.S. Dist. LEXIS 69101, *1, 11-13.

The Supreme Court cases addressing bodily-integrity claims confirm that the right is violated when the state forces or compels intrusion into the claimant's body. *See, e.g.*, *Union Pacific Railway Co. v. Botsford*, 41 U.S. 250 (1891) (determining the state could not force an individual to submit to a surgical examination); *Rochin v. Cal.*, 342 U.S. 164, 166, 172 (1952)

---

[3] *See generally Tyson v. Cnty of Sabine*, 42 F.4th 508, 519 (5th Cir. 2022)

#101495639v3

(finding the state could not force an "an emetic solution through a tube into [a claimant's] stomach"); *Wash. v. Harper*, 494 U.S. 210 (1990) (finding that the state could forcibly inject antipsychotic drug into an unwilling claimant).

The holdings of those cases are inapplicable here.[4]  Plaintiffs do not allege Mayor Lumumba or Miller forced them to consume water.  Coercion is what distinguishes a viable bodily-integrity claim from Plaintiffs'.  The latter lacks merit because a robust consensus of cases holds there is *no* substantive-due-process right to a clean environment.  In each of those cases, the plaintiff claimed that some pollutant—whether sewage, mold, chemicals, tobacco smoke, or radiation—entered or threatened to enter their body and that the government was aware of, and responsible for, the risk.  None found a violation of the plaintiff's bodily integrity.

This Court should follow that precedent, and not expand substantive due process rights by turning a negligence claim into a constitutional matter.

> b.    Neither Mayor Lumumba nor Miller coerced Plaintiffs to consume water.

Plaintiffs have not stated a bodily-integrity claim against Mayor Lumumba and Miller, because they fail to allege either coerced them to consume the water.  Plaintiffs' pleadings and incorporated exhibits demonstrate the absence of coercion.

While Plaintiffs' factual recitation is long, it is short on allegations that Mayor Lumumba or Miller's alleged conduct gave rise to their constitutional claims.  In fact, the Amended

---

[4] *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019), is neither controlling nor persuasive.  First, unlike in *Guertin*, the neither Mayor Lumumba nor Miller made a false statement.  Second, *Guertin* cited no case in which a state actor did not intentionally coerce an intrusion on the plaintiff's body.  Third, the *Guertin* court greatly expanded the law of substantive due process to analogize a state's forcible injections to a state's assurances that contaminated water was safe to drink.  Because the Fifth Circuit has cautioned against expanding substantive due process rights, and because the Fifth Circuit has never recognized a bodily-integrity violation without coercion, this Court should decline finding such a violation here.

#101495639v3

Complaint is notable for what it does not allege, *i.e.*, that the City's water system exceeded the EPA actionable lead level after Mayor Lumumba assumed office and during Miller's tenure with the City. The Amended Complaint does not make that allegation, because it cannot; the City's water system has not had exceeded the actionable lead levels since Mayor Lumumba assumed office.

Instead, Plaintiffs first claim Mayor Lumumba "has the power to ensure that sufficient staff are available," but has not taken action to ensure sufficient staff is available. *See* Am. Compl. [Doc. 57] at 65 (¶¶ 284, 287). That alleged conduct does not give rise to a substantive-due-process, bodily integrity claim. *See generally Hernandez*, 380 F.3d at 879 ("The threshold issue presented by any case arising under Section 1983 is whether the plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution."). As shown, the Constitution does not guarantee access to a public water supply. Because the Constitution does not guarantee access to a public water supply, then, necessarily, the means by which that water public water is supplied is not a matter of constitutional concern.

Furthermore, the allegation Mayor Lumumba took no action to ensure sufficient staffing is false; Plaintiffs' own citations show that. *See e.g.*, Steve Wilson, *EPA Emails Reveal City's Continued Violations*, NORTHSIDE SUN (Sept. 8, 2021), identified in Am. Compl. [Doc. 57] at 41 n.54. That notwithstanding, Plaintiffs fail to identify what power Mayor Lumumba has to employ operators at O.B. Curtis and J.H. Fewell that he used, or failed to use, with conscious-shocking deliberate indifference. Can he conscript a private citizen and has failed to do so? Has he discouraged operators from applying for open positions or blocked their hiring? Has he blocked the posting and advertising of open job positions? The answer is obviously no to all of

12

the above.  Plaintiffs cannot demonstrate a constitutional violation based on unreasonable, conclusory allegations.

