**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**Priscilla Sterling, Raine Becker, Shawn
Miller, and John Bennett, individually and on
behalf of all others similarly situated
Plaintiffs**

**v.**                                                    **Civil No. 3:22-cv-531-KHJ-MTP**

**The City of Jackson, Mississippi; Chokwe A.
Lumumba; Tony Yarber; Kishia Powell;
Robert Miller; Jerriot Smash; Siemens
Corporation; Siemens Industry, Inc.; and
Trilogy Engineering Services LLC**                        **Defendants**

**CITY OF JACKSON'S MEMORANDUM IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS TO DISMISS THE AMENDED CLASS ACTION
<u>COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES</u>**

The City's Motion raises two questions, each rooted in established law:

> To plead a bodily-integrity violation, Plaintiffs must aver the City
> coerced them into consuming the water.  The Amended Complaint
> and the exhibits thereto demonstrate the City promptly and
> consistently provided notice, along with precautions, as to how the
> water may be consumed safely.  Absent coercion, have Plaintiffs
> stated a bodily-integrity claim against the City?

> Second, the Fifth Circuit has repeatedly declined to recognize a
> state-created-danger theory of liability.  Nevertheless, Plaintiffs
> assert a state-created-danger claim against the City without
> pleading essential elements of the claim.  Should the Court
> disregard Fifth Circuit precedent to recognize a claim not
> sufficiently pleaded?

In short, no and no.  Accordingly, the Court should dismiss Counts I and II of Plaintiffs'

Amended Complaint.

**RELEVANT FACTUAL AVERMENTS**

Immediately after the City received notice that thirteen samples tested in June 2015

detected lead levels above the federal action level, the City promptly informed the public.  *See*

Am. Compl. [Doc. 57] at 33 (¶ 150); Anna Wolfe & Sara Fowler, *Jackson, MSDH Report Lead Detection in City Water*, CLARION-LEDGER (Jan. 29, 2016), identified in Am. Compl. [Doc. 57] at 33 n.42.  During a press conference, announcing the results, Powell reported she "immediately dispatched crews to those homes" for samples that showed an exceedance.  *See*  R.L. Nave, *Jackson Has Long Been at High Risk for Lead Poisoning*, JACKSON FREE PRESS (Feb. 3, 2016), identified in Am. Compl. [Doc. 57] at 14 n.10.  She also stated, "We want people to understand how they should be flushing their internal plumbing system before using water…These are just measures you take."  *See id.*  Specific recommendations and precautions were issued for small children and pregnant women.  *See* Tim Summers, Jr., *As the Water Turns, City Wrestles Over Corrosion Study*, JACKSON FREE PRESS (Mar. 16, 2016), identified in Am. Compl. [Doc. 57] at 27 n.34.

The recommendations and measures included, among others, running tap water on cold for one to two minutes before consumption; never using hot water for consumption; children under 5 and pregnant women not consuming tap water; using filtered or bottled water when mixing formula; and screening children under six for lead. *See, e.g.*, Anna Wolfe, *6 Things to Know About the Lead Water in Jackson*, CLARION-LEDGER (Mar. 25, 2016), identified in the Am. Compl. [Doc. 57] at 41 n.55.

Since that press conference, the City has consistently advised residents (1) to run the cold tap for one to two minutes before using tap water; (2) not to use hot water for cooking or drinking; (3) pregnant women and small children should refrain from using tap water; (4) to refrain from mixing baby formula with tap water; and (5) to screen small children for lead.  *See* Anna Wolfe, *Jackson Hit with Technical Violation for Water Treatment*, Clarion-Ledger (June 9, 2016), identified in Am. Compl. [Doc. 57] at 19 n.24 (noting that precautions for pregnant

women and children would stay in place); Justin Vicory, *Department of Health Says Jackson Is In Violation of Safe Drinking Water Requirements*, Clarion-Ledger (July 18, 2018), identified in Am. Compl. [Doc. 57] at 37 n.49.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a party's complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.2d 631, 634 (5th Cir. 2014); *Petersen Indus., Inc. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-FKB, 2011 U.S. Dist. LEXIS 13338, *3 (S.D. Miss. Feb. 9, 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3-4 (quoting *Iqbal*, 556 U.S. at 678).  The facial plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Iqbal*, 556 U.S. at 678.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3 ("A plaintiff's complaint must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555).

