**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    528

**BE IT REMEMBERED** that a Regular Meeting of the City Council of Jackson, Mississippi was convened in the Council Chambers in City Hall at 6:00 p.m. on March 25, 2014, being the fourth Tuesday of said month, when and where the following things were had and done to wit:

Present:     Council Members: Melvin Priester, Jr., President; De'Keither Stamps, Vice President; Quentin Whitwell, Ward 1; Tony T. Yarber, Ward 6 and Margaret Barrett-Simon, Ward 7. Directors: Charles Tillman, Acting Mayor; Brenda Pree, City Clerk; and Gail Lowery, City Attorney.

Absent:      LaRita Cooper-Stokes, Ward 3.

\* \* \* \* \* \* \* \* \* \* \* \* \*

The meeting was called to order by **President Melvin Priester, Jr.**

\* \* \* \* \* \* \* \* \* \* \* \* \*

The invocation was offered by **Pastor Hardy Gilmore** of Step of Faith Ministries.

\* \* \* \* \* \* \* \* \* \* \* \* \*

**President Priester** recognized the following individuals who provided public comments:

- **Lawrence Rucker** expressed concerns regarding crime within the City of Jackson.

- **Peter Gregory**, a representative of Central Mississippi Health Services, invited citizens to participate in a Health Fair in Battlefield Park on March 30, 2014.

- **Lena Tyler,** President of Bon Air Subdivision Neighborhood Association, expressed concerns regarding construction defects within homes in the neighborhood.

- **Sollie Norwood**, Mississippi Senator of District 28, expressed concerns regarding conditions in the Bon Air Subdivision and recommended that Council Members collaborate in an effort to resolve issues within the Bon Air Subdivision.

- **Stephanie Parker-Weaver**, a representative of Rebirth Alliance, Inc., expressed gratitude to Council Members for providing a grant that allowed funding for breast cancer awareness programs.

- **Cassandra L. West-Terry**, a representative of the American Red Cross, acknowledged the month of March as Red Cross Month.

- **Tim Rush**, a representative of Parents of Jim Hill Baseball Booster Club, expressed his concerns regarding the lack of proper lighting at Battlefield Park.

- **Carolina Jones**, a representative of Vector Disease Control, Inc., expressed appreciation for the opportunity to service the northern part of the City of Jackson.

- **Ineva May Pittman** expressed concerns regarding the financing of City elections.

\* \* \* \* \* \* \* \* \* \* \* \* \*

There came on for Introduction Agenda Item No. 2:

**ORDINANCE CLOSING AND VACATING A PORTION OF JOHN R. LYNCH STREET AND PRENTISS STREET IN FAVOR OF THE ABUTTING LANDOWNER.** Said item was held until the next Regular City Council Agenda on April 8, 2014.

\* \* \* \* \* \* \* \* \* \* \* \* \*

There came on for Introduction Agenda Item No. 3:

**ORDINANCE CLOSING AND VACATING THE ROACH STREET KCS RAILROAD CROSSING IN FAVOR OF THE ABUTTING LANDOWNER.** Said item was held until the next Regular City Council Agenda on April 8, 2014.

* * * * * * * * * * * * * *

There came on for Introduction Agenda Item No. 4:

**ORDINANCE CLOSING AND VACATING A PORTION OF PINE STREET IN FAVOR OF THE ABUTTING LANDOWNER.** Said item was held until the next Regular City Council Agenda on April 8, 2014.

* * * * * * * * * * * * * *

**ORDINANCE OF THE CITY COUNCIL OF JACKSON, MISSISSIPPI DESIGNATING THE HONORARY RENAMING OF GLENDALE STREET (FROM BAILEY AVENUE TO RONDO STREET) TO PASTOR KEITH TONKEL WAY.**

WHEREAS, Pastor Keith Tonkel, a community leader in the City of Jackson, has been an advocate for civil rights and humanitarian causes; and

WHEREAS, Pastor Keith Tonkel has served for many years as pastor of Wells Memorial United Methodist Church in the Bailey Avenue Community; and

WHEREAS, Pastor Keith Tonkel recently celebrated his 75th birthday with a Diamond Celebration at Wells Church in the City of Jackson.

**NOW THEREFORE BE IT ORDAINED:**

Section 1: That the Jackson City Council does hereby designate the honorary renaming of Glendale Street (from Bailey Avenue to Rondo Street) to Pastor Keith Tonkel Way.

Section 2: That the City Clerk shall notify all appropriate City Departments and other necessary parties of said honorary designation.

**Council Member Yarber** moved adoption; **Council Member Barrett-Simon** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman and Yarber.
Nays- Whitwell.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDINANCE OF THE CITY OF JACKSON, MISSISSIPPI ESTABLISHING THE HONORARY RENAMING OF OAK FOREST DRIVE (FROM MCDOWELL ROAD TO COOPER ROAD) TO LEONARD TERRELL DRIVE.**

WHEREAS, on Wednesday, October 30, 2013, the Jackson Public School District, along with the entire City of Jackson, lost a distinguished citizen and public servant with the passing of Mr. Leonard B. Terrell; and

WHEREAS, the long-time head custodian at Marshall Elementary School, Mr. Terrell was a beacon of light to the Marshall Elementary Family and derived significant gratification from helping others; and

WHEREAS, is fitting and proper that Oak Forest Drive (from McDowell Road to Cooper Road) be renamed in his honor.

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    530

NOW, THEREFORE, BE IT ORDAINED:

Section 1. That the Jackson City Council does hereby designate the honorary renaming of Oak Forest Drive (from McDowell Road to Cooper Road) to Leonard Terrell Drive.

Section 2. That the City Clerk shall notify all appropriate City Departments and other necessary parties of said honorary designation.

**Council Member Yarber** moved adoption; **Council Member Stamps** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman and Yarber.
Nays- Whitwell.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDINANCE OF THE CITY OF JACKSON, MISSISSIPPI ESTABLISHING THE RENAMING OF SOUTH PRESIDENT ST. (800 AND 900 BLOCKS) FROM SILAS BROWN TO THE RAILROAD TRACKS TO IRBY DRIVE.**

**WHEREAS**, on Monday, December 31, 1979, the City of Jackson lost a distinguished citizen and public servant with the passing of Stuart C. Irby, Sr.; and

**WHEREAS**, the Stuart C. Irby Company was founded in 1924, has been at the current location of 815 S President Street since 1936 and is one of the largest electrical distributors in the United States providing items for residential, utility, commercial, and industrial application; and

**WHEREAS**, it is fitting and proper that South President Street (from the 800 and 900 blocks to the railroad tracks) be renamed Irby Drive; and

**WHEREAS**, the Jackson City Council adopted a procedure for renaming streets and public facilities where by any City Council, person, the Departments of Planning Development or Public Works may petition for a renaming; and

**WHEREAS**, notice was duly and legally given to property owners and citizens interested that a meeting of the council would be held at City Hall at 10:00 a.m. on August 13, 2013, as developed by the petitioner; and

**NOW THEREFORE, IS IT ORDAINED BY THE CITY COUNCIL OF JACKSON, MS THAT:**

Section 1. South President St. (800 and 900 blocks) from Silas Brown to the railroad tracks be renamed Irby Drive.

Section 2. The City Clerk transmit a certified copy of this Ordinance to the Director of the Mississippi State Highway Department.

Section 3. The City Engineer is authorized and directed to make appropriate revisions to the official map of the City of Jackson, Mississippi to reflect the renaming of said Public Street and to take further appropriate action as required by the Ordinance to affect said street name change.

Section 4. The City Clerk shall notify the United States Postal Service, Department of Transportation, Public Safety Communication Division, all appropriate City Departments, and other necessary parties of the renaming of said street.

Section 5. This Ordinance shall be effective thirty (30) days after passage and publication.

**Council Member Stamps** moved adoption; **Council Member Barrett-Simon** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman and Yarber.
Nays- Whitwell.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

### ORDINANCE OF THE CITY COUNCIL OF JACKSON, MISSISSIPPI RENAMING HIGHLAND DRIVE (FROM RIVERSIDE DRIVE TO LAKELAND DRIVE) TO MUSEUM BOULEVARD.

WHEREAS, the Mississippi Children's Museum desires to rename Highland Drive (from Riverside Drive to Lakeland Drive) to Museum Boulevard; and

WHEREAS, the renaming of Highland Drive to Museum Boulevard would result in the museum's location being more identifiable to tourists and would address concerns regarding response times in the event of an emergency at the museum; and

WHEREAS, the Jackson City Council finds that it is proper and fitting that the name of Highland Drive (from Riverside Drive to Lakeland Drive) be changed to Museum Boulevard.

NOW THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF JACKSON, MISSISSIPPI THAT:

SECTION 1. The name of Highland Drive (from Riverside Drive to Lakeland Drive) be hereby changed to Museum Boulevard.

SECTION 2. The City Clerk shall notify the United States Postal Service, the Mississippi Department of Transportation, the Public Safety Communication Division, all appropriate City, County and State entities, and all necessary parties of the renaming of said street.

SECTION 3. The City Engineer is authorized and directed to make appropriate revisions to the official map of the City of Jackson, Mississippi to reflect the renaming of said public street and to take further appropriate actions as required by Ordinance to affect said street renaming.

SECTION 4. This Ordinance shall take effect thirty (30) days after passage and proper publication.

**Council Member Barrett- Simon** moved adoption; **Council Member Yarber** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman and Yarber.
Nays- Whitwell.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

### ORDER APPROVING CLAIMS NUMBERED 6800 TO 7207, APPEARING AT PAGES 1080 TO 1140, INCLUSIVE THEREON, ON MUNICIPAL "DOCKET OF CLAIMS", IN THE AMOUNT OF $3,566,386.82 AND MAKING APPROPRIATIONS FOR THE PAYMENT THEREOF.

IT IS HEREBY ORDERED that claims numbered 6800 to 7207, appearing at pages 1080 to1140, inclusive thereon, in the Municipal "Docket of Claims", in the aggregate amount of $3,566,386.82 are hereby approved for payment and said amount is expressly appropriated for the immediate payment thereof.

IT IS FURTHER ORDERED that there is appropriated from the various funds the sums necessary to be transferred to other funds for the purpose of paying the claims as follows:

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                     532

| FROM: | TO ACCOUNTS PAYABLE FUND |
|---|---|
| AMERICORP CAPTIAL CITY REBUILD | 291.59 |
| CAPITAL CITY REVENUE FUND | 182.93 |
| CAPITOL STREET 2-WAY PROJECT | 146,386.43 |
| EARLY CHILDHOOD (DAYCARE) | 5,533.06 |
| FIRE PROTECTION | 250.00 |
| G O PUB IMP CONS BD 2003 ($20M) | 260,322.60 |
| GENERAL FUND | 454,987.53 |
| HOME PROGRAM FUND | 25,000.00 |
| HOUSING COMM DEV ACT (CDBG) FD | 286.50 |
| JXN CONVENTION & VISITORS BUR | 270,665.23 |
| LANDFILL/SANITATION FUND | 4,756.07 |
| MADISON SEWAGE DISP OP & MAINT | 38.31 |
| NCSC SENIOR AIDES | 39.91 |
| P E G ACCESS- PROGRAMMING FUND | 7,838.48 |
| PARKS & RECR. FUND | 25,895.58 |
| REPAIR & REPLACEMENT FUND | 1,800.00 |
| SEIZURE & FORFEITED PROP- FED | 26.89 |
| SEIZURE & FORFEITED PROP- STATE | 7,000.00 |
| STATE TORT CLAIMS FUND | 6,191.56 |
| THALIA MARA HALL RENOVATION | 1,849,004.00 |
| TRAFFIC- REPAIR & REPL FD | 4,442.14 |
| TRANSPORTATION FUND | 135,929.55 |
| WATER/SEWER CONST FD 1999-$35M | 203.05 |
| WATER/SEWER OP & MAINT FUND | 254,113.84 |
| WATER/SEWER REVENUE FUND | 42,583.24 |
| | **$3,566,386.82** |

**Council Member Stamps** moved adoption; **Council Member Whitwell** seconded.

— — — — — — — — — — — — — —

**President Priester** recognized **Lee Unger**, the City's Director of Administration, who provided the Council with a brief overview of the Claims Docket at the request of **Council Member Whitwell.**

— — — — — — — — — — — — — —

Thereafter, **President Priester** called for a final vote on the claims docket:

Yeas-Barrett-Simon, Priester, Stamps, Tillman and Yarber.
Nays-Whitwell.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

ORDER APPROVING GROSS PAYROLL INCLUDING PAYROLL
DEDUCTION CLAIMS NUMBERED 6800 TO 7207 AND MAKING
APPROPRIATION FOR THE PAYMENT THEREOF.

IT IS HEREBY ORDERED that payroll deduction claims numbered 6800 to 7207, inclusive therein, in the Municipal "Docket of Claims", in the aggregate amount of $134,120.69 plus payroll, are approved for payment and necessary amounts are appropriated from various municipal funds for transfer to the Payroll Fund for the immediate payment thereof.

