UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **Priscilla Sterling, Raine Becker, Shawn Miller, and John Bennett, individually and on behalf of all others similarly situated** | **PLAINTIFFS** |
| v. | Civil No. 3:22-cv-531-KHJ-MTP |
| **The City of Jackson, Mississippi; Chokwe A. Lumumba; Tony Yarber; Kishia Powell; Robert Miller; Jerriot Smash; Siemens Corporation; Siemens Industry, Inc.; and Trilogy Engineering Services LLC** | **DEFENDANTS** |

**TONY YARBER AND KISHIA POWELL'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR QUALIFIED IMMUNITY AND TO DISMISS**

Plaintiffs' response is based on an unreasonable assumption that betrays their own pleadings, i.e., that Yarber and Powell knew Jackson's water system exceeded permissible lead levels in June 2015. That assumption beggars belief. Plaintiffs' pleadings demonstrate the City, Yarber and Powell were made aware of the lead-level exceedance on or about January 29, 2016. *See* Am. Compl. [Doc. 57] at 32, 33 (¶ 145, 150); Anna Wolfe & Sara Fowler, *Jackson, MSDH Report Lead Detection in City Water*, CLARION-LEDGER (Jan. 29, 2016), identified in Am. Compl. [Doc. 57] at 33 n.42. That day, the City held a press conference and sprang into action. *See id.*

Once stripped of that illogical leap, Plaintiffs' response demonstrates Yarber and Powell's efforts to address – among other things – the lead exceedance. The last time a lead exceedance was reported was December 2016. Any inference otherwise is unreasonable. *See, e.g.*, Notice, attached to Am. Compl. [Doc. 57] as Exhibit 5, at 3.

Plaintiffs' response to Yarber and Powell's arguments are unavailing. For the reasons set forth in the City of Jackson's Reply Memorandum, which are incorporated herein, Plaintiffs do not refute two pertinent points that are fatal to their constitutional claims: 1) the Constitution does

1

#101637450v2

not guarantee a right to safe drinking water and Plaintiffs have not pleaded a bodily-integrity violation; and 2) the Fifth Circuit has not recognized a state-created-danger theory of liability, and Plaintiffs fail to plead essential elements of that theory under the standard the Fifth Circuit has articulated.

Regardless, Yarber and Powell are entitled to qualified immunity, because Plaintiffs' bodily-integrity claim is not based upon a right that was clearly established during the time period relevant to Plaintiffs' pleadings. Yarber and Powell are also entitled to qualified immunity on Plaintiffs' state-created-danger claim, because – as the Fifth Circuit has noted: "Our precedent has repeatedly declined to adopt the state-created danger doctrine. And a right never established cannot be one clearly established." *Fisher v. Moore*, 73 F.4th 367, 375 (5th Cir. 2023). Yarber and Powell are also immune from liability for Plaintiffs' asserted claims, because Plaintiffs fail to demonstrate Powell and Yarber's actions were deliberately indifferent.

Plaintiffs concede their negligence claim (Count V) should be dismissed as to Yarber and Powell. Resp. [Dkt. 89], 2 n.1 ("Plaintiffs therefore do not oppose the dismissal of Count V as to only the Individual City Defendants.").

Yarber and Powell should be dismissed from this civil action.

## ARGUMENT

**I.    Plaintiffs have not sufficiently pleaded that their constitutional rights to bodily integrity and freedom from state-created dangers were clearly established, entitling Yarber and Powell to qualified immunity.**

Yarber and Powell incorporate by reference the arguments in Section I of Mayor Lumumba and Miller's Reply herein as if fully restated.

