UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **Priscilla Sterling, Raine Becker, Shawn Miller, and John Bennett, individually and on behalf of all others similarly situated** | **PLAINTIFFS** |
| v. | Civil No. 3:22-cv-531-KHJ-MTP |
| **The City of Jackson, Mississippi; Chokwe A. Lumumba; Tony Yarber; Kishia Powell; Robert Miller; Jerriot Smash; Siemens Corporation; Siemens Industry, Inc.; and Trilogy Engineering Services LLC** | **DEFENDANTS** |

**MAYOR CHOKWE A. LUMUMBA AND ROBERT
MILLER'S REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION FOR QUALIFIED IMMUNITY AND TO DISMISS</u>**

Plaintiffs' efforts to malign Mayor Lumumba and Miller and the City of Jackson notwithstanding, Plaintiffs cannot ignore a fundamental fact: Jackson's water system has not exceeded actionable lead levels since Mayor Lumumba assumed office in 2017. Any inference otherwise is unreasonable; Plaintiffs' own pleadings and exhibits demonstrate that. *See, e.g.*, Notice, attached to Am. Compl. [Doc. 57] as Exhibit 5, at 3.

Plaintiffs' response to Mayor Lumumba and Miller's arguments are unavailing. For the reasons set forth in the City of Jackson's Reply Memorandum, which are incorporated here, Plaintiffs cannot refute two points fatal to their constitutional claims: 1) the Constitution does not guarantee a right to safe drinking water, and Plaintiffs have not pleaded a bodily-integrity violation; and 2) the Fifth Circuit has not recognized a state-created-danger theory of liability, and Plaintiffs fail to plead essential elements of that theory under the standard the Fifth Circuit has articulated.

1

#101632492v6

Regardless, Mayor Lumumba and Miller are entitled to qualified immunity because Plaintiffs' bodily-integrity claim is not based upon a right that was clearly established during the time period relevant to Plaintiffs' pleadings. Mayor Lumumba and Miller are also entitled to qualified immunity on Plaintiffs' state-created-danger claim, because – as the Fifth Circuit has noted: "Our precedent has repeatedly declined to adopt the state-created danger doctrine. And a right never established cannot be one clearly established." *Fisher v. Moore*, 73 F.4th 367, 375 (5th Cir. 2023). Mayor Lumumba and Miller are also immune from liability for Plaintiffs' asserted claims because Plaintiffs fail to demonstrate Mayor Lumumba and Miller's actions were deliberately indifferent.

Plaintiffs concede their negligence claim (Count V) should be dismissed as to Mayor Lumumba and Miller. Resp. [Dkt. 89], 2 n.1 ("Plaintiffs therefore do not oppose the dismissal of Count V as to only the Individual City Defendants.").

Mayor Lumumba and Miller should be dismissed from this civil action.

## ARGUMENT

**I.    Plaintiffs have not sufficiently pleaded that their constitutional rights to bodily integrity and freedom from state-created dangers were clearly established, entitling Mayor Lumumba and Miller to qualified immunity.**

Plaintiffs all but concede that they cannot meet the standard of demonstrating "controlling authority" or "a robust consensus of cases of persuasive authority" to show the law was "clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011). Given Plaintiffs' inability to overcome the high bar of identifying a factually analogous, controlling case, Plaintiffs instead insist that Mayor Lumumba and Miller "engaged in obvious violations of the Constitution and qualified immunity cannot shield their actions." Resp. [Dkt. 89] at 29. In

2

support, Plaintiffs rely on the Supreme Court's cases upon which the Sixth Circuit relied to reach its conclusion in *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019). *See id.*

The Supreme Court cases upon which *Guertin* relies are not factually analogous to this case. The cases it cites deal with forced surgery (*Winston v. Lee*, 470 U.S. 753 (1985)); forced medication (*Washington v. Harper*, 494 U.S. 210, 213-17 (1990); *Riggins v. Nevada*, 504 U.S. 127 (1992); *Sell v. U.S.*, 539 U.S. 166 (2003)); forced stomach-pumping (*Rochin v. California*, 342 U.S. 165 (1952)); and the burden of proof for withdrawal of life support (*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269-70 (1990)).