The only allegations in the Amended Complaint that may give rise to a constitutional claim relate to public pronouncements Mayor Lumumba or Miller made that Plaintiffs allege may have coerced them to consume the water.  Regarding those pronouncements, the question is whether either Mayor Lumumba or Miller intentionally made statements that compelled Plaintiffs to consume water either knew was contaminated.  Plaintiffs' pleadings and the incorporated exhibits show that both Mayor Lumumba and Miller provided guidance as to how to use the water safely, discouraging the use of the water under certain circumstances.

Unlike in *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019),[5] Mayor Lumumba and Miller's public pronouncements were not false.  Plaintiffs' citations demonstrate Mayor Lumumba and Miller consistently informed Jackson water users of the measures they should take regarding water usage.  Those precautions included (1) using filtered or bottled water for pregnant women, children 5 years old and younger, and for making formula; (2) running the water for one to two minutes in the morning before using it for the first time; (3) cleaning faucet aerators; (4) making sure children have adequate lead testing done; and (5) not drinking hot water from the tap.  *See* Marie Weidmayer, *City Violated Water Treatment Procedure, Still Safe to Drink*, JACKSON FREE PRESS (July 19, 2018), identified in Am. Compl. [Doc. 57] at 38 n.50. Taken together, Mayor Lumumba and Miller's pronouncements sought to encourage safety, not to force citizens to consume lead.  The Amended Complaint ignores the precautions Mayor Lumumba and Miller provided; Plaintiffs do not aver the precautions were false.

---

[5]     Ultimately, the *Guertin* court found state actors knowingly made false statements to coerce the public to consume tap water.

#101495639v3

Nevertheless, insufficient, or even misleading, public pronouncements do not give rise to a bodily-integrity claim. *See Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008). In *Benzman*, plaintiffs sued the EPA administrator for issuing press releases with misleading statements. *Id.* at 123-24. Specifically, the plaintiffs alleged the EPA administrator knew that the air was not safe to breathe and falsely represented in press releases that it was. *Id.* at 125. The Second Circuit noted that "no court has ever held a government official liable for denying substantive due process by issuing press releases or making public statements." *Id.* The court went further, however, holding that the plaintiffs did not plead a substantive-due-process claim based on "public statements that offered assurances of environmental safety that turned out to be substantially exaggerated". *Id.* at 127. The Second Circuit did so, because – absent allegations of an intent to harm – the government cannot be held liable for statements when reassuring the public following events affecting public health. *See id.* at 127-129.

The Court should reach a similar conclusion here. As shown, Mayor Lumumba and Miller's public pronouncements were not false. And, Plaintiffs make no allegations that Mayor Lumumba or Miller intended to hurt anyone, much less Plaintiffs. Instead, they offered assurances to the public the water was safe to drink subject to certain precautions that were clearly and consistently conveyed to the public. Whether they should have said more (or nothing at all) does not give rise to a substantive-due-process claim, especially in the absence of allegations of an intent to harm. Finding otherwise would – without guidance – greatly expand the scope of substantive-due-process. The Supreme Court has cautioned courts not to do so, and Mayor Lumumba and Miller ask the Court to follow that guidance here.

Even if the pronouncements were false (which they were not), Plaintiffs' bodily-integrity claim fails because Plaintiffs do not allege any Plaintiff relied on the alleged statements.

#101495639v3

Causation is an element of any § 1983 claim. *See Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976) (discussing the level of connection necessary between a supervisory defendant's actions and the plaintiff's deprivation of constitutional rights to adequately establish causation). And "[c]ausation is a requirement for . . . liability that is separate from deliberate indifference." *See Cole v. Jenkins*, No. 4:21-CV-01779, 2022 U.S. Dist. LEXIS 108868, at *15 (M.D. Pa. 2022) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014)); *see also Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 891 (W.D. Tex. 2019) ("[A] substantive due process plaintiff must allege that the challenged policies or practices 'were the direct cause of the constitutional deprivation.'" (quoting *M.D. v. Abbott*, 907 F.3d 237, 248 (5th Cir. 2018)). Putting aside the warnings Mayor Lumumba and Miller gave, Plaintiffs do *not* allege that they even read, or heard, any of Mayor Lumumba or Miller's alleged statements, let alone that they relied upon the statements in drinking the water without taking any precautions. In other words, Plaintiffs do not allege Mayor Lumumba or Miller's statements coerced them to ingest lead. And without an element of coercion, Plaintiffs' claim is meritless.