If the exhibits attached to or incorporated into the complaint contradict the allegations of the complaint, the exhibits control.  *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp. 2d 500, 513-14 (S.D. Tex. 2000) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.

1995)).  The Court is also free to consider matters of public record or other matters appropriate

for judicial notice.  *Id.*; *see also Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist.

LEXIS 174049, at *17-18 (S.D. Miss. Sept. 14, 2021).

The legal standard is the same for dismissal motions filed under Rule 12(c).  *In re Great*

*Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010); *Atwood v. Tullos*, 312 F. Supp.

3d 553, 559-60 (S.D. Miss. 2018) ("In deciding a 12(c) motion, the court accepts all well-

pleaded facts as true, viewing them in the light most favorable to the plaintiff.") (internal

quotations omitted).

## ARGUMENT

"[T]he threshold issue presented by any case arising under Section 1983 is whether the

plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution."  *Hernandez*

*v. Tex. Dep't of Protective & Reg. Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).  To state a § 1983

claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the

United States and (2) demonstrate that the alleged deprivation was committed by a person acting

under color of state law."  *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 198 (5th Cir.

2015) (citing *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Plaintiffs fail to plead facts sufficient to demonstrate the City violated their substantive-

due-process right to bodily integrity.

## I.      The United States Constitution Does Not Guarantee Access to Clean Water.

No court has recognized a fundamental right to water services.  *In re Detroit*, 841 F.3d

684, 700 (6th Cir. 2016) ("[T]here is no fundamental right to water service.") (quoting *Golden v.*

*City of Columbus*, 404 F.3d 950, 961 (6th Cir. 2005)).  Nor has a court recognized a

Constitutional right to clean water; in fact, all have denied its existence.  *See, e.g.*, *Mattoon v.*

*City of Pittsfield*, 980 F.2d 1, 5-6 (1st Cir. 1992) (holding that the plaintiffs had no

"'constitutional right' to safe drinking water," and that even if they did, their claims were

preempted by the Safe Drinking Water Act); *Brown v. Detroit Pub. Sch. Comm. Dist.*, 763 F.

App'x 497, 503 (6th Cir. 2019) (rejecting claim the defendants' provision of contaminated water

violated plaintiff's right to bodily integrity because "neither the text nor history of the Due

Process Clause" supports a right to a contaminant-free environment); *see also Lake v. City of*

*Southgate*, No. 16-10251, 2017 WL 767879, at *10 (E.D. Mich. Feb. 28, 2017) (finding found no

fundamental constitutional right to "freedom from harmful contaminants"); *Concerned Citizens*

*of Neb. v. U. S. NRC*, 970 F.2d 421, 426-27 (8th Cir. 1992) (rejecting constitutional claims for

exposure to radiation from a radioactive waste disposal facility); *MacNamara v. Cty. Council of*

*Sussex Cty.*, 738 F. Supp. 134, 142 (D. Del. 1990) (finding no substantive due process right to

health where plaintiff claimed the placement of an electrical substation would harm her health);

*Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1063 (N.D.W. Va. 1973) (holding that

plaintiffs failed to state a constitutional claim for damage from a "rain of pollutants [with] the

[attendant] stench of gasses [sic] and fumes.").

     Recently, Judge Carlton W. Reeves concluded that the Constitution does not guarantee

positive rights to "contamination-free water" or "a clean environment", stating, "After all, it is

black-letter law that the Fourteenth Amendment generally confers 'no affirmative right to

governmental aid, even where such aid may be necessary to secure life, liberty or property." *See*

Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 34.