IT IS FINALLY ORDERED that the following expenditures from the accounts Payable Fund be made in order to pay amounts transferred thereto from the Payroll Fund for payment of the payroll deduction claims authorized herein for payment:

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    533

| FROM | TO ACCOUNTS PAYABLE FUND | TO PAYROLL FUND |
|------|---|---|
| GENERAL FUND | | 2,004,769.18 |
| PARKS & RECR. | | 75,655.01 |
| LANDFILL FUND | | 25,773.05 |
| SENIOR AIDES | | 2,578.72 |
| WATER/SEWER OPER. & MAINT | | 220,256.16 |
| PAYROLL FUND | | 1,288.50 |
| EARLY CHILDHOOD | | 36,628.73 |
| HOUSING COMM DEV | | 6,514.37 |
| TITLE III AGING PROGRAMS | | 6,176.40 |
| AMERICORP CAPITAL CITY REBUILD | | 9,161.84 |
| TRANSPORTATION FUND | | 7,612.42 |
| T-WARNER PA/GA FUND | | 6,933.12 |
| COPS HIRING GRANT 2011 | | 27,797.03 |
| PAYROLL | 134,120.69 | |

TOTAL    $2,431,144.53

**Council Member Barrett-Simon** moved adoption; **Council Member Yarber** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDER AUTHORIZING THE PURCHASE OF AERIAL PHOTOGRAPHY OF THE CITY OF JACKSON.**

**WHEREAS**, Hinds County, Mississippi has conducted aerial photography of the County and surveyed its municipalities, including the City of Jackson; and

**WHEREAS**, the City of Jackson wishes to purchase from Hinds County three inch orthophotography of the city at a cost of $28,749.00; and

**WHEREAS**, the City of Jackson's most recent orthophotography was obtained in 1995 and is currently outdated and in order to update the City's mapping effort, a proficient and accurate digital orthophotography is needed; and

**WHEREAS**, the City of Jackson provide centralized support for over 2,000 employees, as well as GIS mapping needs of citizens in the metropolitan area including all the major applications including, for departments such as Public Works, and Public Safety (911, Police, Fire and Municipal Court), thus requiring the best imagery available; and

**WHEREAS**, the City of Jackson has determined that the cost of $28,749.00 is below market value and is in the best interest of the taxpayers of the City of Jackson, pursuant to Section 31-7-13(m)(vi) of the Mississippi Code Annotated of 1972, as amended.

**NOW THEREFORE BE IT ORDERED THAT** the Mayor is hereby authorized to execute all necessary documents for the purchase of three inch orthophotography of the City of Jackson at a cost not to exceed $28,749.00.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER AUTHORIZING THE MAYOR TO EXECUTE A PROFESSIONAL SERVICE CONTRACT WITH DONNA CAROLE ECHOLS d/b/a THE ECHOLS GROUP FOR LOBBYIST SERVICES FOR THE CITY OF JACKSON, MISSISSIPPI.

**WHEREAS,** the City of Jackson, Mississippi ("City of Jackson"), has a need for the professional services of a lobbyist to represent its interests before various governmental agencies and/or entities, including but not limited to the Mississippi Legislature.

**WHEREAS,** Donna Carole Echols Ph.D. ABD, a consultant with extensive lobbying experience formed The Echols Group, a lobbying firm formed in 1992.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Mayor is authorized to execute a contract with Donna Carole Echols d/b/a The Echols Group, to serve as the lobbyist for the City of Jackson for a term period beginning immediately upon execution of a contract and ending on April 30, 2014, in the amount of ten thousand dollars ($10,000.00), with an option to extend the contract for an additional thirty (30) days for five thousand dollars ($5,000.00), all to be paid out of the General Government Fund.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER APPROVING THE PROFESSIONAL SERVICE CONTRACT WITH THE WINSTON AND STRAWN LAW FIRM TO SERVE AS THE WASHINGTON, D.C. LOBBYIST FOR THE CITY OF JACKSON, MISSISSIPPI.

**WHEREAS,** the City of Jackson, Mississippi ("City of Jackson"), desires the professional services of a lobbyist to represent its interests before the United States Congress, along with various federal government agencies in Washington, D.C.; and

**WHEREAS,** John Waits, an attorney with Winston and Strawn Law Firm and a Mississippi native, has served as Washington, D.C. lobbyist for the City of Jackson for many years; and

**WHEREAS,** it is the recommendation of the Administration that the City continue utilizing services provided by Winston and Strawn Law Firm for the furtherance of the City of Jackson's legislative agenda and other interests in Washington, D.C., with a monthly retainer in the amount of no more than five thousand five hundred dollars ($5,500.00), and payment of reasonable expenses not to exceed one hundred dollars ($100.00) per month without prior written approval, for said contract not to exceed August 31, 2014; and

**WHEREAS,** the amounts recommended herein are those previously approved by the governing authorities in April of 2011.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    535

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Mayor is authorized to execute a contract with the law firm of Winston and Strawn of Washington, D.C. to serve as the lobbyist for the City of Jackson in Washington, D.C., with a monthly retainer not to exceed the amount of five thousand five hundred dollars ($5,500.00), and the payment of reasonable expenses not to exceed one hundred dollars ($100.00) per month without prior written approval, for said contract to begin immediately and not to exceed August 31, 2014.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDER AUTHORIZING THE MAYOR TO EXECUTE AN AGREEMENT AMENDMENT WITH COMCAST CABLE COMMUNICATIONS, LLC EXTENDING THE CITY OF JACKSON'S CABLE FRANCHISE RENEWAL AGREEMENT.**

**WHEREAS,** the City of Jackson, Mississippi ("City of Jackson"), is authorized to grant one or more nonexclusive, revocable cable television franchises to construct, operate, and maintain a Cable Television System within the City of Jackson; and

**WHEREAS,** the City of Jackson entered into a Cable Franchise Renewal Agreement ("Agreement") with Time Warner Cable effective April 28, 1998; and

**WHEREAS,** said Agreement was for a term period of fifteen (15) years; and

**WHEREAS,** since that time, Time Warner Cable has been acquired by and operating as Comcast Cable Communications, LLC; and

**WHEREAS,** on May 14, 2013, the Jackson City Council authorized the Mayor to execute an amended agreement with Comcast Cable Communications, LLC to extend the City of Jackson's Cable Franchise Renewal Agreement for a period of one year, and for an additional six months if good faith negotiations were ongoing but not complete; and

**WHEREAS,** it has been determined that it is in the best interest of the citizens of the City of Jackson that the Agreement be extended again in order to permit Comcast Cable Communications, LLC and the City of Jackson to fully negotiate a franchise renewal agreement.

**IT IS HEREBY ORDERED** that the Mayor is authorized to execute an agreement amendment with Comcast Cable Communications, LLC to extend the City of Jackson's Cable Franchise Renewal Agreement until December 31, 2015.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDER AUTHORIZING THE ACTING MAYOR TO EXECUTE A MEMORANDUM OF UNDERSTANDING WITH THE MISSISSIPPI FAMILIES FOR KIDS.**

**WHEREAS,** the Mississippi Families for Kids in Jackson, Mississippi and the Dina Dinosaur Therapeutic Group Program is designed to support parents and teachers by providing interventions to enhance the opportunity for children who are having serious emotional and behavioral problems; and

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**            536

**WHEREAS,** the City of Jackson is mutually interested in decreasing the number of families with children enrolled in the City of Jackson Early Childhood Development Centers who have been identified at an early age as having aggressive and disruptive behaviors; and

**WHEREAS,** Mississippi Families for Kids has a therapeutic program known as Dina Dinosaur and a curriculum known as The Incredible Years to address aggressive and disruptive behaviors in children; and

**WHEREAS,** Mississippi Families for Kids has agreed to provide services to parents and children enrolled in the City of Jackson's Early Childhood Development Centers in the form of behavior therapy and counseling with a licensed therapist; and

**WHEREAS,** the services provided by Mississippi Families for Kids to parents and children will not be billed to the City of Jackson but Medicaid, CHIPS, or other insurance available to the parent and children; and

**WHEREAS,** Mississippi Families for Kids has requested that the City of Jackson provide adequate space for the provision of services and group sessions; and

**WHEREAS,** Mississippi Families for Kids shall hold the City harmless from any and all claims, causes of actions, suits, demands, or damages arising out its provision of services and implementation of the DINA Project; and

**WHEREAS,** the term of the MOU with Mississippi Families for Kids shall commence on the date of the Mayor's execution of the MOU and end on May 31, 2016 unless early termination occurs; and

**WHEREAS,** the City's understanding with Mississippi Families for Kids shall not be construed as creating a third party beneficiary relationship or a therapist-client relationship; and

**WHEREAS,** the best interest of the children enrolled in the City's Early Childhood Development Centers will be served by authorizing the Acting Mayor to execute an MOU with Mississippi Families for Kids.

**IT IS HEREBY ORDERED** that the Acting Mayor shall be authorized to execute an MOU with the Mississippi Families for Kids related to the City's participation in the DINA Project.

**Council Member Stamps** moved adoption; **Council Member Yarber** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER AUTHORIZING THE MAYOR TO EXECUTE AMENDMENT NO. 3 TO THE JULY 1, 2010 AGREEMENT FOR PROFESSIONAL ARCHITECTURE SERVICES WITH M3A ARCHITECTURE, PLLC FOR THE JATRAN ADMINISTRATION AND MAINTENANCE HEADQUARTERS, CITY PROJECT NO. 5AA7001.**

**WHEREAS,** the City of Jackson and M3A Architecture, PLLC entered into an Agreement for professional architecture services for the JATRAN Administration and Maintenance Headquarters, City Project No. 5AA7001 on July 1, 2010 to replace, going forward, the previous December 12, 2007 Agreement; and

**WHEREAS,** the City and M3A previously amended the July 1, 2010 Agreement to provide additional compensation based on the amount of the bid and to incorporate certain clauses required by the Federal Transit Authority; and

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                537

**WHEREAS**, during construction of the facility, the City discovered that the HVAC system being installed did not meet the requirements of the Federal Transit Administration Buy America law; and

**WHEREAS**, the City and M3A previously amended the Agreement to provide additional compensation to M3A to redesign the HVAC system to comply with the Buy America Law; and

**WHEREAS**, due to delays resulting from the delays resulting in the HVAC redesign and other construction delays, the time under M3A's Agreement for construction administration services, forty (40) months, has expired; and

**WHEREAS**, M3A also requires the services of engineers, including civil engineers, for work on the project; and

**WHEREAS**, the Public Works Department has negotiated with M3A for the continued construction administration services to complete construction in an amount not to exceed $7,500.00 a month for no more than twelve (12) months; for engineering services, including civil engineering services, in an amount not to exceed $25,000.00; and to provide bid documents for furnishings and equipment in an amount not to exceed $19,500.00.

**IT IS, THEREFORE, ORDERED** that the Mayor is authorized to execute and the City Clerk is authorized to attest Amendment No. 3 to the Agreement for Professional Architecture Services for the JATRAN Administration and Maintenance Headquarters, Project No. 5AA7001, with M3A to provide construction in an amount not to exceed $7,500.00 each month for no more than twelve (12) months, for engineering services, including civil engineering services, in an amount not to exceed $25,000.00, and to provide bid documents for furnishings and equipment in an amount not to exceed $19,500.00.

**Council Member Whitwell** moved adoption; **Acting Mayor Tillman** seconded.

Yeas- Barrett-Simon, Stamps, Tillman, Whitwell and Yarber.
Nays- Priester.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDER ACCEPTING THE TERM BIDS OF ADCAMP, INC., DICKERSON & BOWEN, INC. AND ERGON ASPHALT & EMULSIONS, INC. FOR A TWELVE MONTH SUPPLY OF ASPHALTIC PAVING MATERIALS, (BID NO. 74507–010714).**

**WHEREAS**, sealed term bids for Asphaltic Paving Materials were opened January 07, 2014, and three (3) bids were received for a twelve-month supply; and

**WHEREAS**, the Paved Streets, a Division of the Public Works Department, will use the various types of asphaltic paving materials to repair and improve the streets within the City of Jackson; and

**WHEREAS**, the staff at Paved Streets has reviewed all bids submitted and recommends that the governing authorities deem the term bids submitted by Adcamp, Inc., 1353 Flowood, Drive, Flowood, MS 39232, Dickerson & Bowen, Inc., 2642 South Gallatin Street, Jackson, MS 39214 and Ergon Asphalt & Emulsions, Inc., 2829 Lakeland Drive, Suite 2000, Jackson, MS 39232, received January 07, 2014, as the lowest and best bids for the respective items, pursuant to Section 31-7-13 (f) of the Mississippi Code, as follows:

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    538

**PICK-UP PRICE**

| | |
|---|---|
| **Item 1- Asphaltic Black Base Course** | |
| Primary- Dickerson & Bowen, Inc. | $51.00/ton |
| 1st Alternate- Adcamp, Inc. | $56.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 2- Asphaltic Binder Course** | |
| Primary- Dickerson & Bowen, Inc. | $58.00/ton |
| 1st Alternate- Adcamp, Inc. | $61.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 3- Asphaltic Wearing Cousre, Type C, Mix A** | |
| Primary- Dickerson & Bowen, Inc. | $58.00/ton |
| 1st Alternate- Adcamp, Inc. | $62.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 4- Asphaltic Cold Mix Material (Gravel & Sand)** | |
| Primary- Dickerson & Bowen, Inc. | $85.00/ton |
| Adcamp, Inc. | No Bid |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 5- Asphalt Emulation (SS#1 Tack)** | |
| Primary- Ergon Asphalt & Emulations, Inc. | $2.35/gallon |
| Adcamp, Inc. | No Bid |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 6- Plant Mix Bituminous Base Course (BB-1)** | |
| Primary- Dickerson & Bowen, Inc. | $55.00/ton |
| 1st Alternate- Adcamp, Inc. | $56.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 7- Hot Bituminous Pavement, Binder Course (BC-1)** | |
| Primary- Dickerson & Bowen, Inc. | $59.50/ton |
| 1st Alternate- Adcamp, Inc. | $62.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 8- Hot Bituminous Pavement, Surface Course (SC-1)** | |
| Primary- Dickerson & Bowen, Inc. | $59.50/ton |
| 1st Alternate- Adcamp, Inc. | $63.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 9- Cationic emulsified Asphalt, Grade CRS-2** | |
| Primary- Ergon Asphalt & Emulations, Inc. | $2.35/gallon |
| Adcamp, Inc. | No Bid |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 10- Asphaltic Sealer (Rubber Joint Sealer)** | |
| Dickerson & Bowen, Inc. | No Bid |
| Adcamp, Inc. | No Bid |
| Ergon Asphalt & Emulsions, Inc. | No Bid |