**II.     Neither Yarber nor Powell engaged in conscience-shocking conduct.**

Despite Plaintiffs' efforts to distort Yarber and Powell's actions to comport with those of the officials in Flint, they fail. The *Guertin* and *Waide* Courts found the following conduct evidenced deliberate disregard:

> Flint officials knew an outdated and mothballed treatment plant was could not treat water from the Flint River. *Guertin* 912 F.3d at 927; *Waide*, 960 F.3d at 326. Those officials later directed others to lie about the cause of a Legionnaires-disease outbreak, which was the water. And, after being apprised of the legionella and lead issues and their connection to the Flint River, the officials refused to switch back to a safer, available water source; and

> Flint officials covered up reports and distorted water-quality test results. *Waide*, 960 F.3d at 326.

The alleged conduct on which Plaintiffs rely ostensibly to show deliberate indifference here boils down to: 1) switching a small minority of connections to the surface-water system that was already safely supplying water to the majority of Jackson residents; 2) following a Compliance Plan over the opinion of a former, interim employee; 3) choosing to recommend to the City Council an engineering firm that had prior experience with Jackson's water system; and 4) making statements about the lead exceedance and subsequent technical violations that were ultimately true. *See* Resp. [Dkt. 89], 17-19. None of that conduct shows deliberate indifference. In fact, the conduct demonstrates Yarber and Powell's good faith effort to address a recently discovered problem, working in concert with a state agency.

    A.     <u>The Switch of 16,000 connections to Surface Water</u>

It cannot be disputed the decision to switch from well-water to a known surface-water source for a limited number of connections was made years before Yarber and Powell assumed

3

their respective roles with the City.  *See* Exhibit B to Mot. [Dkt. 75-2], Mar. 25, 2014 Minutes of the Jackson City Council.[1]

      B.    <u>Following the Compliance Plan Over the Opinion of a Former, Interim Employee</u>

According to Plaintiffs, in 2014, an interim public-works director proposed to another administration certain repairs to equipment at a treatment plant.  *See* Am. Compl. [Doc. 57] at 21-22 (¶¶ 80-88).  Those plans were deferred.  *See* Anna Wolfe, *Ex-official: Jackson Has Water Solution, Hasn't Acted*, CLARION-LEDGER (Mar. 23, 2016), identified in Am. Compl. [Doc. 57] at 26 n.32.

Within thirteen days of learning there was a lead exceedance, on February 12, 2016, a Compliance Plan was submitted to the City.  *See* Am. Compl. [Doc. 57] at 38 (¶ 172); Ex. 3 to Am. Compl.  Plaintiffs assert the City should have followed the interim employee's recommendation.  The City chose to comply with the Compliance Plan.  The City did so because "lime treatment [would] likely not be all that [needed to be change[d]." Anna Wolfe, *Ex-official: Jackson Has Water Solution, Hasn't Acted*, CLARION-LEDGER (Mar. 23, 2016), identified in Am. Compl. [Doc. 57] at 26 n.32.  The rationale for proceeding with the Compliance Plan's mandated corrosion control study, before purchasing new equipment, was explained as follows:

> Whatever has been put in the budget in the past has had to be spent on emergencies…The reality though is now we're seeing that the liquid lime feed system, had it been installed, may not have been the optimal measure after all, and if we had just put in a piece of equipment because someone said that that would work without there actually being a proper corrosion control treatment optimization study, then we could have very well lost $400,000.

*Id.*

---

[1]     The meeting minutes are a public record for which judicial notice can be taken. It is a published report of a governmental department. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

      C.    <u>Following the recommendation of an approved engineering firm with prior work history with the City</u>

The City selected Trilogy Engineering to design a corrosion control study and plan for optimizing the City's water treatment. *See* Am. Compl. [Doc. 57] at 44 (¶ 201). Trilogy's president was Phillip West Gibson, a licensed professional engineer "who [had] a history working on the city's water systems." *See* Tim Summers, Jr., *As the Water Turns, City Wrestles Over Corrosion Study*, JACKSON FREE PRESS (Mar. 16, 2016), identified in Am. Compl. [Doc. 57] at 45 n.68. The City also selected Trilogy to suggest interim solutions for water treatment while the study took place. *See* Tim Summers, Jr., *Update: Council Approves Trilogy for Water Corrosion Study; Emergency Loan to Fund It*, JACKSON FREE PRESS (Apr. 5, 2016), identified in Am. Compl. [Doc. 57] at 44 n.66.