There is nothing comparably obvious about this case. Plaintiffs claim that lead in the drinking water is obviously unconstitutional. *See* Resp. [Dkt. 89], 20 ("*Guertin*'s finding that Supreme Court precedent sufficiently defines the contours of the bodily integrity right to encompass lead contamination."). But the presence of lead in the drinking water is not even an obvious statutory violation. Rather, the EPA sets minimum lead levels allowed under the Safe Drinking Water Act (SDWA) through the Lead and Copper Rule—and those levels are *not* zero. Plaintiffs' own pleadings demonstrate the City's water system has never exceeded those levels since Mayor Lumumba assumed office. There is no well-established constitutional rule proscribing Mayor Lumumba and Miller's actions here. There are only federal regulations, and those regulations do not give rise to a constitutional claim.

Plaintiffs argue that the City has violated EPA regulations and orders, and this should weigh in favor of a finding of obviousness. They seek to distinguish *Gagne v. Galveston*, in which the Fifth Circuit held, "'officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.'" 805 F.2d 558, 559 (5th Cir. 1986) (quoting *Davis v. Scherer*, 468 U.S. 183 (1984)).

3

The Fifth Circuit relied upon *Davis v. Scherer*, which, in a footnote, explained the relationship between statutory violations and qualified immunity:

> In *Harlow*, the Court acknowledged that officials may lose their immunity by violating "clearly established statutory . . . rights." 457 U.S., at 818. This is the case where the plaintiff seeks to recover damages for violation of those statutory rights, as in *Harlow* itself, see *id*., at 820, n. 36, and as in many § 1983 suits, see, *e. g., Maine* v. *Thiboutot*, 448 U.S. 1 (1980) (holding that § 1983 creates cause of action against state officials for violating federal statutes). For the reasons that we discuss, officials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some *other* statute or regulation. Rather, these officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages. And if a statute or regulation does give rise to a cause of action for damages, clear violation of the statute or regulation forfeits immunity only with respect to damages caused by that violation. In the present case, as we have noted, there is no claim that the state regulation itself or the laws that authorized its promulgation create a cause of action for damages or provide the basis for an action brought under § 1983.

468 U.S. at 194 n.12.

In *Davis*, the plaintiff was a police officer who was terminated for working two jobs. *Id.* at 186. The officer was terminated without a formal or prompt hearing, and he sued for violation of his due process rights. *Id.* at 187. State law required a complete investigation and an opportunity to respond in writing. *Id.* at 188. The trial court found that the supervising officer's failure to follow state law warranted denial of qualified immunity. The Supreme Court reversed and wholly rejected the argument that violation of a statute is relevant to whether qualified immunity for violation of a constitutional right should be granted.

Here, Plaintiffs have not brought a § 1983 action for violation of the SDWA, nor have they brought a private right of action directly under the SDWA. This law and the EPA orders enforcing it have no bearing on whether Plaintiffs have met their burden of demonstrating

violation of a clearly established constitutional right. Unlike in *Hope*, where a DOJ memorandum advised on the unconstitutionality of the practices at issue, the SDWA and EPA's regulations and orders say nothing about the *constitutionality* of staffing decisions, or compliance with a remediation plan, or treating water with soda ash instead of lime. *Davis* dictates the violation of a statute does not make a constitutional violation obvious.

In this Circuit, the exception for "obvious" violations is narrow: "[u]nder *Taylor*, plaintiffs are only excused of their obligation to identify an analogous case in extreme circumstances where the constitutional violation is obvious." *Cope v. Cogdill*, 3 F.4th 198, 206 (5th 2021) (citing *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (per curiam)) (internal quotations omitted). Here, where there were competing policy reasons for public officials' conduct, specifically their reasons for making staffing decisions or giving tailored notice to the affected citizens, the Court should find there is no "obvious" violation. There is nothing obviously unconstitutional about public servants making difficult decisions when faced with limited resources and competing crises, particularly given that "substantive due process is not the clearest of Supreme Court doctrines…the caselaw in this area is contradictory, imprecise, and, well, messy." *Daves v. Dall. Cty.*, 984 F.3d 381, 411 (5th Cir. 2020) (internal quotations omitted). Certainly, when the *Guertin* court itself divided over whether a constitutional violation had occurred at all, it is not "obvious" that the individual defendants here violated Plaintiff's constitutional rights.

**II.   Neither Mayor Lumumba nor Miller engaged in conscience-shocking conduct.**

Despite Plaintiffs' efforts to distort Mayor Lumumba and Miller's actions to comport with those of the officials in Flint, they fail. Plaintiffs do not allege Mayor Lumumba or Miller created issues regarding lead contamination in the Jackson water system, which again, was a critical factor upon which the *Guertin* court relied. They also do not allege – because, again, they cannot –

5

Mayor Lumumba or Mr. Miller were deliberately indifferent in that they took any action that they knew would create a significant risk of death. *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194 (5th Cir. 2015) ([D]eliberate indifference entails "conduct that reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death.") (citing *Salazar v. Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)) (citations and internal quotations omitted).