Admittedly, when faced with an identical bodily-integrity claim, Judge Reeves found the plaintiffs sufficiently alleged a bodily-integrity claim. *See* Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 33-36. Mayor Lumumba and Miller respectfully disagree with Judge Reeves's conclusion, which is not binding on this Court, for a number of reasons. First, the Court based its opinion on a line of Supreme Court cases, in which the state forced or compelled intrusion into the claimants' body. *See, e.g.*, *id.* at 35-36. The Court did not address precedent from the Fifth Circuit finding no substantive-due-process violation where a claimant alleged exposure to an environmental contaminate, or the Second Circuit's on-point decision, holding that a substantive-due-process claim cannot be based on public reassurances.

#101495639v3

The Court also did not address whether those plaintiffs pleaded the causation element of their § 1983 claim, the absence of which is fatal to the plaintiffs' claim.

Importantly, given the allegations and claims at issue in this case, that Court's opinion reaches an incorrect legal conclusion. The Court wrote: "The Supreme Court has long recognized that the government does not have to provide a service, but once it does, the provision of that service is subject to constitutional constraints. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970); *see also Dandridge v. Williams*, 397 U.S. 471, 522 (1970) (Marshall, J., dissenting) ('[T]he Court has already recognized several times that when a benefit, even a 'gratuitous' benefit, is necessary to sustain life, stricter constitutional standards, both procedural and substantive, are applied to the deprivation of that benefit.')." *See* Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 35 n.122.    But – again, respectfully, the cases the Court relied upon do not support the conclusion that Plaintiffs have alleged a bodily-integrity claim.

As an initial matter, *Goldberg* was superseded by statute, 42 U.S.C. 601. *See Hudson v. Bowling*, 232 W. Va. 282, 290-91 (2013). And *Goldberg* addressed the procedural due process rights of a welfare recipient. The welfare benefits at issue there were a matter of statutory entitlement for persons qualified to receive them and the Court recognized that state action terminating those rights had constitutional implications. The case has no bearing on the substantive due process right of bodily integrity. And the *Dandridge* majority opinion applied rational basis review, not strict scrutiny, to an equal protection challenge to a Maryland Department of Public Welfare regulation. In upholding the regulation, the *Dandridge* majority opinion held, "the Equal Protection Clause does not require that a State must choose between

attacking every aspect of a problem or not attacking the problem at all." 397 U.S. at 487.[6]

"Going further, the Court stated: "[t]he Constitution may impose certain procedural safeguards upon systems of welfare administration. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." *Id.* (internal citation omitted).

For avoidance of doubt, no Court has held that the provision of water, once provided, subjects a municipality or its officials to constitutional strict scrutiny as to how that water is provided.

> **3.    Plaintiffs have not pleaded Mayor Lumumba or Miller made a conscious-shocking decision with deliberate indifference to Plaintiffs' constitutional rights.**

"[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Pena v. Givens*, 637 F. App'x 775, 782 (5th Cir. 2015) (unpublished). In *Lewis*, the Supreme Court emphasized that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)).

Not only must the executive action be conscience-shocking, but it must also be made with subjective "deliberate indifference." *Sanchez v. Oliver*, 995 F.3d 461, 473 (5th Cir. 2021). "'Deliberate indifference is an extremely high standard to meet.'" *Id.* (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). In *Pierce*, the Fifth Circuit stressed:

---

[6]    The dissenting opinion in *Dandridge* relied on *Shapiro v. Thompson*, 394 U.S. 618 (1969), which was overturned by *Edelman v. Jordan*, 415 U.S. 651 (1974).

#101495639v3

> A due process violation results from "*deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) (citation omitted). As the Seventh Circuit has explained, deliberate indifference entails "conduct that reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991) (citations and internal quotations omitted).