     And, the United States' executive branch agrees.  In the United States' Explanation of

Position on the United Nations Human Rights Council's recognition of the right to water as a

human right, the United States government states, **"The right to safe drinking water and**

**sanitation is not one that is protected in our Constitution, nor is it justiciable as such in U.S. courts**, though various U.S. laws protect citizens from contaminated water." The United States, *Observations by the United States of America on the Relationship Between Climate Change and Human Rights*, http://www.ohchr.org/Documents/Issues/ ClimateChange/Submissions/USA.pdf (emphasis added).

Because access to a public water supply is not a right protected by the Constitution, necessarily, the quality or quantity of the water provided by a public supply is not a matter of constitutional concern (although it may fall into the realm of tort law, statutory law, or various regulatory regimes). Plaintiffs, nevertheless, ask this Court to disregard legal precedent and clear pronouncements from our government, and to expand the scope of the Fourteenth Amendment to guarantee "Plaintiffs' access to safe drinking water", a right not set forth in the first eight Amendments to the Constitution or rooted in the United States' history and tradition. *See, e.g.*, Am. Compl. [Doc. 57] at 78 (¶361) (claiming the City violated Plaintiffs' constitutional rights by "denying and obstructing Plaintiffs' access to safe drinking water"). The Supreme Court's recent decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) cautions against such expansion. The Court warned,

> In interpreting what is meant by the Fourteenth Amendment's reference to 'liberty,' we must guard against the natural human tendency to confuse what that Amendment protects with our own ardent views about the liberty that Americans should enjoy. That is why the Court has long been 'reluctant' to recognize rights that are not mentioned in the Constitution.

*Id.* at 2247-48 (quoting *Collins* v. *Harker Heights*, 503 U. S. 115, 125 (1992)).

The Court should join its sister courts, and reject Plaintiffs' attempt to move substantive-due-process jurisprudence into the environmental-control arena, an area one court has noted "the

judicial process, through constitutional litigation, is peculiarly ill suited." *See Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 536 (S.D. Tex. 1972).

## II.    Bodily-Integrity Law Does Not Encompass Exposure to Contaminants.

Plaintiffs claim the City violated their substantive-due-process right to bodily integrity in Count I of the Complaint. *See* Am. Compl. [Doc. 57] at 77-78 (¶¶ 356-64). Fifth Circuit "case law in this area is sparse." *Young v. Isola, Miss.*, No. 3:15cv108, 2016 WL 6916790, at *5 (N.D. Miss. Nov. 23, 2016), *rev'd on other grounds*, 708 F. App'x 152 (5th Cir. 2017) (per curiam). In the few cases in which a plaintiff claimed a bodily-integrity violation due to exposure to environmental contaminants, courts have declined to expand the scope of substantive due process to encompass environmental control. For instance, in *Gasper v. Louisiana Stadium & Exposition District*, 418 F. Supp. 716 (E.D. La. 1976), a group of nonsmokers brought constitutional claims to ban smoking in the Louisiana Superdome. The plaintiffs alleged that "allowing patrons to smoke in the Louisiana Superdome, [the Louisiana Stadium and Exposition District] is causing other nonsmokers involuntarily to consume hazardous tobacco smoke, thereby causing physical harm and discomfort to those nonsmokers…." *Id.* at 717. The district court found there is "no constitutional right to a clean environment." *Id.* at 720-21. The Fifth Circuit agreed. *See Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897 (5th Cir. 1978).

The *Gasper* district court relied on *Tanner*, 340 F. Supp. 532. In *Tanner*, the plaintiffs brought substantive due process claims for petroleum refineries' emissions of pollutants into the air, which the plaintiffs alleged caused pulmonary damage. *Id.* at 534. The district court found that, assuming plaintiffs could plead sufficient state action, they still failed to state a constitutional claim. The court noted,

> [F]rom an institutional viewpoint, the judicial process, through
> constitutional litigation, is peculiarly ill-suited to solving problems

of environmental control. Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes.

*Id.* at 536.   This Court should not expand the scope of substantive due process into the environmental-control arena, either.