**DELIVERY PRICE**

| | |
|---|---|
| **Item 1- Asphaltic Black Base Course** | |
| Primary- Dickerson & Bowen, Inc. | $57.00/ton |
| 1st Alternate- Adcamp, Inc. | $68.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 2- Asphaltic Binder Course** | |
| Primary- Dickerson & Bowen, Inc. | $64.00/ton |
| 1st Alternate- Adcamp, Inc. | $73.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 3- Asphaltic Wearing Course, Type "C", Mix A** | |
| Primary- Dickerson & Bowen, Inc. | $64.00/ton |
| 1st Alternate- Adcamp, Inc. | $74.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 4- Asphaltic Cold Mix Material (Gravel & Sand)** | |
| Primary- Dickerson & Bowen, Inc. | $105.00/ton |
| Adcamp, Inc. | No Bid |
| Ergon Asphalt & Emulsions, Inc. | No Bid |

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                                539

| | |
|---|---|
| **Item 5- Asphaltic Emulation (SS#1 Tack)** | |
| Primary- Ergon Asphalt & Emulsions, Inc. | $2.4333/gallon |
| Adcamp, Inc. | No Bid |
| Dickerson & Bowen, Inc. | No Bid |
| **Item 6- Plant Mix Bituminous Base Course (BB-1)** | |
| Primary- Dickerson & Bowen, Inc. | $61.00/ton |
| 1st Alternate- Adcamp, Inc. | $68.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 7- Hot Bituminous Pavement, Binder Course (BC-1)** | |
| Primary- Dickerson & Bowen, Inc. | $65.50/ton |
| 1st Alternate- Adcamp, Inc. | $75.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 8- Hot Bituminous Pavement, Surface Course (SC-1)** | |
| Primary- Dickerson & Bowen, Inc. | $65.50/ton |
| 1st Alternate- Adcamp, Inc. | $75.00/ton |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| **Item 9- Cationic Emulsified Asphalt, Grade CRS-2** | |
| Primary- Ergon Asphalt & Emulations, Inc. | $2.4333/gallon |
| Dickerson & Bowen, Inc. | No Bid |
| Adcamp, Inc. | No Bid |
| **Item 10- Asphaltic Sealer (Rubber Joint Sealer)** | |
| Ergon Asphalt & Emulsions, Inc. | No Bid |
| Dickerson & Bowen, Inc. | No Bid |
| Adcamp, Inc. | No Bid |

IT IS HEREBY ORDERED that the bids received be accepted as the lowest and best bids for the respective items, it being determined that said bids met the specification.

IT IS FURTHER ORDERED that payment for said asphaltic paving materials be made from the General Fund.

Council Member Barrett-Simon moved adoption; Council Member Whitwell seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

ORDER ACCEPTING THE COMPETITIVE WRITTEN QUOTE FROM TUBELITE COMPANY INC. FOR THE 54" CJV SOLVENT PRINTER/CUTTER AND AUTHORIZING THE MAYOR TO EXECUTE ANY AND ALL DOCUMENTS TO PROCURE THE EQUIPMENT.

WHEREAS, pursuant to Section 31-7-13 (b) of the Mississippi Code of 1972, as amended, which provides for procurement of purchases in amounts of more than $5,000.00 but not more than $50,000.00 without publishing or posting advertisements for bids, the City of Jackson solicited two competitive quotes; and

WHEREAS, Tubelite Company Inc. and U.S. Cutter submitted competitive written quotes; and

WHEREAS, Tubelite Company Inc.., of Jackson, MS submitted the lowest and best competitive quote in the amount of $12,982.53; and

WHEREAS, the Department of Public Works recommends that the governing authorities deem the quote of Tubelite Company Inc. in the amount of $12,982.53, to be the lowest and best competitive quote.

IT IS, THEREFORE, ORDERED that the City of Jackson accepts the competitive quote of Tubelite Company Inc.., in the amount of $12,982.53, as the lowest and best competitive quote for the 54" CJV Solvent Printer/Cutter.

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    540

**IT IS FURTHER ORDERED** that the Mayor is authorized to execute and the City Clerk is authorized to attest any and all documents necessary to procure a 54" CJV Solvent Printer/Cutter from Tubelite Company Inc.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER AUTHORIZING THE MAYOR TO EXECUTE A ONE (1) YEAR EXTENDED SERVICE WARRANTY CONTRACT WITH MICRO-COMM, INC. TO PROVIDE PARTS AND SERVICE ON THE SCADA SYSTEMS FOR THE WATER STORAGE TANKS AND WELL SYSTEM.**

**WHEREAS,** Micro-Comm, Inc. currently provides extended warranty services for the SCADA systems on the City Water Tanks and on the City well system; and

**WHEREAS,** the monitoring of the City's water storage tank levels and the status of the well system by SCADA is necessary for the proper operations of the water system in order to maintain adequate water supply and pressure; and

**WHEREAS,** the monitoring of the City wells by SCADA system ensures the safety of the public by notifying the water system operator of any problems with the chlorine feed system, including potentially harmful chlorine leaks; and

**WHEREAS,** this SCADA system has served the City since 1987 and is a proprietary system for which Micro-Comm, Inc. is the sole supplier of replacement parts and technical expertise; and

**WHEREAS,** the one-year extended service warranty contract in the amount of $5,925.00 will ensure that the City has replacement parts available in the event components of the SCADA system fail or need troubleshooting; and

**WHEREAS,** the one-year extended service warranty contract also allows the City to obtain, as needed, onsite service for $90.00 per hour (four hour minimum), plus $40.00 per hour travel time and all expenses or a maximum daily charge of $900.00 per day plus $40.00 per hour travel and all expenses; and

**WHEREAS,** the Public Works Department recommends this SCADA System one-year extended service warranty contract with Micro-Comm, Inc.

**IT IS, THEREFORE, ORDERED** that the Mayor is authorized to execute any and all documents necessary to procure a one (1) year Extended Service Warranty Contract with Micro-Comm, Inc., to provide replacement parts and service at discounted rates for the water storage tanks and well system SCADA system for the water storage tanks and well system in the amount of $5,925.00.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    541

**ORDER AUTHORIZING THE MAYOR TO EXECUTE CHANGE ORDER NO. 1/FINAL TO THE CONTRACT OF THE CROM CORPORATION AND FURTHER AUTHORIZING PUBLICATION OF NOTICE OF COMPLETION OF THE MADDOX ROAD BOOSTER STATION PRESTRESSED CONCRETE WATER STORAGE TANK, CITY PROJECT NO. 30100901, CONTRACT I.**

**WHEREAS,** the City received bids for the construction of the Maddox Road Booster Station Prestressed Concrete Water Storage Tank, City Project No. 3011901, Contract I; and

**WHEREAS,** the City accepted the bid of the CROM Corporation in the amount of $1,918,918.00 to commence work on the Maddox Road Booster Station Prestressed Concrete Water Storage Tank-City Project No. 30100901, Contract I; and

**WHEREAS,** a final field inspection was held by the Department of Public Works and Southern Consultants, Inc. (City's Construction Administration Representative) approving and recommending acceptance of the project; and

**WHEREAS,** Change Order No. 1/Final represents a 2% decrease to the contract amount due to the adjustment of quantities and the removal or addition of items; and

**WHEREAS,** the original contract amount was $1,918,918.00 and the decreased contract amount is $1,878,950.88; and

**WHEREAS,** the Department of Public Works recommends that the governing authorities accept Change Order No. 1/Final and authorize the Mayor to execute Change Order No. 1/Final to the contract with Crom Corporation for the Maddox Road Booster Station Prestressed Concrete Water Storage Tank, City Project No. 30100901, Contract I; and

**WHEREAS,** the bonding company Western Surety Company, Attorney-in-fact, surety on performance of said contract, has authorized release and payment of all money due under said contract.

**IT IS, THEREFORE, ORDERED** that the Mayor is authorized to execute Change Order No. 1/Final to the contract of the Crom Corporation for the Maddox System Booster Station Prestressed Concrete Water Storage Tank-City Project No. 30100901, Contract 1, decreasing the contract amount by $39,967.12 to a total contract amount of $1,878,950.88.

**IT IS FURTHER ORDERED** that final payment in the amount of $46,973.77 is made, and that all securities held shall be released to the Crom Corporation for all the work done and material furnished under said contract, and that publication shall be made of the Notice of Completion of the Maddox System Booster Station Prestressed Concrete Water Storage Tank-City Project No. 30100901, Contract I.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDER AUTHORIZING THE MAYOR TO EXECUTE CHANGE ORDER NO. 1/FINAL TO THE CONTRACT OF DELTA CONSTRUCTORS, INC. AND FURTHER AUTHORIZING PUBLICATION OF NOTICE OF COMPLETION OF THE MADDOX ROAD BOOSTER STATION 24" WATER TRANSMISSION MAIN, CITY PROJECT NO. 30100901, CONTRACT II.**

**WHEREAS,** the City received bids for the construction of the Maddox Road Booster Station 24" Water Transmission Main, City Project No. 30100901, Contract II; and

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    542

**WHEREAS**, the City accepted the bid of Delta Constructors, Inc. in the amount of $843,405.00 to commence with work on the Maddox Road Booster Station 24" Water Transmission Main-City Project No. 30100901, Contract II; and

**WHEREAS**, a final field inspection was held by the Department of Public Works and Southern Consultants, Inc., (City's Construction Administration Representative) approving and recommending acceptance of the project; and

**WHEREAS**, Change Order No. 1/Final represents a 1% decrease to the contract amount due to the adjustment of quantities and the removal or addition of items; and

**WHEREAS**, the original contract amount was $843,405.00 and the decreased contract amount is $833,952.84; and

**WHEREAS**, the Department of Public Works recommends that the governing authorities accept Change Order No. 1/Final and authorize the Mayor to execute Change Order No. 1/Final to the contract with Delta Constructors, Inc. for the Maddox Road Booster Station 24" Water Transmission Main, City Project No. 30100901, Contract II; and

**WHEREAS**, the bonding company Liberty Mutual Surety, Attorney-in-fact, surety on performance of said contract, has authorized release and payment of all money due under said contract.

**IT IS, THEREFORE, ORDERED** that the Mayor is authorized to execute Change Order No. 1/Final to the contract of Delta Constructors, Inc., decreasing the contract amount by $9,452.16 to a total contract amount of $833,953.84.

**IT IS FURTHER ORDERED** that final payment in the amount of $12,853.04 should be made, that all securities held shall be released to Delta Constructors, Inc., for all the work done and material furnished under said contract, and that publication shall be made of the Notice of Completion of Maddox System Booster Station 24" Water Transmission Main-City Project No. 30100901, Contract II.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

**ORDER AUTHORIZING THE MAYOR TO EXECUTE A RIGHT OF ENTRY FROM ENTERGY MISSISSIPPI, INC. ("ENTERGY") TO CONSTRUCT THE CITY OF JACKSON 48" WATER TRANSMISSION LINE, CITY PROJECT NO. 50193901.**

**WHEREAS**, the City of Jackson requires access onto Entergy Mississippi, Inc. ("Entergy") right-of-way for the purpose of installing a 48" Water Transmission Line, City Project No. 50193901; and

**WHEREAS**, Entergy Mississippi, Inc. ("Entergy") has no objection to this 48" water transmission line crossing its right-of-way, but has certain criteria with which contractors must comply when working in proximity to Entergy Mississippi, Inc. ("Entergy") energized, high voltage power lines; and

**WHEREAS**, Entergy Mississippi, Inc. ("Entergy") has provided the City of Jackson a letter of no objection to the pipeline crossing that outlines terms of agreement with which the City must comply while constructing the 48" Water Transmission Line; and

**WHEREAS**, during the life of the project, it may be necessary for the Mayor to execute other documents related to the administration and construction of the 48" Water Transmission Line, City Project No. 50193901.

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    543

**IT IS, THEREFORE, ORDERED** that the Mayor is authorized to sign the Letter of No Objection, which will acknowledge the City's acceptance of the criteria to which the City must adhere while working in proximity to Entergy's right-of-way in constructing the City of Jackson 48" Water Transmission Line, City Project No. 50193901.

**IT IS FURTHER ORDERED** that the Mayor is authorized to execute a right-of-entry and other documents necessary for the administration and construction of the 48" Water Transmission Line, City Project No. 50193901.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman,Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER ACCEPTING THE BID OF RIVERSIDE CONSTRUCTION COMPANY, INC. AND AUTHORIZING THE EXECUTION OF THE CONTRACT AND ALL RELATED DOCUMENTS FOR THE BIG CREEK DRAINAGE AND STABILIZATION PROJECT, CITY PROJECT NO. 12B5002.**

**WHEREAS,** the City received bids for the construction of the Big Creek Drainage and Stabilization Project, City Project No. 12B5002; and

**WHEREAS,** Riverside Construction Company, Inc. submitted the lowest bid of $558,700.00; and

**WHEREAS,** the Public Works Departments recommends the governing authorities deem the bid of Riverside Construction Company, Inc., in the amount of $558,700.00, to be the lowest and best bid.

**IT IS, THEREFORE, ORDERED** that the bid of Riverside Construction Company, Inc., in the amount of $558,700.00, received on Tuesday, February 4, 2014, is accepted as the lowest and best bid for the Big Creek Drainage and Stabilization Project, City Project No. 12B5002.

**IT IS FURTHER ORDERED** that the Mayor is authorized to execute and the Clerk is authorized to attest a contract with Riverside Construction Company, Inc. in the amount of $558,700.00 for the Big Creek Drainage and Stabilization Project, City Project No. 12B5002, according to the City's invitation to bidders, the bid accepted, and the specifications for the project.