The City's remedial action improved corrosion control. *See* Anna Wolfe, *A Year Later, Jackson's Lead-Water Issue Not Solved*, HATTIESBURG AMERICAN (Dec. 13, 2016), identified in Am. Compl. [Doc. 57] at 41 n.57 ("The latest pH field sampling in November shows an average pH of 9.4 across the city's water system, indicating marked improvement."); Anna Wolfe, *Jackson Water Issues Persist, Lead Levels Down*, CLARION-LEDGER (July 3, 2017), identified in Am. Compl. [Doc. 57] at 46 n.69 ("It appears that water quality results from the treatment facilities and the field water quality parameters have fallen slightly over the last two months."). Doing so in less than one year was reasonable. Anna Wolfe, *A Year Later, Jackson's Lead-Water Issue Not Solved*, HATTIESBURG AMERICAN (Dec. 13, 2016), identified in Am. Compl. [Doc. 57] at 41 n.57 ("The latest pH field sampling in November shows an average pH of 9.4 across the city's water system, indicating marked improvement.") ("[F]ederal law gives a utility years to optimize corrosion control to come into compliance, **so lead exceedances persisting a year after discovery is certainly not unusual.**") (emphasis added).

D.     Making statements that were ultimately true.

Plaintiffs cannot show the statements Powell or Yarber made were false. Powell gave specific recommendations on *how* the water would be safe to drink: by flushing the system. *See* R.L. Nave, *Jackson Has Long Been at High Risk for Lead Poisoning*, JACKSON FREE PRESS (Feb. 3, 2016), identified in Am. Compl. [Doc. 57] at 14 n.10. She and the City gave specific warnings about *who* should avoid drinking the water: pregnant women and children under 6. *See* Tim Summers, Jr., *As the Water Turns, City Wrestles Over Corrosion Study*, JACKSON FREE PRESS (Mar. 16, 2016), identified in Am. Compl. [Doc. 57] at 27 n.34. She and Yarber *accurately* stated that the crisis in Flint—where people immediately developed rashes and lost hair after drinking untested and untreated water—was not the situation in Jackson. And the City dispatched teams to warn affected homes, distributed pamphlets, and gave specific warnings to high-risk users. *See* R.L. Nave, *Jackson Has Long Been at High Risk for Lead Poisoning*, JACKSON FREE PRESS (Feb. 3, 2016), identified in Am. Compl. [Doc. 57] at 14 n.10.

E.     The circumstances here in Jackson are not akin to Flint's.

Unlike the alleged conduct of the city officials in Flint, Yarber and Powell made informed, reasonable decisions after they learned there was a lead exceedance. Plaintiffs do not like those decisions. But the decisions were not made to exacerbate or prolong the exceedance, but to resolve it. Their actions were not made with the deliberate indifference required to deny them the protection afforded by qualified immunity. *See Pierce v. Hearne Independent School District*, 600 F. App'x 194 (5th Cir. 2015) ([D]eliberate indifference entails "conduct that reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death.") (citing *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)) (citations and internal quotations omitted).

6

## CONCLUSION

For the foregoing reasons, Yarber and Powell are entitled to dismissal.

RESPECTFULLY SUBMITTED, this the 6th day of September, 2023.

/s/ Terris C. Harris

TERRIS C. HARRIS, J.D., LL.M.

Terris C. Harris, J.D., LL.M. (MSB #99433)
THE COCHRAN FIRM-JACKSON, LLC
197 Charmant Place, Suite 2
Ridgeland, MS 39157
Telephone: (601) 790-7600
tharris@cochranfirm.com
*Counsel for Tony Yarber & Kishia Powell*

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2023, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

/s/ Terris C. Harris

TERRIS C. HARRIS, J.D., LL.M.

#101637450v2