Plaintiffs rely instead on the allegations Mayor Lumumba took no action to adequately staff the treatment plants, failed to comply with a Compliance Plan, and oversaw the water, none of which establish a statutory violation, much less a constitutional one, to demonstrate conscience-shocking conduct. There are no allegations lead levels exceeded actionable levels and Mayor Lumumba knew his actions, or inaction, would prolong or exacerbate that issue. Lead levels have been within permissible levels during the entirety of Mayor Lumumba's and Mr. Miller's tenure.

Plaintiffs also rely on Mr. Miller's alleged representations. Resp. [Dkt. 89], 20. As an initial matter, while Plaintiffs quibble with the substance of Mr. Miller's statements, Plaintiffs do not show the statements were false. To summarize the statements, both Mr. Miller (and Mayor Lumumba) informed the public – on more than one occasion – that the City failed process standards for maintaining the proper pH within the system. While notifying the public of those technical violations, they were clear the technical violations did not present an "emergency situation." And there was no emergency vis-à-vis lead because the lead levels in Jackson's water system were not above statutory minimums. Nevertheless, Mr. Miller (and Mayor Lumumba) were equally clear Jackson water users should take precautions, including (1) using filtered or bottled water for pregnant women, children 5 years old and younger, and for making formula; (2) running the water for one to two minutes in the morning before using it for the first time; (3)

cleaning faucet aerators; (4) making sure children have adequate lead testing done; and (5) not drinking hot water from the tap. *See* Marie Weidmayer, *City Violated Water Treatment Procedure, Still Safe to Drink*, JACKSON FREE PRESS (July 19, 2018), identified in Am. Compl. [Dkt. 57] at 38 n.50. Plaintiffs' response completely ignores those precautions.

*Guertin*'s holding as to what constitutes "conscious shocking" is inapplicable here. In *Guertin*, the court held that certain individual defendants were not entitled to qualified immunity due to the specific allegations against them revealing their respective roles in "creating, sustaining and covering up the Flint Water Crisis…." *In re Flint Water Cases, Waide* v. *Early, et al,* 960 F.3d 303, 323 (6th Cir. 2020). Importantly, in concluding that certain defendants were not entitled to qualified immunity, *Guertin* focused heavily on each defendants' role as an "instrument in creating the crisis." 912 F.3d at 926. Specifically, the *Guertin* Court found that the individuals to whom qualified immunity was not afforded "were among the chief architects of Flint's decision to switch water sources and then use a plant they knew was not ready to safely process the water, especially in light of the Flint River's known environmental issues and the problems associated with lead exposure." *Id*.

That is clearly not the case here. Neither Mayor Lumumba nor Mr. Miller were City officials during the time Jackson's water system exceeded actionable lead levels. And, as Defendants have already shown, at no time during Mayor Lumumba's tenure were any actions taken that caused the lead in Jackson's water system to exceed statutory minimums. Mayor Lumumba and Mr. Miller were not the architects of circumstances that caused lead to contaminate Jackson's water. They did not alter, manipulate, or lie about water-testing results. They did not ignore warnings that their actions would cause lead levels in Jackson's water to exceed permissible levels. Try as they might, Plaintiffs have not, and cannot, plead Mayor Lumumba and Mr. Miller

7

#101632492v6

engaged in conscience-shocking, deliberately indifferent conduct. Therefore, Plaintiffs cannot meet their hefty burden of overcoming Mayor Lumumba and Mr. Miller's qualified immunity defense.

## CONCLUSION

For the foregoing reasons, Mayor Lumumba and Robert Miller are entitled to dismissal.

RESPECTFULLY SUBMITTED, this the 6th day of September, 2023.

                                              */s/ John F. Hawkins*
                                              JOHN F. HAWKINS

John F. Hawkins, Esquire (MSB #9556)
HAWKINS LAW, P.C.
226 North President Street (39201)
Post Office Box 24627
Jackson, MS 39225-4627
Telephone: (601) 969-9692
Facsimile: (601) 914-3580
john@hgattorneys.com

*Counsel for Mayor Chokwe A.
Lumumba and Robert Miller*

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2023, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

                                              */s/ John F. Hawkins*
                                              JOHN F. HAWKINS

#101632492v6