600 F. App'x at 198 (emphasis in original).  Plaintiffs cannot demonstrate conscious-shocking deliberate indifference with respect to *any* public pronouncement Mayor Lumumba or Miller made, because Plaintiffs do not allege either made a false statement.

Second, Plaintiffs do not allege Mayor Lumumba or Miller intended to hurt anyone when making public pronouncements as to how to consume the public-supplied water safely.  The Second Circuit holding in *Benzman* is illustrative here.  In that case, the Court found that a public official's public pronouncements are not "conscience-shocking merely because for some persons it resulted in grave consequences that a correct decision could have avoided."  523 F.3d at 128-29.  In reaching that conclusion, the *Benzman* court stated:

> [W]hen agency officials decide how to reconcile competing governmental obligations in the face of disaster, only intent to cause harm arbitrarily can shock the conscience in a way that justifies constitutional liability. . . . Accepting as we must the allegation that the defendants made the wrong decision by disclosing information they knew to be inaccurate, and that this had tragic consequences for the plaintiffs, we conclude that a poor choice made by an executive official between or among the harms risked by the available options is not conscience-shocking . . .

The Court should reach a similar conclusion here.

18

### 4.    The law is not clearly established.

Plaintiffs also cannot show a violation of clearly-established law.  A law is "clearly established" when "[t]he precedent [is] clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up).  A court must determine whether a "controlling authority" or "robust consensus of cases of persuasive authority" establishes the unlawfulness of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (citation omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 327 n.10 (5th Cir. 2002).  "Generally, to satisfy this standard, the plaintiff must 'identify[] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and…explain[] why the case clearly proscribed the conduct of that individual officer.'"  *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)).  "While an exact case on point is not required, the confines of the officers' violation must be 'beyond debate.'"  *Id.* (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)).  "**Broad general propositions are not enough to overcome qualified immunity**."  *Id.* (emphasis added).  "Plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'"  *Id.* at 206.

The *only* remotely analogous case to this one in the Fifth Circuit is *Gasper*, in which the court found *no* constitutional claim.  *Gasper*, 577 F.2d at 899.  *Bradley v. Puckett*, 157 F.3d 1022 (5th Cir. 1998), is *not* analogous to the case at bar, factually or legally.  First, *Bradley* involved only an Eighth Amendment claim, not a substantive due process claim.  There, the Court found a prisoner's lack of access to bathing water while in confinement rose to the level of "cruel and

19

unusual," which entails "restrictions of confinement [that] rise to a level that results in physical torture…pain without penological purpose." *Id.* at 1025 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Second, the *Bradley* plaintiff had to bathe himself in toilet water, which caused fungal infections, because he was unable to otherwise bathe for several months.  *Id.*  A prison's decision to deprive an inmate a bath for several months is not similar to Mayor Lumumba and Miller's decisions on how to manage the City's water system.

All Fifth Circuit cases finding a viable bodily integrity substantive due process claim involve coercion.  In light of the total absence of "a case in which an officer acting under similar circumstances was held to have violated" a plaintiff's right to substantive due process, *Cope*, 3 F.4th at 205, Mayor Lumumba and Miller could not reasonably have expected to find themselves facing a substantive due process claim.

Although Plaintiffs cite the Safe Drinking Water Act and EPA regulations, neither provides a basis for Plaintiffs' claims.  Those statutes are irrelevant to the issue before the Court. *See Gagne v. Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) ("[N]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation -- of federal or of state law -- unless *that statute or regulation* provides the basis for the cause of action sued upon.") (citation omitted).  The inquiry should be based on whether the constitutional right was clearly established at the relevant time.