In the Fifth Circuit, the right to bodily integrity "appears to arise almost exclusively in the context of sexual abuse" cases. *Bickford*, 2016 U.S. Dist. LEXIS 69101, at *11 n.4; *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 50-51 (5th Cir. 1994); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995); *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020).   In *every* case in which the Fifth Circuit has found a violation of bodily integrity, a state actor has coerced – either directly through force or otherwise -- the plaintiff to act in a manner that violated his or her bodily integrity.   For example, in the *Doe* cases cited above, a teacher sexually abused a student.   In *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir. 1987), a teacher tied a second grader to a chair.   And, in *United States v. Guidry*, 456 F.3d 493, 506 (5th Cir. 2006), a police officer sexually assaulted female arrestees. In short, those cases all involve the government forcing an intrusion upon the plaintiff's body.

Absent coercion (e.g., assault, rape, sexual assault or harassment, or nonconsensual stripping, prolonged nudity and manual manipulation of the privates for a state actor's sexual gratification[1]), the Fifth Circuit has declined to find a substantive-due-process violation.   For example, in *Pierce*, the court found no violation of the substantive due process right to bodily integrity when a student was killed while driving his teacher's ATV.   600 F. App'x at 194.   In its opinion, the Fifth Circuit distinguished sexual abuse and corporeal punishment cases from a

---

[1] *See generally Tyson v. Cnty of Sabine*, 42 F.4th 508, 519 (5th Cir. 2022).

traditional claim of negligence, finding that the teacher did not "deliberately abuse, restrain, threaten or touch [the deceased]." *Id.* at 199. The court noted Supreme Court precedent, warning courts against expanding substantive due process rights by turning a negligence claim into a constitutional matter. *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Likewise, in *Bickford*, the Court declined to find plaintiff pleaded a bodily-integrity violation arising out of a stage-production accident, in which the plaintiff's spine was crushed, lungs were punctured, and legs were shattered. 2016 U.S. Dist. LEXIS 69101, *1, 11-13.

The Supreme Court cases addressing bodily-integrity claims confirm that the right is violated when the state forces or compels intrusion into the claimant's body. *See, e.g.*, *Union Pacific Railway Co. v. Botsford*, 41 U.S. 250 (1891) (determining the state could not force an individual to submit to a surgical examination); *Rochin v. Cal.*, 342 U.S. 164, 166, 172 (1952) (finding the state could not force an "an emetic solution through a tube into [a claimant's] stomach"); *Wash. v. Harper*, 494 U.S. 210 (1990) (finding that the state could forcibly inject antipsychotic drug into an unwilling claimant).

The holdings of those cases are inapplicable here. Plaintiffs do not allege the City forced them to consume water.

Coercion is what distinguishes a viable bodily-integrity claim from Plaintiffs'. The latter lacks merit because a robust consensus of cases holds there is *no* substantive-due-process right to a clean environment. In each of those cases, the plaintiff claimed that some pollutant—whether sewage, mold, chemicals, tobacco smoke, or radiation—had entered or threatened to enter her body and that the government was aware of and responsible for the risk. None found a violation of the plaintiff's bodily integrity. This Court should follow that precedent, and not expand substantive due process rights by turning a negligence claim into a constitutional matter.

**III.    The City's Action Did Not Coerce Plaintiffs to Consume the Water.**

Plaintiffs have not stated a bodily-integrity claim against the City, because they fail to allege the City coerced them to consume the water.  Plaintiffs' pleadings and incorporated exhibits demonstrate the absence of coercion.

Plaintiffs' ninety-nine page Amended Complaint raises a number of alleged deficiencies regarding the quality and quantity of the water the City provided.  None of those alleged deficiencies give rise to a substantive-due-process, bodily integrity claim.  *See generally Hernandez*, 380 F.3d at 879 ("The threshold issue presented by any case arising under Section 1983 is whether the plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution.").  As shown, the Constitution does not guarantee access to a public water supply. Because the Constitution does not guarantee access to a public water supply, then, necessarily, the quality and quantity of a public water supply is not a matter of constitutional concern.

The only allegations in the Amended Complaint that may give rise to a constitutional claim relate to public pronouncements the City made that Plaintiffs allege may have coerced them to consume the water.  Regarding to those pronouncements, the question is whether the City intentionally made statements that compelled Plaintiffs to consume water it knew was contaminated.  Plaintiffs' pleadings and the incorporated exhibits show the City provided guidance as to how to use the water safely, discouraging the use of the water under certain circumstances.