**IT IS FURTHER ORDERED** that the Mayor is authorized to execute all related documents pertaining to the Big Creek Drainage and Stabilization Project, City Project No. 12B5002.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    544

ORDER AUTHORIZING THE MAYOR TO EXECUTE AMENDMENT NO. 1 TO THE CONTRACT OF CROWN ENGINEERING, PLLC TO PROVIDE CONSTRUCTION ENGINEERING AND INSPECTION SERVICES FOR THE BIG CREEK DRAINAGE AND STABILIZATION PROJECT, CITY PROJECT NO. 12B5002.

WHEREAS, drainage improvements are being proposed by the City of Jackson to a section of Big Creek located within the Hidden Valley Subdivision north of Raymond Road in South Jackson; and

WHEREAS, the original contract with Crown Engineering, PLLC was for engineering design services in an amount not to exceed $40,000.00; and

WHEREAS, the City of Jackson Department of Public Works is in need of Construction Engineering and Inspection Services for the Big Creek Drainage and Stabilization Project, City Project No.12B5002; and

WHEREAS, Crown Engineering PLLC has advised the City of Jackson that it is capable and willing to provide Construction Engineering and Inspection Services; and

WHEREAS, the projected total cost resulting from the additional services to be provided is $85,000.00; and

WHEREAS, the Public Works Department believes that it is in the best interest of the City of Jackson to amend the contract with Crown Engineering PLLC to include Construction Engineering and Inspection Services for the Big Creek Drainage and Stabilization Project, City Project No.12B5002, for a total contract amount not to exceed $85,000.

IT IS, THEREFORE, ORDERED that the Mayor is authorized to execute and the City Clerk is authorized to attest Amendment No. 1 to the contract of Crown Engineering, PLLC for the Big Creek Drainage and Stabilization Project, City Project No.12B5002, for the purpose of amending the scope of work to include Construction Engineering and Inspection and increasing the total contract compensation to an amount not to exceed $85,000.00 for the original contract and amendment No. 1.

Council Member Barrett-Simon moved adoption; Council Member Whitwell seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

RESOLUTION OF THE CITY COUNCIL SUPPORTING THE ESTABLISHMENT OF A QUIET ZONE ALONG THE KANSAS CITY SOUTHERN RAILROAD WITHIN THE CITY OF JACKSON, MISSISSIPPI.

WHEREAS, Meridian Speedway, LLC owns the east-west railroad through Jackson commonly referred to as the Kansas City Southern Railroad; and

WHEREAS, the Kansas City Southern Railroad, which runs adjacent to a number of neighborhoods in west Jackson and downtown Jackson, has experienced a marked increase in train volumes over the past fifteen years as a result of partnerships with Norfolk Southern Railway and other railroad companies; and

WHEREAS, the sounding of train horns at all crossings at all hours of the day and night, as required by federal regulations, is disruptive to residents along and near the Kansas City Southern Railroad; and

WHEREAS, the Federal Railroad Administration has established regulations criteria for creating quiet zones along railroad lines; and

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    545

WHEREAS, the City Council finds that it is in the best interest of the residents of the City to begin the process of establishing a quiet zone along the Kansas City Southern Railroad and supports the efforts of the Mayor and the Department of Public Works to create a quiet zone along the Kansas City Southern Railroad.

THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF JACKSON, MISSISSIPPI THAT it supports the efforts of the Mayor and the Department of Public Works to establish a quiet zone along the Kansas City Southern Railroad as being in the best interests of the residents of the City, especially those residents whose homes and businesses are located close to the Kansas City Southern Railroad line and are disrupted by train horns.

**Council Member Whitwell** moved adoption; **Council Member Barrett-Simon** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

ORDER AUTHORIZING THE MAYOR TO APPLY FOR A SOLID WASTE ASSISTANCE GRANT FROM THE MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY TO FUND THE CITY OF JACKSON ENVIRONMENTAL SERVICE CENTER.

WHEREAS, the City of Jackson operates the Environmental Service Center located at 1570 Terry Road to provide residents in the tri-county area with means for the proper disposal of all household hazardous waste materials that cannot be disposed with regular garbage; and

WHEREAS, the Solid Waste Assistance Grant is a primary source for the funding of the operations of the Environmental Service Center; and

WHEREAS, the Solid Waste Assistance Grant is available semi-annually on October 1st and April 1st of each year; and

WHEREAS, the Solid Waste Assistance Grant does not require the City to provide matching funds; and

WHEREAS, the Mayor desires to submit an application for a Solid Waste Assistance Grant in the maximum amount of $75,000 for the April 1 grant cycle.

IT IS, THEREFORE, ORDERED that the Mayor is authorized to apply for a Solid Waste Assistance Grant from the Mississippi Department of Environmental Quality in the amount of $75,000 to fund the City of Jackson Environmental Service Center.

IT IS FURTHER ORDERED that the Mayor is authorized to execute any and all documents necessary for the administration of the grant.

**Council Member Yarber** moved adoption; **Council Member Barrett-Simon** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

* * * * * * * * * * * * * *

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                546

ORDER AUTHORIZING THE MAYOR TO APPLY FOR A WASTE TIRE
GRANT FROM THE MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY FOR FUNDING THE CITY OF JACKSON WASTE TIRE
RECYCLING PROGRAM.

WHEREAS, the City has operated a Waste Tire Recycling Program since 1995 that
currently provides citizens with free collection and recycling of up to ten (10) tires each month,
that recycles illegally dumped tires, and that recycles City waste tires; and

WHEREAS, the City currently funds the recycling and proper disposal of these waste
tires through a Waste Tire Grant from the Mississippi Department of Environmental Quality; and

WHEREAS, the Waste Tire Grant does not require the City to provide matching funds;
and

WHEREAS, the Mayor desires to apply for a Waste Tire Grant in the amount of $50,000
to fund the recycling and proper disposal of waste tires collected from abatement projects and the
Waste Tire Recycling Program.

IT IS, THEREFORE, ORDERED that the Mayor is authorized to apply for a Waste
Tire Grant from the Mississippi Department of Environmental Quality in the amount of $50,000
to fund the City of Jackson Waste Tire Recycling Program.

IT IS FURTHER ORDERED that the Mayor is authorized to execute any and all
documents necessary for the administration of the grant.

**Council Member Barrett-Simon** moved adoption; **Council Member Yarber** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER AUTHORIZING THE MAYOR TO EXECUTE CONTRACT
EXTENSIONS WITH HATHORN'S PEST CONTROL, INC. AND VECTOR
DISEASE CONTROL INTERNATIONAL, LLC FOR THE CITY OF JACKSON'S
MOSQUITO CONTROL PROGRAM.

WHEREAS, the City of Jackson issued a Request for Proposals ("RFP") to conduct its
2012 Mosquito Control Program; and

WHEREAS, in that RFP, the City reserved the right to extend the contract up to two (2)
additional years with possible adjustment in the contract amount based on the increases in the
Consumer Price Index and fuel; and

WHEREAS, on March 4, 2014 both of the current Mosquito Control Program
contractors, Hathorn's Pest Control, Inc. and Vector Disease Control International, LLC agreed
to provide services under the program at the same price as in 2013; and

WHEREAS, the Department of Public Works recommends the extension of the contract
with Hathorn's Pest Control, Inc. to conduct a mosquito control program during the months of
April 2014 through October 2014 for the southern portion of the City as defined in the RFP at a
total cost not to exceed $133,582.19; and

WHEREAS, the Department of Public Works recommends the extension of the contract
with Vector Disease Control International, LLC to conduct a mosquito control program during
the months of April through October 2014 for the northern portion as defined in the RFP of the
City at a total cost not to exceed $141,166.96.

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**          547

**IT IS, THEREFORE, ORDERED** that the Mayor is authorized to execute and the City Clerk is authorized to attest a contract extension and any other necessary documents with Hathorn's Pest Control, Inc. for a mosquito control program, during the months of April 2014 through October 2014, for the southern portion of the City, as defined in the RFP, at a total cost not to exceed $133,582.19

**IT IS FURTHER ORDERED** that the Mayor is authorized to execute and the City Clerk is authorized to attest a contract extension and any other necessary documents with Vector Disease Control International, LLC for a mosquito control program, during the months of April 2014 through October 2014, for the northern portion of the City, as defined in the RFP, at a total cost not to exceed $141,166.96.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER AUTHORIZING THE DONATION OF MATCHING FUNDS TO UNITED WAY OF THE CAPITAL AREA AND AUTHORIZING THE MAYOR TO EXECUTE AGREEMENTS GOVERNING CONTRIBUTION AND RECEIPT OF THE FUNDS FOR THE 2013-2014 FISCAL YEAR.**

**WHEREAS,** Section 21-19-65 of the Mississippi Code of 1972, as amended, authorizes the governing authority of any municipality to expend monies from the general fund to match any other funds for the purpose of supporting social and community service programs, including but not limited to, juvenile residential treatment centers, juvenile and half-way houses, prenatal care facilities, child day care facilities, mentally ill and alcoholic half-way houses, child and adult emergency shelters, and elderly home health aide programs; and

**WHEREAS,** the Mississippi Attorney General's Office has consistently opined that whether a particular community and social service program fits within the parameters of Section 21-19-65 is a factual determination to be made by the governing authority of a municipality; and

**WHEREAS,** United Way of the Capital Area is a non-profit entity organized and existing in the State of Mississippi, which provides educational and asset building opportunities that create pathways out of poverty for families; and

**WHEREAS,** United Way of the Capital Area has programs which promote the social development of youths and hereby qualifies to receive matching funds pursuant to the provisions of Section 21-19-65; and

**WHEREAS,** United Way of the Capital Area currently serves as the fiscal agent for Alignment Jackson, Inc., an organization whose primary purpose is to facilitate community wide collaboration in support of the Jackson Public School District's strategic plan to improve student achievement; and

**WHEREAS,** the best interest of the City would be served by entering into an agreement with United Way of the Capital Area, an organization that fits within the parameters of Section 21-19-65, on behalf of Alignment Jackson which will govern the contribution and receipt of the funds.

**IT IS, THEREFORE, ORDERED** that matching funds in the amount of 12,000.00 be contributed to United Way of the Capital Area on behalf of Alignment Jackson, Inc.

**IT IS FURTHER ORDERED** that the Mayor shall be authorized to execute an agreement with the entities governing the contribution and receipt of the funds.

-----------------

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.        548

Note: Council Member Yarber recused himself due to a potential conflict of interest and left the room prior to a vote and any further discussion of said item.

_____

Council Member Barrett-Simon moved adoption; Council Member Whitwell seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman and Whitwell.
Nays- None.
Recusal- Yarber.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER AUTHORIZING EXECUTION OF SERIES 2014-CONTRIBUTION AGREEMENT BETWEEN THE CITY OF JACKSON, MISSISSIPPI AND THE JACKSON REDEVELOPMENT AUTHORITY PROVIDING FOR CONTRIBUTION OF FUNDS BY THE CITY OF JACKSON IN CONNECTION WITH AN URBAN RENEWAL PROJECT DESIGNATED "CENTRAL BUSINESS DISTRICT DEVELOPMENT PROGRAM PROJECT NO. 1".

WHEREAS, the City Council of the City of Jackson, Mississippi, does hereby find, determine, and adjudicate as follows, to-wit:

1. That:

(a) In addition to any words and terms elsewhere defined herein, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

"Act" shall mean Title 43, Chapter 35, Article 1, Mississippi Code of 1972, as amended.

"Authority" shall mean the Jackson Redevelopment Authority.

"City" shall mean the City of Jackson, Mississippi.

"Contribution Agreement" shall mean the Series 2014-A Contribution Agreement between the City and the Authority, the form of which is set forth in Section 1 of this Order.

"Property" shall mean the properties located within the City and in the area bounded by President Street, West Street, Tombigbee Street, and Court Street (including property generally identified as Hinds County Tax Map Parcels 186-16, 186-21, 186-21-1, 186-21-2, 186-23, 186-24, 186-24-1, 186-27, 186-29, 186-32, 186-33, and 186-34-1).

"Undertaking" shall mean acquiring, clearing, improving, repairing, rehabilitating, renovating, redeveloping, and/or maintaining the Property which is located within the Urban Renewal Area (as hereinafter defined) for the Urban Renewal Project (as hereinafter defined) as part of the Urban Renewal Project and as a demonstration of the types of activities which can be carried out as part of the Urban Renewal Project, all of which improvements are necessary for carrying out in the Urban Renewal Area the urban renewal objectives of the Act in accordance with the Urban Renewal Plan (as hereinafter defined) for the Urban Renewal Project, and the making of a loan to finance all or part of the costs thereof, and funding transaction costs, necessary reserves, and other related costs, in order to encourage and enhance redevelopment of properties in the Urban Renewal Area, and in particular to encourage and enhance redevelopment of the Property.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    549

"Urban Renewal Notes" shall mean the Jackson Redevelopment Authority Urban Renewal Note(s) (Central Business District Development Program Project No. 1), Series 2014-A, in aggregate principal amount not to exceed $9,000,000, to be dated as of the date of delivery thereof.

(b) Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, words and terms herein defined shall be equally applicable to the plural as well as the singular form of any of such words and terms.

2. That acting pursuant to the authority granted by and in compliance with the provisions of Article 1, Chapter 35, Title 43, Mississippi Code of 1972 (the "Act"), the City Council of the City, by Resolution adopted on August 13, 1968, appearing in Minute Book VV at pages 578-579, did find that one or more slum or blighted areas exist in the City and that the rehabilitation, conservation, redevelopment, or a combination thereof, of such area or areas is necessary in the interest of the public health, safety, morals and welfare of the residents of such municipality.

3. That by the aforesaid Resolution adopted on August 13, 1968, the City Council of the City did determine that it would be in the public interest to have the urban renewal project powers conferred upon the City by the Act exercised by an urban renewal agency and did create and designate the Authority as the urban renewal agency for the City to exercise the urban renewal project powers as defined in the Act.