There also was no "robust consensus" of persuasive authority that clearly established a constitutional violation.  Courts uniformly rejected constitutional claims arising from environmental harms until the Sixth Circuit's decision in *Guertin*.  But, the only authority that can be considered is that in place when the alleged violation occurred.  *See Kokesh v. Curlee*,

20

No. 20-30356, 2021 U.S. App. LEXIS 28607, at *15-20 (5th Cir. Sept. 21, 2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

      *Guertin* is also not persuasive on whether Mayor Lumumba or Miller's conduct was "clearly proscribed." *See Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020). *Guertin* relies upon no Supreme Court case with analogous facts. The cases *Guertin* cites deal with forced surgery (*Winston v. Lee*, 470 U.S. 753 (1985)); forced medication (*Harper*); forced stomach-pumping (*Rochin*); and the burden of proof for withdrawal of life support (*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269-70 (1990)). More factually analogous are *Mattoon v. City of Pittsfield*, 980 F.2d 1 (1st Cir. 1992), dealing with contamination of a public water supply, or *Benzman*, dealing with allegedly false statements about the risk of a pollutant.

      *Guertin* found the constitutional violations in that case were obvious. In this Circuit, the exception for "obvious" violations is narrow: "[u]nder *Taylor*, plaintiffs are only excused of their obligation to identify an analogous case in extreme circumstances where the constitutional violation is obvious." *Cope*, 3 F.4th at 206 (citing *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (per curiam) (internal quotations omitted). Here, where there were competing policy reasons for the switch to surface water; where the majority of the City had been served surface water with no violations; and where the City gave tailored notice to the affected citizens, the Court should find there is no "obvious" violation. There is nothing obviously unconstitutional about public servants making difficult decisions when faced with limited resources and competing crises, particularly given that "substantive due process is not the clearest of Supreme Court doctrines…the caselaw in this area is contradictory, imprecise, and, well, messy." *Daves v. Dall. Cty.*, 984 F.3d 381, 411 (5th Cir. 2020) (internal quotations omitted). Certainly, when the

#101495639v3

*Guertin* court itself divided over whether a constitutional violation had occurred at all, it is not

"beyond debate" that the individual Defendants here violated Plaintiffs' constitutional rights.[7]

### III.    Plaintiffs do not plead a MTCA claim against Mayor Lumumba and Miller individually.

To the extent Plaintiffs assert Count V against Mayor Lumumba and Miller in each's

individual capacity—*see generally* Am. Compl. [Doc. 57] at 8, 10 (¶¶ 22, 26)—it should be

dismissed because Plaintiffs pleaded both "acted in the course and scope of [his] employment."

*See, e.g.*, *id.* at 91 (¶ 417); *see also City of Clinton v. Tornes*, 252 So. 3d 34, 37 (Miss. 2018)

("While the MTCA permits a government employee to 'be joined in an action against a

governmental entity in a *representative* capacity if the act or omission complained of is one for

which the governmental entity may be liable,' the MTCA makes clear 'no employee shall be

held *personally* liable for acts or omissions occurring within the course and scope of the

employee's duties.'") (quoting MISS. CODE § 11-46-7(2) (Rev. 2012)) (emphasis in original);

*Dearman v. Stone Cnty. Sch. Dist.*, Civ. No. 1:13-cv-267-HSO-RHW, 2014 U.S. Dist. LEXIS

37489, *19-20 (S.D. Miss. Mar. 21, 2014) ("The MTCA generally provides that employees of a

governmental entity who act within the course and scope of employment are not personally liable

for injuries arising from their acts or omissions.").  Plaintiffs' pleadings eviscerate any MTCA

claim against Mayor Lumumba or Miller in his individual capacity.

## CONCLUSION

For the forgoing reasons, the Court should dismiss Counts I, II and V against Mayor

Lumumba and Miller.

RESPECTFULLY SUBMITTED, this the 14th day of July, 2023.

---

[7]       Judge Reeves reached the same conclusion in consolidated litigation, captioned *J.W., et al. v. The City of Jackson, et al*.  Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 33 ("[T]hat right was not clearly established at the time the Defendants . . . .").

#101495639v3

/s/ John F. Hawkins
JOHN F. HAWKINS

John F. Hawkins (MSB #9556)
HAWKINS LAW, P.C.
226 North President Street (39201)
Post Office Box 24627
Jackson, MS 39225-4627
Telephone: (601) 969-9692
Facsimile: (601) 914-3580
john@hgattorneys.com
*Counsel for Mayor Chokwe A.*
*Lumumba and Robert Miller*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I electronically filed the foregoing pleading with

the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all

counsel of record.

/s/ John F. Hawkins
JOHN F. HAWKINS

#101495639v3