Unlike in *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019),[2] the City's public pronouncements were not false.[3]  Instead, immediately after the City received notice of a lead exceedance, it promptly informed the public, providing specific recommendations and precautions as to how the water may be consumed safely.  *See* Tim Summers, Jr., *As the Water Turns, City Wrestles Over Corrosion Study*, JACKSON FREE PRESS (Mar. 16, 2016), identified in Am. Compl. [Doc. 57] at 27 n.34.  The recommendations and measures included, among others, running tap water on cold for one to two minutes before consumption; never using hot water for consumption; children under five and pregnant women not consuming tap water; using filtered or bottled water when mixing formula; and screening children under six for lead. *See, e.g.*, Anna Wolfe, *6 Things to Know About the Lead Water in Jackson*, CLARION-LEDGER (Mar. 25, 2016), identified in the Am. Compl. [Doc. 57] at 41 n.55.  The City has been consistent in providing those precautions.

Taken together, the City's pronouncements sought to encourage safety, not to force citizens to consume lead.  The Amended Complaint ignores the precautions the City provided; Plaintiffs do not aver the City's precautions were false.

---

[2]      Ultimately, the *Guertin* court found state actors knowingly made false statements to coerce the public to consume tap water.

[3]      The Court is under no obligation to accept Plaintiffs' conclusory statements the City's public pronouncements were false when those statements are contradicted by Plaintiffs' own exhibits to the Amended Complaint.  *See Wilkins*, 101 F. Supp. 2d at 513-14 (finding that if the exhibits attached to or incorporated into the complaint contradict the allegations of the complaint, the exhibits control.).

For example, Plaintiffs claim an employee was fired because he confirmed "the City's cast-iron water lines had solid bands of lead every twenty feet."  Am. Compl. [Doc. 57] at 36 (¶ 161).  That statement is false; that employee provided no such confirmation.  *See* KARE Staff, *Water Worker Fired After Talking About Lead to Media*, KARE 11 (Mar. 29, 2016) (https://www.kare11.com/article/news/nation-now/water-worker-fired-after-talking-about-lead-to-media/108980682), identified in Am. Compl. [Doc. 57] at 44 n.63.

Nevertheless, insufficient, or even misleading, public pronouncements do not give rise to a bodily-integrity claim. *See Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008). In *Benzman*, plaintiffs sued the EPA administrator for issuing press releases with misleading statements. *Id.* at 123-24. Specifically, the plaintiffs alleged the EPA administrator knew that the air was not safe to breathe and falsely represented in press releases that it was. *Id.* at 125. The Second Circuit noted that "no court has ever held a government official liable for denying substantive due process by issuing press releases or making public statements." *Id.* The court went further, however, holding that the plaintiffs did not plead a substantive-due-process claim based on "public statements that offered assurances of environmental safety that turned out to be substantially exaggerated". *Id.* at 127. The Second Circuit did so, because – absent allegations of an intent to harm – the government cannot be held liable for statements when reassuring the public following events affecting public health. *See id.* at 127-129.

The Court should reach a similar conclusion here. As shown, the City's public pronouncements were not false. And, Plaintiffs make no allegations that the City intended to hurt anyone, much less Plaintiffs. Instead, the City offered assurances to the public the water was safe to drink subject to certain precautions that were clearly and consistently conveyed to the public. Whether the City should have said more (or nothing at all) does not give rise to a substantive-due-process claim, especially in the absence of allegations of an intent to harm. Finding otherwise would – without guidance – greatly expand the scope of substantive-due-process. The Supreme Court has cautioned Courts not to do so, and the City asks the Court to follow that guidance here.