4. That acting pursuant to the authority granted by and in compliance with the provisions of Article 5, Chapter 35, Title 43, Mississippi Code of 1972, the City Council of the City, by Resolution adopted on May 25, 1971, appearing in Minute Book 3A at pages 235-238, did declare its intention to participate in urban renewal or redevelopment projects in its central business district as therein described and set June 29, 1971, as the date for a special election on the question of whether or not the City should participate in urban renewal projects in its central business district as therein described; that a copy of the aforesaid Resolution adopted on May 25, 1971, was published once a week for three (3) consecutive weeks in The Clarion-Ledger, a newspaper published in and having a general circulation in the City and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, the first publication having been made not less than twenty-one (21) days nor more than thirty (30) days prior to June 29, 1971, the date fixed for said special election, such publication being made on June 4, 11, 18, and 25, 1971; that in addition, a copy of such Resolution was posted at three (3) public places in the City at least twenty-one (21) days prior to June 29, 1971.

5. That the aforesaid special election was legally and duly held on June 29, 1971, in the City and a majority of the qualified electors of the City voting in the election did vote in favor of the proposal thereat submitted, to-wit: "Shall the City of Jackson, Mississippi, participate in urban renewal projects in its central business district," all as shown by the report of the election commissioners within and for the City filed with and approved by the City Council of the City by Resolution adopted on July 6, 1971, appearing in Minute Book 3A at pages 316-318.

6. That the Authority, acting by and through its Board of Commissioners, by Resolution adopted on September 29, 1971, did approve an urban renewal plan for an urban renewal area lying wholly within the aforesaid central business district and did approve an urban renewal project designated Neighborhood Development Project No. One, Downtown (Center City) Area, Jackson, Mississippi, for said urban renewal area, subject to approval by the City Council of the City after public hearing thereon, which said project was later re-designated Mississippi A-8 Neighborhood Development Program - Project Number One.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    550

7. That the City Council of the City, by Order adopted on October 5, 1971, appearing in Minute Book 3B at page 30, did call a public hearing on the aforesaid urban renewal plan and project to be held on October 28, 1971, at 9:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi; that as directed by the aforesaid Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the urban renewal area covered by the urban renewal project under consideration, to be published in The Jackson Daily News, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on October 14, 22, and 25, 1971, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on October 28, 1971, at 9:00 A.M., a public hearing was held before the City Council of the City where witnesses were heard for and on behalf of the urban renewal plan presented by the Authority, and no protests or objections were filed or presented.

8. That the City Council of the City, by Resolution adopted on October 28, 1971, appearing in Minute Book 3B at pages 106-110, did find, determine, and adjudicate that the urban renewal area described therein was a slum area or a blighted area or a combination thereof within the meaning of the Act and did designate such area as appropriate for an urban renewal project.

9. That acting pursuant to the authority granted by and in compliance with the provisions of the Act, the City Council of the City, by Resolution adopted on October 28, 1971, appearing in Minute Book 3B at pages 106-110, did find, determine and adjudicate that the urban renewal plan described in the preamble of such Resolution and the urban renewal project set out in the preamble of such Resolution should be approved for the urban renewal area described therein and did authorize the Authority to implement said urban renewal plan and project.

10. That the City Council of the City, by Order adopted on January 29, 1974, appearing in Minute Book 3F at page 294, did call a public hearing to be held on February 26, 1974, at 9:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, to determine whether additional urban renewal areas within the central business district should be determined to be slum areas or blighted areas or combinations thereof and designated as appropriate for an urban renewal project and whether such additional urban renewal areas should be included under the existing urban renewal plan and urban renewal project designated Mississippi A-8 Neighborhood Development Program - Project Number One; that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the urban renewal area proposed to be determined to be a slum area or a blighted area or a combination thereof and designated as appropriate for an urban renewal project, to be published in The Jackson Daily News, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on February 8, 15, and 22, 1974, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on February 26, 1974, at 9:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of determining the additional areas to be slum areas or blighted areas or combinations thereof, designating such areas as appropriate for an urban renewal project, and including such additional urban renewal areas under the existing urban renewal plan and project designated Mississippi A-8 Neighborhood Development Program - Project Number One, and no objections or protests were filed or presented.

11. That the City Council of the City, by Resolution adopted February 26, 1974, appearing in Minute Book 3F at pages 376-378, did find, determine, and adjudicate that such additional urban renewal areas were slum areas or blighted areas or combinations thereof within the meaning of the Act, did designate such areas as appropriate for an urban renewal project, and did include such additional urban renewal areas under the existing urban renewal plan and urban renewal project designated Mississippi A-8 Neighborhood Development Program - Project Number One.

### REGULAR MEETING OF THE CITY COUNCIL
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    551

12. That the City Council of the City, by Order adopted on April 10, 1979, appearing in Minute Book 3O at pages 531 and 532, did call a public hearing to be held on May 2, 1979, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, to determine whether additional urban renewal areas within the central business district should be determined to be slum areas or blighted areas or combinations thereof and designated as appropriate for an urban renewal project and whether such additional urban renewal areas should be included under the existing urban renewal plan and urban renewal project designated Mississippi A-8 Neighborhood Development Program - Project Number One; that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the urban renewal areas proposed to be determined to be slum areas or blighted areas or combinations thereof and designated as appropriate for an urban renewal project, to be published in The Jackson Daily News, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on April 13, 20, and 27, 1979, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on May 2, 1979, at 10:00 A.M. a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of determining the additional areas to be slum areas or blighted areas or combinations thereof, designating such areas as appropriate for an urban renewal project, and including such additional urban renewal areas under the existing urban renewal plan and project designated Mississippi A-8 Neighborhood Development Program - Project Number One, and no objections or protests were filed or presented.

13. That the City Council of the City, by Resolution adopted May 15, 1979, appearing in Minute Book 3P at pages 51-53, did find, determine, and adjudicate that such additional urban renewal areas were slum areas or blighted areas or combinations thereof within the meaning of the Act, did designate such areas as appropriate for an urban renewal project, and did include such additional urban renewal areas under the existing urban renewal plan and urban renewal project designated Mississippi A-8 Neighborhood Development Program - Project Number One.

14. That the City Council of the City, by Order adopted on May 6, 1980, appearing in Minute Book 3R at page 303, did call a public hearing to be held on June 4, 1980, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, to determine whether an additional urban renewal area within the central business district should be determined to be a slum area or a blighted area or a combination thereof and designated as appropriate for an urban renewal project and whether such additional urban renewal area should be included under the existing urban renewal plan and urban renewal project designated Mississippi A-8 Neighborhood Development Program Project Number One; that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the urban renewal area proposed to be determined to be a slum area or a blighted area or a combination thereof and designated as appropriate for an urban renewal project, to be published in The Clarion-Ledger, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on May 21 and 28 and June 4, 1980, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on June 4, 1980, at 10:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of determining the additional area to be a slum area or a blighted area or a combination thereof, designating such area as appropriate for an urban renewal project, and including such additional urban renewal area under the existing urban renewal plan and project designated Mississippi A-8 Neighborhood Development Program - Project Number One, and no objections or protests were filed or presented.

15. That the City Council of the City, by Resolution adopted June 4, 1980, appearing in Minute Book 3R at pages 500-502, did find, determine, and adjudicate that such additional urban renewal area was a slum area or a blighted area or a combination thereof within the meaning of the Act, did designate such area as appropriate for an urban renewal project, and did include such additional urban renewal area under the existing urban renewal plan and urban renewal project designated Mississippi A-8 Neighborhood Development Program - Project Number One.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                                    552

16. That the Authority, acting by its Board of Commissioners, by Resolution adopted on February 26, 1981, did approve an urban renewal plan designated "Urban Renewal Plan, City of Jackson, Mississippi, Central Business District Development Program Project No. 1 (February, 1981)" (the "Original Urban Renewal Plan") covering an urban renewal area (the "Original Urban Renewal Area") and did approve an urban renewal project designated "Central Business District Development Program Project No. 1" (the "Urban Renewal Project") for the Urban Renewal Area, subject to approval by the City Council of the City after public hearing thereon.

17. That the City Council of the City, by Order adopted on March 17, 1981, appearing in Minute Book 3T at page 187, did call a public hearing to be held on May 1, 1981, at 9:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, on the Urban Renewal Project as described in the Original Urban Renewal Plan; that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the Original Urban Renewal Area covered by the Original Urban Renewal Plan and outlining the general scope of the Urban Renewal Project under consideration, to be published in The Clarion-Ledger, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on April 10, 17, and 24 and May 1, 1981, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on May 1, 1981, at 9:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of determining the Original Urban Renewal Area to be a slum area or a blighted area or a combination thereof and designating such area as appropriate for an urban renewal project, and for and on behalf of approving the Original Urban Renewal Plan and the Urban Renewal Project, and no objections or protests were filed or presented.

18. That the City Council of the City, by Resolution adopted May 1, 1981, appearing in Minute Book 3T at pages 400-402, did: (i) find, determine, and adjudicate that the planning commission of the City, the Jackson City Planning Board, had submitted its written recommendation to the City Council of the City that the Original Urban Renewal Plan conforms to the general plan for the development of the City as a whole and that the Original Urban Renewal Plan should be approved, that a general plan for the City had been prepared, that a feasible method exists for the location of families who will be displaced from the Original Urban Renewal Area in decent, safe, and sanitary dwelling accommodations within their means and without undue hardship to such families, that the Original Urban Renewal Plan conforms to the general plan for the municipality as a whole, that the Original Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Original Urban Renewal Area by private enterprise, that to the extent that the Original Urban Renewal Area covered by the Original Urban Renewal Plan consists of open land to be acquired by the City or the Authority to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of the area with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the area, and that the Original Urban Renewal Plan is sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Original Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; (ii) determine that the Original Urban Renewal Area was a slum area or a blighted area or a combination thereof within the meaning of the Act; (iii) designate the Original Urban Renewal Area as appropriate for an urban renewal project; and (iv) approve the Original Urban Renewal Plan and the Urban Renewal Project.

19. That the City Council of the City, by Resolution adopted on May 1, 1984, appearing in Minute Book 3Y at pages 283-286, did call a public hearing to be held on May 30, 1984, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, on: (i) a proposed Amendment Number 2 ("Amendment Number 2") dated March 1984, to the Original Urban Renewal Plan; (ii) the Urban Renewal Project as described in the Original Urban Renewal Plan, as amended by Amendment Number 2 (the "Amendment Number 2 Urban Renewal Plan"); and (iii) whether to declare the areas to be added to the urban renewal area for the Urban Renewal Project as described in Amendment Number 2 (the "Amendment Number 2 Areas") and the area which would be the urban renewal area for the Urban Renewal Project after Amendment Number 2 was approved (the "Amendment Number 2 Urban Renewal Area") to be slum areas or blighted areas or combinations thereof within the meaning of the Act and to designate such areas as appropriate for an urban renewal project; that as directed by said Resolution, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area and outlining the general scope of the Urban Renewal Project under consideration and the scope of Amendment Number 2 to be published in The Jackson Daily News, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on May 15, 22, and 29, 1984, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on May 30, 1984, at 10:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of determining the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area to be slum areas or blighted areas or combinations thereof and designating such areas as appropriate for an urban renewal project, and for and on behalf of approving Amendment Number 2 and the Amendment Number 2 Urban Renewal Plan, and the Urban Renewal Project as described therein, and no objections or protests were filed or presented.

20. That the City Council of the City, by Resolutions adopted May 30, 1984, appearing in Minute Book 3Y at pages 347-352, did: (i) find, determine, and adjudicate that the planning commission of the City, the Jackson City Planning Board, had submitted its written recommendation to the City Council of the City that Amendment Number 2 and the Amendment Number 2 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families who will be displaced from the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area in decent, safe and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 2 and the Amendment Number 2 Urban Renewal Plan conform to the general plan for the municipality as a whole, that Amendment Number 2 and the Amendment Number 2 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area consist of open land, whether to be acquired by the City or the Authority or not, to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of the areas with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the areas, and that a shortage of housing of sound standards and design which is decent, safe, and sanitary exists in the City; that the need for housing accommodations has been or will be increased as a result of the clearance of slums in areas other than open land in said areas (including other portions of the said areas); that the conditions of blight in the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area and the shortage of decent, safe and sanitary housing cause or contribute to an increase in and spread of disease and crime and constitute a menace to the public health, safety, morals, or welfare, and to the extent that the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area consist of open land to be developed for residential uses, such development is an integral part of and essential to the program of the City,

and that Amendment Number 2 and the Amendment Number 2 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; (ii) determine that the Amendment Number 2 Areas and the Amendment Number 2 Urban Renewal Area were slum areas or blighted areas or combinations thereof within the meaning of the Act; (iii) designate such areas as appropriate for an urban renewal project; and (iv) approve Amendment Number 2 and the Amendment Number 2 Urban Renewal Plan and the Urban Renewal Project as described therein.

21. That the City Council of the City, by Resolution adopted on December 18, 1984, appearing in Minute Book 3Z at pages 231-233, did call a public hearing to be held on January 8, 1985, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, on: (i) a proposed Amendment Number 3 ("Amendment Number 3") dated October 1984, to the Amendment Number 2 Urban Renewal Plan; (ii) the Urban Renewal Project as described in the Amendment Number 2 Urban Renewal Plan, as amended by Amendment Number 3 (the "Amendment Number 3 Urban Renewal Plan"); and (iii) whether to declare the area to be added to the urban renewal area for the Urban Renewal Project as described in Amendment Number 3 (the "Amendment Number 3 Area") and the area which would be the urban renewal area for the Urban Renewal Project after Amendment Number 3 was approved (the "Amendment Number 3 Urban Renewal Area") to be slum areas or blighted areas or combinations thereof within the meaning of the Act and to designate such areas as appropriate for an urban renewal project; that as directed by said Resolution, the City Clerk did cause a notice describing the time, date, place and purpose of said hearing, and generally identifying the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area and outlining the general scope of the Urban Renewal Project under consideration and the scope of Amendment Number 3 to be published in The Jackson Daily News, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on December 21 and 28, 1984, and January 4, 1985, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on January 8, 1985, at 10:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of determining the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area to be slum areas or blighted areas or combinations thereof and designating such areas as appropriate for an urban renewal project, and for and on behalf of approving Amendment Number 3 and the Amendment Number 3 Urban Renewal Plan, and the Urban Renewal Project as described therein, and no objections or protests were filed or presented.