Even if the City's pronouncements were false (which they were not), Plaintiffs' bodily-integrity claim fails because Plaintiffs do not allege any Plaintiff relied on the City's alleged

12

statements. Causation is an element of any § 1983 claim. *See Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976) (discussing the level of connection necessary between a supervisory defendant's actions and the plaintiff's deprivation of constitutional rights to adequately establish causation). And "[c]ausation is a requirement for . . . liability that is separate from deliberate indifference." *See Cole v. Jenkins*, No. 4:21-CV-01779, 2022 U.S. Dist. LEXIS 108868, at *15 (M.D. Pa. 2022) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014)); *see also Lozano v. Baylor Univ.,* 408 F. Supp. 3d 861, 891 (W.D. Tex. 2019) ("[A] substantive due process plaintiff must allege that the challenged policies or practices 'were the direct cause of the constitutional deprivation.'" (quoting *M.D. v. Abbott*, 907 F.3d 237, 248 (5th Cir. 2018)). Putting aside the warnings the City gave, Plaintiffs do *not* allege that they even read, or heard, any of those statements, let alone that they relied upon the statements in drinking the water without taking any precautions. In other words, Plaintiffs do not allege that City officials' statements coerced them to ingest lead. And without an element of coercion, Plaintiffs' claim is indistinguishable from a meritless claim that the City owed Plaintiffs a constitutional right to clean water.

Admittedly, Judge Reeves found the plaintiffs sufficiently alleged a bodily-integrity claim. *See* Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 33-36. Respectfully, the City disagrees with that Court's conclusion, which is not binding on this Court, for a number of reasons. First, the Court predicated its opinion on a line of Supreme Court cases, in which the state forced or compelled intrusion into the claimants' body. *See, e.g., id.* at 35-36. The Court does not address precedent from the Fifth Circuit finding no substantive-due-process violation where a claimant alleged exposure to an environmental contaminate or the Second Circuit, which appears to be directly on point, finding a substantive-due-process claim cannot be

based on public pronouncements, reassuring the public.  The Court also did not address whether those plaintiffs pleaded the causation element of their § 1983 claim, the absence of which is fatal to the plaintiffs' claim.

Importantly, given the allegations at issue in this case, the Court's opinion reaches an incorrect legal conclusion.  Judge Reeves wrote: "The Supreme Court has long recognized that the government does not have to provide a service, but once it does, the provision of that service is subject to constitutional constraints. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970); *see also Dandridge v. Williams*, 397 U.S. 471, 522 (1970) (Marshall, J., dissenting) ('[T]he Court has already recognized several times that when a benefit, even a 'gratuitous' benefit, is necessary to sustain life, stricter constitutional standards, both procedural and substantive, are applied to the deprivation of that benefit.')."  *See* Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 35 n.122.    But – again, respectfully, the cases the Court relied upon do not support the conclusion that Plaintiffs have alleged a bodily-integrity claim.

As an initial matter, *Goldberg* was superseded by statute, 42 U.S.C. 601. *See Hudson v. Bowling*, 232 W. Va. 282, 290-91 (2013).  And *Goldberg* addressed the procedural due process rights of a welfare recipient.  The welfare benefits at issue there were a matter of statutory entitlement for persons qualified to receive them and the Court recognized that state action terminating those rights had constitutional implications.  The case has no bearing on the substantive due process right of a recipient of government water services.  And the *Dandridge* majority opinion applied rational basis review, not strict scrutiny, to an equal protection challenge to a Maryland Department of Public Welfare regulation.  In upholding the regulation, the *Dandridge* majority opinion held, "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at

all." 397 U.S. at 487.[4] "Going further, the Court stated: "[t]he Constitution may impose certain procedural safeguards upon systems of welfare administration. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." *Id.* (internal citations omitted).

For avoidance of doubt, no Court has held that the provision of water, once provided, subjects a municipality to constitutional scrutiny as to how that water is provided. The Constitution does not force the City to choose between providing perfect water to every citizen or not providing water at all. The EPA has recognized that absolute perfection is not a realistic standard; the Lead and Copper Rule contains an "action level" for lead contamination, not a total ban on all lead. *See* 40 C.F.R. 141.80(c). Exceeding the lead action level required the City to issue public notice. *See* 40 C.F.R. 141.201. The City did so. Whatever "constitutional constraints" apply to the City's provision of water services, they should not be more stringent than the applicable statutory and regulatory constraints. In other words, it should not be easier for Plaintiffs to state a constitutional claim than a statutory one.