22. That the City Council of the City, by Resolutions adopted January 8, 1985, appearing in Minute Book 3Z at pages 272-276, did: (i) find, determine, and adjudicate that the planning commission of the City, the Jackson City Planning Board, had submitted its written recommendation to the City Council of the City that Amendment Number 3 and the Amendment Number 3 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families who will be displaced from the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area in decent, safe and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 3 and the Amendment Number 3 Urban Renewal Plan conform to the general plan for the municipality as a whole, that the Amendment Number 3 and the Amendment Number 3 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area consist of open land, whether to be acquired by the City or the Authority or not, to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and require the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of

ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of the areas with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the areas, that a shortage of housing of sound standards and design which is decent, safe, and sanitary exists in the City; that the need for housing accommodations has been or will be increased as a result of the clearance of slums in areas other than open land in said areas (including other portions of the said areas); that the conditions of blight in the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area and the shortage of decent, safe, and sanitary housing cause or contribute to an increase in and spread of disease and crime and constitute a menace to the public health, safety, morals, or welfare, and to the extent that the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area consists of open land to be developed for residential uses, such development is an integral part of and essential to the program of the City, and that Amendment Number 3 and the Amendment Number 3 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; (ii) determine that the Amendment Number 3 Area and the Amendment Number 3 Urban Renewal Area were slum areas or blighted areas or combinations thereof within the meaning of the Act; (iii) designate such areas as appropriate for an urban renewal project; and (iv) approve Amendment Number 3 and the Amendment Number 3 Urban Renewal Plan and the Urban Renewal Project as described therein.

23. That the City Council of the City, by Resolution adopted on April 2, 1985, appearing in Minute Book 3Z at pages 452-455, did call a public hearing to be held on April 29, 1985, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, on: (i) a proposed Amendment Number 4 ("Amendment Number 4") dated March 1985, to the Amendment Number 3 Urban Renewal Plan; and (ii) the Urban Renewal Project as described in the Amendment Number 3 Urban Renewal Plan, as amended by Amendment Number 4 (the "Amendment Number 4 Urban Renewal Plan"); that as directed by said Resolution, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the Amendment Number 3 Urban Renewal Area and outlining the general scope of the Urban Renewal Project under consideration and the scope of Amendment Number 4 to be published in The Jackson Daily News, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on April 8, 15, and 22, 1985, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on April 29, 1985, at 10:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of approving Amendment Number 4 and the Amendment Number 4 Urban Renewal Plan, and the Urban Renewal Project as described therein, and no objections or protests were filed or presented.

24. That the City Council of the City, by Resolution adopted April 29, 1985, appearing in Minute Book 3Z at pages 506-507, did: (i) find, determine, and adjudicate that the planning commission of the City, the Jackson City Planning Board, had submitted its written recommendation to the City Council of the City that Amendment Number 4 and the Amendment Number 4 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families who will be displaced from the Amendment Number 3 Urban Renewal Area in decent, safe and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 4 and the Amendment Number 4 Urban Renewal Plan conform to the general plan for the municipality as a whole, that Amendment Number 4 and the Amendment Number 4 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 3 Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 3 Urban Renewal Area consists of open land to be acquired by the City or the Authority to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    556

development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of the Amendment Number 3 Urban Renewal Area with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the area, and that Amendment Number 4 and the Amendment Number 4 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 3 Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; and (ii) approve Amendment Number 4 and the Amendment Number 4 Urban Renewal Plan and the Urban Renewal Project as described therein.

25.  That the City Council of the City, by Order adopted on July 15, 1986, appearing in Minute Book 4B at pages 504-506, did call a public hearing to be held on July 31, 1986, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, on: (i) a proposed Amendment Number 5 ("Amendment Number 5") dated July 1986, to the Amendment Number 4 Urban Renewal Plan; and (ii) the Urban Renewal Project as described in the Amendment Number 4 Urban Renewal Plan, as amended by Amendment Number 5 (the "Amendment Number 5 Urban Renewal Plan"); that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the Amendment Number 3 Urban Renewal Area and outlining the general scope of the Urban Renewal Project under consideration and the scope of Amendment Number 5 to be published in The Jackson Daily News, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on July 16, 22, and 29, 1986, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on July 31, 1986, at 10:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of approving Amendment Number 5 and the Amendment Number 5 Urban Renewal Plan, and the Urban Renewal Project as described therein, and no objections or protests were filed or presented.

26.  That the City Council of the City, by Order adopted July 31, 1986, appearing in Minute Book 4B at pages 545-546, did: (i) find, determine, and adjudicate that the planning commission of the City, the Jackson City Planning Board, had submitted its written recommendation to the City Council of the City that Amendment Number 5 and the Amendment Number 5 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families, if any, who will be displaced from the Amendment Number 3 Urban Renewal Area in decent, safe and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 5 and the Amendment Number 5 Urban Renewal Plan conform to the general plan for the municipality as a whole, that Amendment Number 5 and the Amendment Number 5 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 3 Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 3 Urban Renewal Area consists of open land to be acquired by the City or the Authority to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of the Amendment Number 3 Urban Renewal Area with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the areas, and that Amendment Number 5 and the Amendment Number 5 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.          557

of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 3 Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; and (ii) approve Amendment Number 5 and the Amendment Number 5 Urban Renewal Plan and the Urban Renewal Project as described therein.

27. That the City Council of the City, by Order adopted on March 10, 1987, appearing in Minute Book 4C at pages 524-526, did call a public hearing to be held on March 31, 1987, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, on: (i) a proposed Amendment Number 6 ("Amendment Number 6") dated September, 1986, to the Amendment Number 5 Urban Renewal Plan; and (ii) the Urban Renewal Project as described in the Amendment Number 5 Urban Renewal Plan, as amended by Amendment Number 6 (the "Amendment Number 6 Urban Renewal Plan"); that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the Amendment Number 3 Urban Renewal Area and outlining the general scope of the Urban Renewal Project under consideration and the scope of Amendment Number 6 to be published in The Clarion-Ledger, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on March 13, 20, and 27, 1987, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on March 31, 1987, at 10:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of approving Amendment Number 6 and the Amendment Number 6 Urban Renewal Plan, and the Urban Renewal Project as described therein, and no objections or protests were filed or presented, that said public hearing was recessed to reconvene at 10:00 A.M. on April 14, 1987; that said public hearing did reconvene at 10:00 A.M. on April 14, 1987, and all parties present were given an opportunity to be heard concerning Amendment Number 6 and the Amendment Number 6 Urban Renewal Plan and the Urban Renewal Project, as described therein.

28. That the City Council of the City, by Order adopted April 14, 1987, appearing in Minute Book 4D at pages 27-28, did: (i) find, determine, and adjudicate that the area bounded by Amite, Roach, Mill, and Pearl Streets (the "Amendment Number 6 Area") is a slum area or a blighted area or a combination thereof within the meaning of the Act, that the planning commission of the City, the Jackson City Planning Board, had submitted its written recommendation to the City Council of the City that Amendment Number 6 and the Amendment Number 6 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families, if any, who will be displaced from the Amendment Number 6 Area and the Amendment Number 3 Urban Renewal Area in decent, safe, and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 6 and the Amendment Number 6 Urban Renewal Plan conform to the general plan for the municipality as a whole, that Amendment Number 6 and the Amendment Number 6 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 3 Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 6 Area and the Amendment Number 3 Urban Renewal Area consist of open land to be acquired by the City or the Authority to be developed for nonresidential uses, such non-residential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of such areas with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of area, and that Amendment Number 6 and the Amendment Number 6 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 3 Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements,

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    558

and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; and (ii) approve Amendment Number 6 and the Amendment Number 6 Urban Renewal Plan and the Urban Renewal Project as described therein.

29. That the City Council of the City, by Order adopted on August 4, 1987, appearing in Minute Book 4D at pages 265-267, did call a public hearing to be held on September 1, 1987, at 10:00 A.M., in the Council Chamber, City Hall, Jackson, Mississippi, on: (i) a proposed Amendment Number 7 ("Amendment Number 7") dated May 1987, to the Amendment Number 6 Urban Renewal Plan; and (ii) the Urban Renewal Project as described in the Amendment Number 6 Urban Renewal Plan, as amended by Amendment Number 7 (the "Amendment Number 7 Urban Renewal Plan"); that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the Amendment Number 3 Urban Renewal Area and outlining the general scope of the Urban Renewal Project under consideration and the scope of Amendment Number 7 to be published in The Clarion-Ledger, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, on August 12, 19, and 26, 1987, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on September 1, 1987, at 10:00 A.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of approving Amendment Number 7 and the Amendment Number 7 Urban Renewal Plan and the Urban Renewal Project as described therein, and no objections or protests were filed or presented.

30. That the City Council of the City, by Order adopted September 1, 1987, did: (i) find, determine, and adjudicate that the planning commission of the City, the Jackson City Planning Board, had submitted its written recommendation to the City Council of the City that Amendment Number 7 and the Amendment Number 7 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families, if any, who will be displaced from the Amendment Number 3 Urban Renewal Area in decent, safe, and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 7 and the Amendment Number 7 Urban Renewal Plan conform to the general plan for the municipality as a whole, that Amendment Number 7 and the Amendment Number 7 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 3 Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 3 Urban Renewal Area consists of open land to be acquired by the City or the Authority to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of such area with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the area, and that Amendment Number 7 and the Amendment Number 7 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 3 Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; and (ii) approve Amendment Number 7 and the Amendment Number 7 Urban Renewal Plan and the Urban Renewal Project as described therein.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.          559

31.  That the City Council of the City, by Order adopted on July 15, 2008 called a public hearing to be held on August 26, 2008, at 6:00 P.M., in the Council Chamber, City Hall, Jackson, Mississippi, on: (i) a proposed Amendment Number 8 ("Amendment Number 8") dated April 2008, to the Amendment Number 7 Urban Renewal Plan; and (ii) the Urban Renewal Project as described in the Amendment Number 7 Urban Renewal Plan, as amended by Amendment Number 8 (the "Amendment Number 8 Urban Renewal Plan"); that as directed by said Order, the City Clerk did cause a notice describing the time, date, place, and purpose of said hearing, and generally identifying the Amendment Number 3 Urban Renewal Area and outlining the general scope of the Urban Renewal Project under consideration and the scope of Amendment Number 8 to be published in The Jackson Advocate, a newspaper published in and having a general circulation in the City, and in the area of operation (as defined in the Act) of the City, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972, the first such publication being at least two (2) weeks prior to the date of the aforesaid hearing; that on August 26, 2008, at 6:00 P.M., a public hearing was held before the City Council of the City, where witnesses were heard for and on behalf of approving Amendment Number 8 and the Amendment Number 8 Urban Renewal Plan and the Urban Renewal Project as described therein, and no objections or protests were filed or presented.

32.  That the City Council of the City, by Order adopted October 13, 2008, after reciting that the Jackson City Planning Board had submitted its written recommendation to the City Council of the City that Amendment Number 8 and the Amendment Number 8 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families, if any, who will be displaced from the Amendment Number 3 Urban Renewal Area in decent, safe and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 8 and the Amendment Number 8 Urban Renewal Plan conform to the general plan for the municipality as a whole, that Amendment Number 8 and the Amendment Number 8 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 3 Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 3 Urban Renewal Area consists of open land to be acquired by the City or the Authority to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of such area with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the area, and that Amendment Number 8 and the Amendment Number 8 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 3 Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements, approved Amendment Number 8 and the Amendment Number 8 Urban Renewal Plan and the Urban Renewal Project as described therein.

33.  That this governing body of the City, by Order duly adopted on October 24, 2011, did submit a proposed Amendment Number 9, dated October 2011 ("Amendment Number 9"), to the Amendment Number 8 Urban Renewal Plan to the Planning Commission of the City for review and recommendations as to the conformity of Amendment Number 9 and the Amendment Number 8 Urban Renewal Plan, as amended by Amendment Number 9 (the "Amendment Number 9 Urban Renewal Plan"), with the general plan for the development of the City as a whole.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                    560

34. That this governing body of the City, by Order duly adopted on November 15, 2011, did call a public hearing to be held at 6:00 P.M. on December 5, 2011, on Amendment Number 9, the Urban Renewal Project as described in the Amendment Number 9 Urban Renewal Plan and whether to declare the areas to be added to the urban renewal area for the Urban Renewal Project as described in Amendment Number 9 (the "Amendment Number 9 Areas") and the area which would be the urban renewal area for the Urban Renewal Project after Amendment Number 9 was approved (the "Urban Renewal Area") to be slum areas or blighted areas or combinations thereof within the meaning of the Act and to designate such areas as appropriate for an urban renewal project; that as directed by said Order, the City Clerk did cause notice thereof to be published in The Jackson Advocate, a newspaper published in the City and having a general circulation in the area of operation (as defined in the Act) of the City, and qualifying under the laws of the State of Mississippi as a newspaper in which legal notices may be published, which notice did describe the time, date, place, and purpose of the hearing, did generally identify the Amendment Number 9 Areas and the Urban Renewal Area and did outline the general scope of the Urban Renewal Project under consideration and which notice was published in said newspaper on November 17, November 24, and December 1, 2011.