**IV.    The Fifth Circuit Does Not Recognize State-Created-Danger Claims.**

Count II of the Complaint is not legally cognizable and should be dismissed. The Fifth Circuit has repeatedly declined to recognize a state-created-danger theory of liability, including in cases in which the "theory's viability has been squarely presented." *See, e.g.*, *Beltran v. El Paso*, 367 F.3d 299, 307 (5th Cir. 2004). Most recently, the Fifth Circuit refused to recognize a state-created-danger claim in *Fisher v. Moore*, No. 21-20553, 2023 U.S. App. LEXIS 6317, *8-*9 (5th Cir. Mar. 16, 2023) ("The Fifth Circuit has never recognized the state-created-danger

---

[4] The dissenting opinion in *Dandridge* relied on *Shapiro v. Thompson*, 394 U.S. 618 (1969), which was overturned by *Edelman v. Jordan*, 415 U.S. 651 (1974).

exception.  In our published, and thus binding, caselaw, we have repeatedly declined to recognize the state-created danger doctrine.") (cleaned up).  *See also Robinson v. Webster Cty.*, 825 F. App'x 192, 195 (5th Cir. 2020) ("[T]his Court has declined to join our sister circuits in recognizing [the state-created-danger] theory on several occasions."); *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020) ("[T]he Fifth Circuit has never recognized this 'state-created-danger' exception."); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017) ("Subsequent panels have 'repeatedly noted' the unavailability of the [state-created-danger] theory.").

There is no need to revisit well-established Fifth Circuit precedent, especially where Plaintiffs have not alleged they suffered an injury from a third party.  *See generally Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions…that will have no effect on the outcome of the case.").  Judge Reeves reached the same conclusion in consolidated litigation, in which the plaintiffs pleaded an identical state-created danger claim.  Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 43 ("A state-created danger claim requires that a third party – not the defendant state actor – cause the plaintiff's injury.").[5]

Although the Fifth Circuit has explicitly refused to recognize the state-created-danger theory of liability, it has articulated a standard for such a claim.  Like its sister circuits, the Fifth Circuit recognizes the state-created-danger theory of liability redresses a state actor's failure "to protect an individual from injuries inflicted by a third party if the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to [an] individual's

---

[5] "The City of Jackson's primary argument . . . namely that the Plaintiffs have failed to identify the third-party, non-state actor who is responsible [sic] their injuries.  The City's argument is well-taken."  Or. [Doc. 135] at 43.

injury" only.  *See McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002).[6]  Count II is devoid of a third-party-inflicted injury allegation.  *See* Am. Compl. [Doc. 57] at 83-86 (¶¶ 380-90) (failing to identify any injury inflicted by a non-state actor).  This alone is fatal to Count II.

That notwithstanding, the Fifth Circuit has identified the following elements a plaintiff must demonstrate for a state-created-danger claim: "(1) that the environment created by the state actor is dangerous, (2) the state actor must know it is dangerous (deliberate indifference), and (3) the state actor must have used its authority to create an opportunity that would not otherwise have existed for the third party's crime to occur."  *Dixon v. Alcorn Cnty. Sch. Dist.*, 499 F. App'x 364, 366-67 (5th Cir. 2012).[7]  The state-created-danger theory "is inapposite without a known victim."  *Doe*, 675 F.3d at 865.  A plaintiff must "demonstrate the existence of an immediate danger facing a known victim."  *Id.* at 866 (quoting *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999)).  Identifying a known victim requires more than singling out a segment of the general public at large that may be affected by state action; the test articulated by the Fifth Circuit requires plaintiffs to plead the state actor was aware of an immediate danger to a specific and identifiable individual.  *See id.* at 865; *see also Dixon*, 499 F. App'x at 368 (finding potential

---

[6] Some Circuits read the language of *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), to impose a duty on state actors to protect individuals from injuries inflicted *by a third party* if the state actor played an affirmative role in creating or exacerbating the dangerous situation that led to the individual's injury.