35. That prior to December 5, 2011, the planning commission of the City did submit its written recommendation to the City that Amendment Number 9, and the Amendment Number 9 Urban Renewal Plan, conform to the general plan for the development of the City as a whole.

36. That at 6:00 P.M. on December 5, 2011, a public hearing was duly held before this governing body of the City on Amendment Number 9, the Urban Renewal Project as described in the Amendment Number 9 Urban Renewal Plan, and whether to declare the Amendment Number 9 Areas and the Urban Renewal Area to be slum areas or blighted areas or combinations thereof within the meaning of the Act and to designate such areas as appropriate for an urban renewal project, and comments were received from the general public.

37. That the City Council of the City, by Order adopted December 8, 2011, did: (i) find, determine, and adjudicate that the Jackson City Planning Board had submitted its written recommendation to the City Council of the City that Amendment Number 9 and the Amendment Number 9 Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a general plan for the City had been prepared, that a feasible method exists for the location of families, if any, who will be displaced from the Amendment Number 9 Areas and the Urban Renewal Area in decent, safe, and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 9 and the Amendment Number 9 Urban Renewal Plan conform to the general plan for the municipality as a whole, that Amendment Number 9 and the Amendment Number 9 Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the Amendment Number 9 Areas and the Urban Renewal Area by private enterprise, that to the extent that the Amendment Number 9 Areas and the Urban Renewal Area consist of open land to be acquired by the City or the Authority to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives, and such acquisition requires the exercise of governmental action, as provided in the Act, because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of such areas with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the areas, and that Amendment Number 9 and the Amendment Number 9 Urban Renewal Plan are sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements and rehabilitation as may be proposed to be carried out in the Amendment Number 9 Areas and the Urban Renewal Area, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; (ii) determine that the Amendment Number 9 Areas and the Urban Renewal Area were slum areas or blighted areas or combinations thereof within the meaning of the Act; (iii) designate such areas as appropriate for an urban renewal project; and (iv) approve Amendment Number 9 and the Amendment Number 9 Urban Renewal Plan and the Urban Renewal Project as described therein.

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    561

38. That this governing body of the City, by Order duly adopted on January 24, 2012, did submit a proposed Amendment Number 10, dated January 2012 ("Amendment Number 10"), to the Amendment Number 9 Urban Renewal Plan to the Planning Commission of the City for review and recommendations as to the conformity of Amendment Number 10 and the Amendment Number 9 Urban Renewal Plan, as amended by Amendment Number 10 (the "Urban Renewal Plan"), with the general plan for the development of the City as a whole and did order that a public hearing be held at 6:00 P.M. on February 21, 2012, on Amendment Number 10 and the Urban Renewal Project as described in the Urban Renewal Plan; that Amendment Number 10 provides for acquisition by the City or the Authority of all or part of certain property generally identified as Hinds County Tax Map Parcels 83-4, 83-5, 83-6, 83-7, 84-16, 84-30, 84-31, 86-24, 86-25-1, 86-29, 86-30, 86-32, 86-39-3, 86-39-4, 86-42, 86-49, 86-50, 86-52 and 86-55, and properties generally identified as Hinds County Tax Map Parcels 86-2, 86-35, 86-9, 86-26-1, 86-31-1, 86-34, 86-37, 86-38, 86-46, 86-51, 86-53 and 86-54, which are generally located in the City Blocks bounded by Amite, Mill, Hamilton, and Lamar Streets (the "Farish Street Area"); that Amendment Number 10 provides for exercise of urban renewal project powers with respect to all or part of the properties in the area bounded by Pearl Street, Court Street extended, State Street, and Jefferson Street (the "Old Capitol Green Property"), all or part of the properties in the area bounded by President Street, West Street, Tombigbee Street, and Court Street (including property generally identified as Hinds County Tax Map Parcels 186-16, 186-21, 186-21-1, 186-21-2, 186-23, 186-24, 186-24-1, 186-27, 186-29, 186-32, 186-33, and 186-34-1), and properties located in the area bounded by Gallatin Street, Capitol Street, Pearl Street, and the railroad tracks generally identified as Hinds County Tax Map Parcels 182-32 and 182-33 (collectively the "Capital Hotel Associates Property"), and all or part of the properties generally located at the Northeast corner of North Lamar and East Capitol Streets, generally identified as 200 East Capitol Street and generally identified as Hinds County Tax Map Tax Map Parcel 85-18 (the "Deposit Guaranty National Bank Building Property"); that as directed by said Order, the City Clerk did cause notice thereof to be published in The Mississippi Link, a newspaper published in the City and having a general circulation in the area of operation (as defined in the Act) of the City, and qualifying under the laws of the State of Mississippi as a newspaper in which legal notices may be published, which notice did describe the time, date, place and purpose of the hearing, did generally identify the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and the Deposit Guaranty National Bank Building Property, and did outline the general scope of Amendment Number 10 and the Urban Renewal Project under consideration and which notice was published in said newspaper on February 2, 9, and 16, 2012.

39. That prior to 6:00 P.M. on February 21, 2012, the planning commission of the City did submit its written recommendation to the City that Amendment Number 10, and the Urban Renewal Plan conform to the general plan for the development of the City as a whole.

40. That at 6:00 P.M. on February 21, 2012, a public hearing was duly held before this governing body of the City on Amendment Number 10 and the Urban Renewal Project as described in the Urban Renewal Plan and comments were received from the general public.

41. That the City Council of the City, by Order adopted February 27, 2012, did: (i) find, determine, and adjudicate that the Jackson City Planning Board had submitted its written recommendation to the City Council of the City that Amendment Number 10 and the Urban Renewal Plan conform to the general plan for the development of the City as a whole, that a feasible method exists for the location of families, if any, who will be displaced from the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and the Deposit Guaranty National Bank Building Property in decent, safe, and sanitary dwelling accommodations within their means and without undue hardship to such families, that Amendment Number 10, and the Urban Renewal Plan, conform to the general plan of the City as a whole; that the Urban Renewal Plan will afford maximum opportunity, consistent with the sound needs of the City as a whole, for the rehabilitation or redevelopment of the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and/or the Deposit Guaranty National Bank Building Property by private enterprise; that to the extent that any of the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and/or the Deposit Guaranty National Bank Building Property consists of open land (whether to be acquired by the City or the Authority or not) to be developed for nonresidential uses, such nonresidential uses are necessary and appropriate to facilitate the proper growth and development of the community in

accordance with sound planning standards and local community objectives, and the exercise of governmental action, as provided in the Act, is required because of defective or unusual conditions of title, diversity of ownership, tax delinquency, improper subdivisions, outmoded street patterns, deterioration of site, economic disuse, unsuitable topography or faulty lot layouts, the need for the correlation of the area with other areas of the City by streets and modern traffic requirements, or any combination of such factors or other conditions which retard development of the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and the Deposit Guaranty National Bank Building Property; that a shortage of housing of sound standards and design which is decent, safe, and sanitary exists in the City; that the need for housing accommodations has been or will be increased as a result of the clearance of slums in areas other than open land in the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and/or the Deposit Guaranty National Bank Building Property (including other portions of such areas); that the conditions of blight in the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and/or the Deposit Guaranty National Bank Building Property and the shortage of decent, safe, and sanitary housing cause or contribute to an increase in and spread of disease and crime and constitute a menace to the public health, safety, morals, or welfare; and that to the extent that the Urban Renewal Area consists of open land to be developed for residential uses, such development is an integral part of and essential to the program of the City; that each of Amendment Number 10 and the Urban Renewal Plan is sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements, and rehabilitation as may be proposed to be carried out in the Urban Renewal Area, the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, and the Deposit Guaranty National Bank Building Property, zoning and planning changes, if any, land uses, maximum densities, building requirements, and the plan's relationship to definite local objectives respecting appropriate land uses, improved traffic, public transportation, public utilities, recreational and community facilities, and other public improvements; (ii) find and determine that the Farish Street Area, the Old Capitol Green Property, the Capital Hotel Associates Property, the Deposit Guaranty National Bank Building Property, and the Urban Renewal Area, each is a slum area or blighted area or a combination thereof and designate each of such areas as appropriate for an urban renewal project; (iii) approve Amendment Number 10 dated January 2012, to the urban renewal plan dated February 1981, as previously amended by Amendments Numbered 2, 3, 4, 5, 6, 7, 8, and 9 thereto dated March 1984, October 1984, March 1985, July 1986, September 1986, May 1987, April 2008, and October 2011, respectively, for the Urban Renewal Project designated "Central Business District Development Program Project No. 1"; (iv) approve the Urban Renewal Plan dated February 1981, as amended by Amendments Numbered 2, 3, 4, 5, 6, 7, 8, 9, and 10 thereto dated March 1984, October 1984, March 1985, July 1986, September 1986, May 1987, April 2008, October 2011, and January 2012, respectively, for the Urban Renewal Project designated "Central Business District Development Program Project No. 1"; and (v) approve the Urban Renewal Project as described in the Urban Renewal Plan.

42.    That the Undertaking and activities which comprise the Undertaking will be carried out within the central business district of the City and within the Capital Hotel Associates Property and the Urban Renewal Area, each of which has been determined to be a slum area or a blighted area or a combination thereof and designated as appropriate for an urban renewal project; that the Undertaking is part of the Urban Renewal Project as described in Amendment Number 10 and in the Urban Renewal Plan; that the Undertaking is necessary to provide adequate opportunity for the rehabilitation or redevelopment of properties within the Urban Renewal Area by private enterprise; that the improvements which comprise the Undertaking are necessary for carrying out in the Urban Renewal Area the urban renewal objectives of the Act in accordance with the Urban Renewal Plan for the Urban Renewal Project; that it is in the public interest and necessary to carry out and effectuate the purposes and provisions of the Act and the Urban Renewal Plan and the Urban Renewal Project, and to provide a demonstration of the types of activities which can be carried out as part of the Urban Renewal Project, that the Undertaking be carried out; that it is in the public interest and necessary to carry out and effectuate the purposes and provisions of the Act and the Urban Renewal Plan and the Urban Renewal Project, and to provide a demonstration of the types of activities which can be carried out as part of the Urban Renewal Project, and to encourage and enhance redevelopment of properties in the Urban Renewal Area, that the Authority provide financing for the Undertaking by making a loan to finance all or part of the Undertaking.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.                563

43. That in order to provide funds in connection with the Urban Renewal Project, and in particular to finance all or part of the Undertaking which includes the acquisition, clearing, improving, repairing, rehabilitating, renovating, redeveloping, and/or maintaining of properties which are located within the central business district of the City and within the Capital Hotel Associates Property and the Urban Renewal Area, the Authority is authorized by the Act to borrow money and issue its urban renewal revenue bonds and notes, there being no other funds available for such purpose, and to enter into agreements with the City respecting action to be taken by the City, including the furnishing of funds or other assistance in connection with the financing of urban renewal projects, which agreements may extend over any period of time, notwithstanding any provision or rule of law to the contrary and to mortgage any urban renewal project property, or any part thereof, title to which is in the Authority in order to secure the payment of such bonds or notes.

44. That the City is authorized by the Act, and in particular by Sections 43-35-15 and 43-35-27, Mississippi Code of 1972, for the purpose of aiding in the planning, undertaking, and carrying out of an urban renewal project, upon such terms, with or without consideration, as it may determine, to grant or contribute funds to the Authority, and to enter into agreements with the Authority respecting action to be taken by the City, including the furnishing of funds or other assistance in connection with an urban renewal project, which agreements may extend over any period of time, notwithstanding any provision or rule of law to the contrary.

45. That the assessed value of all taxable property within the City, according to the last completed assessment for taxation, is not less than $1,166,941,225; the outstanding bonded indebtedness of the City subject to the fifteen percent (15%) debt limit prescribed by Section 21-33-303, Mississippi Code of 1972, does not exceed $78,220,000; the outstanding bonded and floating indebtedness of the City subject to the twenty percent (20%) debt limit prescribed by Section 21-33-303, Mississippi Code of 1972 (which amount includes the sum set forth above subject to the 15% debt limit) does not exceed $100,000,000; the obligation pursuant to the Contribution Agreement will not result in indebtedness, both bonded and floating, exclusive of indebtedness not subject to the aforesaid twenty percent (20%) debt limit, in excess of twenty percent (20%) of the assessed value of taxable property within the City and will not exceed any constitutional or statutory limitation upon indebtedness which may be incurred by the City.

46. That the public interest will be served by the Authority's issuing the Urban Renewal Notes and applying the proceeds thereof to finance all or a portion of the costs of the Undertaking by making a loan from the proceeds thereof to finance all or part of the cost of acquiring, clearing, improving, repairing, rehabilitating, renovating, redeveloping, and/or maintaining all or part of the Property and carrying out the Undertaking and funding transaction costs, necessary reserves and other related costs.

47. That the public interest will be served by the City's entering into an agreement with the Authority whereby the City will agree to furnish funds from the general fund of the City in an amount sufficient to provide for the retirement of the Urban Renewal Notes of the Authority as described herein over a term not extending beyond the date specified in the Contribution Agreement.

48. That the Urban Renewal Notes will be designated Jackson Redevelopment Authority Urban Renewal Notes (Central Business District Development Program Project No. 1), Series 2014-A, and the Urban Renewal Notes will be sold in accordance with authorization by the Board of Commissioners of the Authority.