[7] The often-articulated test includes two elements.  *See, e.g.*, *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 864-65 (5th Cir. 2012) (en banc) (explaining "state-created danger theory requires a plaintiff to show (1) the defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate indifference to the plight of the plaintiff.").  "[T]he second element is then subdivided into three prongs, which combine to subsume the original first element." *Dixon*, 499 F. App'x at 367 n.3.  *See generally Doe*, 675 F.3d at 865 (stating that to establish deliberate indifference, a plaintiff must plead facts that "the environment created by the state actors must be dangerous; they must know it is dangerous; and they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur").

harm to students in general is inadequate to satisfy the known-victim requirement); *Doe*, 675 F.3d at 865-66 (same).

The Complaint does not allege the City singled out any Plaintiff, instead alleging each Plaintiff is a "Jackson water user." *See* Am. Compl. [Doc. 57] at 80(¶ 371). That allegation is insufficient to state an essential element of a state-created-danger claim. *See Cancino v. Cameron Cnty.*, 794 F. App'x 414, 417 (5th Cir. 2019) ("It is not enough for the Plaintiffs to allege that the Defendants knew of a risk to a class of people that included the Plaintiffs, namely people whose 'geographical proximity…put them in a zone of danger.'"); *Rios v. City of Del Rio*, 444 F.3d 417, 424 n.7 (5th Cir. 2006) ("[L]iability exists only if the state actor is aware of an immediate danger facing a known victim and does *not* extend to all foreseeable victims.") (emphasis in original) (internal quotations omitted). Importantly, that self-serving allegation contradicts Plaintiffs' class allegations in which they explicitly state they are bringing suit on behalf of all persons who resided in Hinds County . . . from January 1, 2009 to present. *See* Am. Compl. [Doc. 57] at 73 (¶ 344). Again, when faced with an identical state-created danger, Judge Reeves agreed with the City, finding, "Nothing in the Amended Complaint suggests that the City or State Defendants knew that these specific Plaintiffs would be at an enhanced risk of harm as a result of the Defendants' (in)actions." Or. [Doc. 135], No. 3:21-CV-663-CWR-LGI (S.D. Miss. Mar. 23, 2023), at 44. Count II should be dismissed.

The Fifth Circuit has not considered a state-created-danger claim under a set of facts similar to those featured here, but federal courts in the Sixth Circuit rejected a virtually identical state-created-danger theory of liability in the "Flint Water Cases" because the plaintiffs failed to identify a private, third-party actor. *See, e.g.*, *Marble v. Snyder*, 453 F. Supp. 3d 970, 990 (E.D.

Mich. 2020). The courts also found the plaintiffs failed to identify a special danger to each plaintiff in particular. *See id.* at 990-91. This Court should reach the same conclusion.

## CONCLUSION

Not all municipal-caused injuries are actionable under § 1983. *Bickford*, 2016 U.S. Dist. LEXIS 69101, *14 (W.D. Tex. May 26, 2016). Plaintiffs have not sufficiently alleged the City violated their substantive-due-process rights. At best, Plaintiffs have pleaded a common-law tort claim against the City. Plaintiffs may proceed with that claim, which is Count V of the Amended Complaint. While the City disputes the averments and claims in Count V, the City has not moved to dismiss that claim for failure to state a claim. The other claims, Counts I and II, should be dismissed.

RESPECTFULLY SUBMITTED, this the 14th day of July, 2023.


                                        */s/ Clarence Webster, III*
                                        CLARENCE WEBSTER, III

Clarence Webster, III (MSB #102111)
Kaytie M. Pickett (MSB #103202)
Adam Stone (MSB #10412)
Abbey Reeves (MSB #105720)
JONES WALKER LLP
190 E. Capitol Street, Suite 800
Jackson, MS 39201
Telephone: (601) 949-4900
Facsimile: (601) 949-4804
cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
areeves@joneswalker.com
*Counsel for the City of Jackson*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on July 14, 2023, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

                             */s/ Clarence Webster, III*
                             CLARENCE WEBSTER, III