IT IS NOW, THEREFORE, ORDERED BY THE CITY COUNCIL OF THE CITY OF JACKSON, MISSISSIPPI:

SECTION 1. That the Mayor of the City, acting for and on behalf of the City, be, and he is hereby, authorized to execute and deliver to the Authority, on behalf of and as the act and deed of the City, and the City Clerk of the City be, and she is hereby, authorized to attest such execution and delivery and to affix the seal of the City to, an agreement to be dated as of the date of execution thereof by the City, in substantially the following form, with such completions, changes, modifications, and insertions as shall be approved by the Mayor and City Clerk, with their execution of such agreement to be conclusive evidence of such approval:

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                              564

Proposed Form:

SERIES 2014-A CONTRIBUTION AGREEMENT BETWEEN THE CITY OF JACKSON,
MISSISSIPPI, AND THE JACKSON REDEVELOPMENT AUTHORITY PROVIDING FOR
CONTRIBUTION OF FUNDS BY THE CITY OF JACKSON IN CONNECTION WITH AN
URBAN RENEWAL PROJECT DESIGNATED "CENTRAL BUSINESS DISTRICT
DEVELOPMENT PROGRAM PROJECT NO. 1"

This Series 2014-A Contribution Agreement (this "Contribution Agreement") is entered into by
and between the City of Jackson, Mississippi (the "City"), a municipality as defined in Section
43-35-3 of the Mississippi Code of 1972, as amended, and the Jackson Redevelopment Authority
(the "Authority"), a public body corporate and politic and the urban renewal agency of the City.

W I T N E S S E T H

**WHEREAS**, the City is authorized by Article 1, Chapter 35, Title 43, Mississippi Code
of 1972 (the "Act") and in particular by Sections 43-35-15 and 43-35-27 of the Mississippi Code
of 1972, as amended, for the purpose of aiding in the planning, undertaking and carrying out of
an urban renewal project, upon such terms, with or without consideration, as it may determine, to
grant or contribute funds to the Authority and to enter into agreements with the Authority
respecting action to be taken by the City, including the furnishing of funds or other assistance in
connection with an urban renewal project, which agreements may extend over any period of
time, notwithstanding any provision or rule of law to the contrary;

**WHEREAS**, the Authority proposes to issue its Urban Renewal Note(s) designated
Urban Renewal Note or Notes (Central Business District Development Program Project No. 1),
Series 2014-A (the "Urban Renewal Notes") in aggregate principal amount not to exceed
$9,000,000 in connection with an urban renewal project of the City designated "Central Business
District Development Program Project No. 1" (the "Urban Renewal Project"), and in order to
encourage and enhance redevelopment of properties in the Urban Renewal Area, and in
particular to encourage and enhance redevelopment of the properties located in the area bounded
by President Street, West Street, Tombigbee Street, and Court Street and property generally
identified as Hinds County Tax Map Parcels 186-16, 186-21, 186-21-1, 186-21-2, 186-23, 186-
24, 186-24-1, 186-27, 186-29, 186-32, 186-33, and 186-34-1 (collectively the "Property") as part
of an undertaking (the "Undertaking") which includes acquiring, clearing, improving, repairing,
rehabilitating, renovating, redeveloping, and/or maintaining the Property which is located within
the Urban Renewal Area for the Urban Renewal Project, as part of the Urban Renewal Project
and as a demonstration of the types of activities which can be carried out as part of the Urban
Renewal Project, all of which improvements are necessary for carrying out in the Urban Renewal
Area the urban renewal objectives of the Act in accordance with the Urban Renewal Plan for the
Urban Renewal Project, and in particular by making a loan to finance all or a portion of the costs
of the Undertaking, and funding transaction costs, necessary reserves and other related costs; and

**WHEREAS**, the Undertaking will include development of an upscale hotel and a
restaurant and may include additional development for parking, office, commercial, retail,
restaurant, residential, and other purposes; and

**WHEREAS**, the Urban Renewal Notes will be dated, will bear interest and will be
payable as to principal and interest, and will be subject to mandatory and/or optional
prepayment, all as provided in the proceedings of the Authority authorizing issuance thereof; and

**WHEREAS**, the Property is located, and the Undertaking will be located, within the
Urban Renewal Area for the Urban Renewal Project, the Undertaking is and will be part of the
Urban Renewal Project and a demonstration of the types of activities which can be carried out as
part of the Urban Renewal Project, and is an improvement necessary for carrying out in the
Urban Renewal Area the urban renewal objectives of the Act in accordance with the Urban
Renewal Plan for the Urban Renewal Project.

REGULAR MEETING OF THE CITY COUNCIL
TUESDAY, MARCH 25, 2014, 6:00 P.M.    565

NOW, THEREFORE, in consideration of the mutual undertakings and the performance thereof by the parties and in order to induce one or more prospective purchasers of the Urban Renewal Notes to purchase the Urban Renewal Notes, the City and the Authority agree as follows:

Section 1. The City hereby unconditionally and irrevocably agrees to grant and contribute to the Authority from the general fund of the City, periodically during each of the calendar years between and including 2014 and 2039 (or such earlier year during which all principal of and interest on the Urban Renewal Notes shall be paid in full), sums sufficient to pay the principal of and interest on the Urban Renewal Notes as the same shall be due and payable (whether at maturity or upon mandatory and/or optional redemption prior to maturity) and in addition thereto all bond registrar, paying agent, and transfer agent fees relating to the Urban Renewal Notes, if any; provided that principal of the Urban Renewal Notes shall not mature in full prior to the date which is seven (7) years after delivery of the Urban Renewal Notes (subject to optional and/or mandatory prepayment as shall be approved by the Board of Commissioners of the Authority) and that interest thereon shall be payable no less frequently than annually.

Section 2. The City recognizes and agrees that the covenants and agreements herein set forth to be performed on behalf of the City shall be for the benefit, protection, and security of the holder or holders of the Urban Renewal Notes, and the City does covenant and agree that the Authority shall unconditionally and irrevocably pledge all grants and contributions to be received pursuant to this Contribution Agreement (other than amounts to be used to pay bond registrar, paying agent, and transfer agent fees, if any) to secure payment of the principal of and interest on the Urban Renewal Notes. So long as any principal of the Urban Renewal Notes or any interest thereon shall be outstanding or unpaid, the obligations of the City hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, setoff, deduction, release, recoupment or defense (other than payment or performance), and shall remain in full force and effect until the principal of and interest on the Urban Renewal Notes shall have been paid in full.

Section 3. The amount to be contributed by the City from its general fund in each year shall be sufficient to timely pay the principal of and interest on the Urban Renewal Notes that will be due and payable during that year and all bond registrar, paying agent, and transfer agent fees relating to the Urban Renewal Notes, if any. Periodically (and not more frequently than monthly), at least five (5) days prior to each date when principal or interest or both shall be due on the Urban Renewal Notes (a "Note Payment Date"), the City shall make a payment hereunder in an amount equal to the principal and interest due and payable on such date by direct deposit to such account as shall have been designated by the Authority as the bond and interest fund for payment of the principal of and interest on the Urban Renewal Notes (the "Series 2014-A Note Fund"). The City shall make payment from time-to-time of amounts sufficient to pay all bond registrar, paying agent, and transfer agent fees relating to the Urban Renewal Notes, if any, as due.

Section 4. Any other provisions of this Contribution Agreement to the contrary notwithstanding, the obligation of the City to make payments with respect to principal and interest hereunder shall be abated to the extent that, on the tenth (10th) day preceding any Note Payment Date, there shall be funds in the Series 2014-A Note Fund available to be used to make payments of principal of and interest on the Urban Renewal Notes due and payable on such Note Payment Date.

Section 5. The Authority hereby agrees: (a) to utilize the proceeds of the Urban Renewal Notes solely and only to pay costs of the Undertaking, by making a loan from the proceeds thereof to finance all or a portion of the costs of the Undertaking, and funding transaction costs, necessary reserves, and other related costs; and (b) to secure the Urban Renewal Notes by an irrevocable pledge of all sums to be received from the City hereunder.

Section 6. The City acknowledges that the Mayor and City Clerk of the City will execute certain certificates required in connection with the sale and delivery of the Urban Renewal Notes, setting forth covenants, stipulations, and certifications with respect to matters relating to the Urban Renewal Notes, and the City agrees to comply with all certifications, stipulations, and covenants set forth in such certificates.

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                                          566

Executed in Jackson, Mississippi, as of the ___ day of _____, 2014, although actually signed on the dates indicated below.

JACKSON REDEVELOPMENT AUTHORITY CITY OF JACKSON, MISSISSIPPI

BY: _____    BY: _____

    CHAIRMAN                               ACTING MAYOR
    Board of Commissioners

ATTEST:                                        ATTEST:

_____            _____
[Interim] SECRETARY-TREASURER      CITY CLERK

(SEAL)                                         (SEAL)

_____, 2014                             _____, 2014

**SECTION 2.** That the Director of Administration be, and he or she hereby is, authorized and directed to disburse the sums authorized by the Contribution Agreement directly to the Authority for deposit into the bond and interest fund for the payment of principal of and interest on the Urban Renewal Notes described in the Contribution Agreement.

**SECTION 3.** That the Mayor and City Clerk of the City are hereby authorized to execute and to attest, respectively, such certificates as may reasonably be required in connection with the sale and delivery of the Urban Renewal Notes and the City shall comply with all certifications, stipulations, and covenants set forth in such certificates.

**Council Member Stamps** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

                * * * * * * * * * * * * * *

**ORDER AUTHORIZING THE CITY OF JACKSON TO ACCEPT FROM CAPITAL HOTEL ASSOCIATES, LLC THE ASSIGNMENT OF 20% OF ITS SEMIANNUAL STATE OF MISSISSIPPI SALES TAX REBATE TO BE APPLIED DIRECTLY TO THE PRINCIPAL OF THE JRA URBAN RENEWAL NOTE GUARANTEED BY THE CITY OF JACKSON FOR THE JRA "CENTRAL BUSINESS DISTRICT DEVELOPMENT PROGRAM PROJECT NO. 1".**

**WHEREAS,** Capital Hotel Associates, LLC, applied to the Mississippi Development Authority ("MDA") for assistance under the Mississippi Tourism Incentive Program, pursuant to Section 57-26-1, *et seq.*, of the Mississippi Code of 1972, as amended, for the development of The Westin Jackson hotel project, Jackson Redevelopment Authority ("JRA") Central Business District Development Program Project No. 1; and

**WHEREAS,** the MDA, through its executive director, heard and took oral documentary evidence and made full investigation of the matter and, on the basis thereof, found and determined that Capital Hotel Associates, LLC, qualifies for assistance under the Mississippi Tourism Incentive Program; and

**WHEREAS,** an order of the MDA was thereafter issued directing the issuance of a Mississippi Tourism Incentive Program Certificate to Capital Hotel Associates, LLC; and

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    567

**WHEREAS**, upon completion of The Westin Jackson, the actual costs directly associated with the development that must be independently certified and submitted to the City of Jackson and MDA and, once the approved costs by MDA and maximum allowable rebate are determined, the MDA will notify the Mississippi Department of Revenue to begin diverting funds for rebate to Capital Hotel Associates, LLC of which twenty percent (20%) will be diverted to the City of Jackson, with rebate funds being paid semiannually, in January and July; and

**WHEREAS**, Capital Hotel Associates, LLC, has provided to the City of Jackson its written authorization and approval for assignment of its semiannual Mississippi sales tax rebate to be applied to the principal of the JRA Urban Renewal Note related to The Westin Jackson hotel development project, JRA Central Business District Development Program Project No. 1.

**IT IS, THEREFORE, ORDERED** that the City of Jackson is hereby authorized to accept from Capital Hotel Associates, LLC, the assignment of twenty percent (20%) of its semiannual State of Mississippi Sales Tax Rebate from the Mississippi Department of Revenue to be applied directly to the principal of the JRA Urban Renewal Note guaranteed by the City of Jackson for The Westin Jackson hotel development project, JRA Central Business District Development Program Project No. 1. The Mayor, or his designee, is authorized to execute any and all documents necessary to accept the semiannual sales tax rebate for the purposes stated herein.

**Council Member Barrett-Simon** moved adoption; **Council Member Whitwell** seconded.

Yeas- Barrett-Simon, Priester, Stamps, Tillman, Whitwell and Yarber.
Nays- None.
Absent- Cooper-Stokes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Council Member Whitwell** left the meeting at 7:20 p.m.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

There came on for consideration Agenda Item No. 32:

**DISCUSSION: CITY OF JACKSON TEXT AMENDMENTS: President Priester** stated that said item had been previously discussed during the March 24, 2014 Council Work Session.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

There came on for consideration Agenda Item No. 33:

**DISCUSSION: CITY LAND BANK OPERATIONS: President Priester** recognized **Council Member Stamps** who requested that said items be referred to the Education and Planning Committees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

There came on for consideration Agenda Item No. 34:

**RESOLUTION OF THE CITY COUNCIL OF JACKSON, MISSISSIPPI HONORING AND COMMENDING THE HEAVENLY VOICES CHORALE AND IN APPRECIATION FOR THE FREE CONCERT TO BE HELD AT THE CITY OF JACKSON PLANETARIUM ON SUNDAY, APRIL 6, 2014 AT 5:00 P.M.** Accepting the Resolution with appropriate remarks were **Marilyn Clark** and **Joan Turner-Hart**.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REGULAR MEETING OF THE CITY COUNCIL**
**TUESDAY, MARCH 25, 2014, 6:00 P.M.**                    568

The following announcements/reports were provided during the meeting:

- **Synarus Green**, the City's Chief Administrative Officer, provided a report regarding a ship dedication named in honor of the City of Jackson in Mobile, Alabama.

- **Acting Mayor Tillman** reported that **Council Member Stamps** represented the City Council as part of a delegation that traveled to Harvard University to determine methods for the effective utilization of City property.

* * * * * * * * * * * * * *

The meeting was closed in memory of the following individuals:

- Joyce Abston

- Willie Landon

- James Rundles

* * * * * * * * * * * * * *

There being no further business to come before the City Council, it was unanimously voted to recess until the next Special Meeting to be held at 4:00 p.m. on Monday, March 31, 2014; at 7:35 p.m., the Council stood adjourned.

ATTEST.                            APPROVED:

CITY CLERK                         ACTING MAYOR    DATE   April 16, 2014

* * * * * * * * * * * * * *