UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **Priscilla Sterling, Raine Becker, Shawn Miller, and John Bennett, individually and on behalf of all others similarly situated** | **PLAINTIFFS** |
| v. | Civil No. 3:22-cv-531-KHJ-MTP |
| **The City of Jackson, Mississippi; Chokwe A. Lumumba; Tony Yarber; Kishia Powell; Robert Miller; Jerriot Smash; Siemens Corporation; Siemens Industry, Inc.; and Trilogy Engineering Services LLC** | **DEFENDANTS** |

### CITY OF JACKSON'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

The City's initial briefing posed two questions and demonstrated each should be answered in the negative: whether the Court should: 1) find a due-process violation where the Plaintiffs' averments do not establish Plaintiffs were coerced to consume allegedly contaminated water; and 2) eschew stare decisis and recognize a state-created-danger claim that Plaintiffs fail to plead. The arguments Plaintiffs advance in response do not change the answers to those questions.

Plaintiffs fail to show how the City coerced or deceived anyone into consuming contaminated water, because Plaintiffs fail to allege they relied on any statement Plaintiffs believe was deceptive. Instead of addressing their own pleadings and exhibits -- which establish the City promptly and consistently provided notice and precautions on how the water may be consumed safely -- Plaintiffs ask this Court to guarantee a right to safe drinking water. The Court should outright reject that request.

Plaintiffs concede the Fifth Circuit does not recognize the state-created danger theory of liability. And they all but acknowledge they did not plead essential elements of the articulated

#101635012v2

standard for a state-created-danger claim. Nevertheless, Plaintiffs attempt to re-interpret Fifth-Circuit precedent to remove elements of the articulated standard for a state-created-danger claim. The Court should reject that effort, too.

The Court should dismiss Counts I and II of the Amended Complaint against the City.

## ARGUMENT

**I.  Plaintiffs may not simply ignore their own pleadings and exhibits.**

Plaintiffs' citations contradict many of the key averments upon which Plaintiffs rely to demonstrate they have sufficiently pleaded a constitutional violation. The Court does not have to accept as true Plaintiffs' averments, or the inferences that may be drawn from them, as the cited exhibits control. *See U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp. 2d 500, 513-14 (S.D. Tex. 2000) (holding that if the exhibits attached to or incorporated into the complaint contradict the allegations of the complaint, the exhibits control) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

Therefore, the Court does not have to accept as true the allegations that the City knew Jackson's water system exceeded permissible lead levels in June 2015. *See, e.g.*, Resp. [Dkt 89], 18. Plaintiffs' pleadings demonstrate the City was made aware of the lead-level exceedance on or about January 29, 2016. *See* Am. Compl. [Doc. 57] at 32, 33 (¶ 145, 150); Anna Wolfe & Sara Fowler, *Jackson, MSDH Report Lead Detection in City Water*, Clarion-Ledger (Jan. 29, 2016), identified in Am. Compl. [Doc. 57] at 33 n.42. That day, the City held a press conference and sprang into action. *See id.*

The Court also does not have to accept as true the City "covered up" the lead exceedance, *see* Resp. [Dkt. 89], 15, when Plaintiffs' citations demonstrate otherwise. Upon learning of the lead exceedance, the City gave specific recommendations on *how* the water would be safe to drink: by flushing the system. *See* R.L. Nave, *Jackson Has Long Been at High Risk for Lead*

*Poisoning*, JACKSON FREE PRESS (Feb. 3, 2016), identified in Am. Compl. [Doc. 57] at 14 n.10. The City gave specific warnings about *who* should avoid drinking the water: pregnant women and children under 6. *See* Tim Summers, Jr., *As the Water Turns, City Wrestles Over Corrosion Study*, JACKSON FREE PRESS (Mar. 16, 2016), identified in Am. Compl. [Doc. 57] at 27 n.34. And the City dispatched teams to warn affected homes, distributed pamphlets, and gave specific warnings to high-risk users. *See* R.L. Nave, *Jackson Has Long Been at High Risk for Lead Poisoning*, JACKSON FREE PRESS (Feb. 3, 2016), identified in Am. Compl. [Doc. 57] at 14 n.10.

Finally, the Court does not have to accept as true Plaintiffs' contention that the City sat by idly, failing to address the lead exceedance once discovered. Within thirteen days of learning there was a lead exceedance, on February 12, 2016, a Compliance Plan was submitted to the City. *See* Am. Compl. [Doc. 57] at 38 (¶ 172); Ex. 3 to Am. Compl. Plaintiffs assert the City should have followed an interim employee's recommendation. The City chose to comply with the Compliance Plan instead. The rationale for proceeding with the Compliance Plan's mandated corrosion control study before purchasing new equipment was explained as follows:

> Whatever has been put in the budget in the past has had to be spent on emergencies…The reality though is now we're seeing that the liquid lime feed system, had it been installed, may not have been the optimal measure after all, and if we had just put in a piece of equipment because someone said that that would work without there actually being a proper corrosion control treatment optimization study, then we could have very well lost $400,000.

Anna Wolfe, *Ex-official: Jackson Has Water Solution, Hasn't Acted*, CLARION-LEDGER (Mar. 23, 2016), identified in Am. Compl. [Doc. 57] at 26 n.32.

Plaintiffs' response demonstrates the City's efforts to address – among other things – the lead exceedance. The last time a lead exceedance was reported was December 2016. Any inference otherwise is unreasonable. *See, e.g.*, Notice, attached to Am. Compl. [Doc. 57] at Exhibit 5, at 3.

## II.     Plaintiffs' bodily-integrity claim fails, because the City did not deceive them.

Plaintiffs' briefing is silent as to whether there is a fundamental constitutional right to safe drinking water. The City has established no such right exists. Therefore, and as set forth in the City's initial brief, the mere provision of water, regardless of its quantity or quality, cannot provide a basis for a constitutional violation. *See also Guertin v. Michigan*, 912 F.3d 907, 955 (6th Cir. 2019) ("If the Constitution does not guarantee the right to receive clean water on the one hand, how may it guarantee the right not to be exposed to contaminated water on the other?") (McKeague, J., dissenting). Taking actions that may have unintentionally failed to prevent lead from entering water may constitute negligence, may constitute violations of the Safe Drinking Water Act, or may be otherwise actionable. But it does not violate Plaintiffs' constitutional rights.

To state a claim for a violation of bodily integrity, Plaintiffs must establish that the City compelled them to consume the water. Plaintiffs' own case citation support that position. *See* Resp. [Dkt. 89], 12 (citing *Missouri v. McNeely*, 569 U.S. 141, 159 (2013) for the proposition that "any *compelled* intrusion into the human body implicates significant, constitutionally protected privacy interests") (emphasis added). The City's initial brief establishes the City did not take any action that compelled Plaintiffs to consume water, Plaintiffs' distortion of the facts notwithstanding.

Regarding the City's actions, Plaintiff also acknowledge they did not plead the City intended to harm them. Resp. [Dkt. 89], 14. That is what distinguishes this case from cases like *Guertin*, 912 F.3d at 926 (noting public officials intended to use a water treatment plant they knew could not safely treat water from the Flint River) and *Washington v. Housing Authority of the City of Columbia*, 58 F.4th 170, 181 (4th Cir. 2023) (finding the governmental agency

intended to allow the property to become dilapidated). In each of those cases, the courts found a constitutional violation because the plaintiffs pleaded a governmental entity's intent to cause a harmful condition that could infringe on the bodily integrity of the plaintiff. There are no allegations of the City's intent to create a harmful condition that could harm Plaintiffs. The facts of this case are more akin to the facts in *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), where the court found the lack of intent precluded the plaintiffs' constitutional claims.

More importantly, the City's principal brief establishes Plaintiffs never allege they relied on, or even heard or read, any misrepresentations. The *Guertin* Court found that "[m]isleading Flint's residents as to the water's safety—so that they would continue to drink the water and Flint could continue to draw water from the Flint River—is no different than the forced, involuntary invasions of bodily integrity that the Supreme Court has deemed unconstitutional." *Guertin*, 912 F.3d at 926. If Plaintiffs never heard or read the alleged misrepresentations, then they could not have been misled. And if Plaintiffs were not misled into drinking the water, then even under *Guertin*, there is no argument that their consumption of lead was "compelled."

Plaintiffs' response reveals why this case should be dismissed. They claim they do not have to establish reliance, because "Plaintiffs allege they depend on the public water system." Resp. [Dkt. 89], 15. But this is contrary to their **entire argument** that they are not claiming a constitutional right to safe water.

### III. A third-party crime and known victim are essential elements of a state-created-danger claim under the standard articulated in the Fifth Circuit.

Plaintiffs concede the Fifth Circuit has not adopted the state-created danger theory of liability. Resp. [Dkt. 89], 25. Instead, they ask the Court to follow "Supreme Court precedent" without identifying a case in which the Supreme Court recognized a state-created-danger-claim. Plaintiffs do not cite Supreme Court precedent, because whether a state-created-danger claim

exists is still an open question before the Supreme Court. *See Fisher v. Moore*, 73 F.4th 367, 374 (5th Cir. 2023). They also ask the Court to adopt the concurring opinions of two judges in *Fisher* while ignoring the majority opinion, which states:

> We are particularly hesitant to expand the reach of substantive due process—not merely because we have "repeatedly" declined to do so on this exact issue, but also because the Supreme Court has recently—and forcefully—underscored that substantive due process is a disfavored doctrine prone to judicial improvisation. When adopting the state-created danger doctrine, our sister circuits tend to reason along the lines of (1) the Supreme Court left open the question in *DeShaney*, and (2) other courts have adopted the doctrine. More recently, however, the Court has reiterated—with gusto—that rights protected by substantive due process "must be 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'"

*Id.* at 373-74.

The Fifth Circuit has been clear that the state-created-danger theory of liability is not viable in this jurisdiction. The Court should follow that precedent, especially where Plaintiffs have failed to plead essential elements of a state-created-danger claim.

A. <u>A third-party crime is an element of a state-created-danger claim.</u>

Contrary to Plaintiffs' assertions, the often-articulated test for a state-created-danger claim in the Fifth Circuit **only starts** with two elements. *See, e.g.*, *Doe*, 675 F.3d at 864-65 (5th Cir. 2012) (en banc) (explaining "the state-created danger theory requires a plaintiff to show (1) the defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate indifference to the plight of the plaintiff."). But, the analysis does not end there. Under the test articulated by the Fifth Circuit, the second element, i.e., the deliberate indifference element, is subdivided into three prongs, which combine to subsume the first element. *Doe* is clear that the deliberate-indifference element of a state-created-danger claim requires a showing that "the environment created by the state actors must

#101635012v2

be dangerous; they must know it is dangerous; and they must have used their authority to create an opportunity that would not otherwise have existed for the **third party's crime** to occur." *Id.* at 865 (emphasis added).

The third-party-crime element of a state-created-danger claim is not disputed in the Fifth Circuit; it has been recognized time and time again, including in the other case upon which Plaintiffs rely. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 313-14 (5th Cir. 2002) ("To establish [the] deliberate indifference [prong the state-created-danger theory], the plaintiff must show that the state actors created a dangerous environment, that they knew it was dangerous, and that they used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.") (internal quotations omitted); *see also Robinson v. Webster Cty.*, 825 F. App'x 192, 195 (5th Cir. 2020) (noting the state-created-danger theory is an exception to the general rule that "a state's failure to protect an individual against **private violence** simply does not constitute a violation of the Due Process Clause.") (internal quotations omitted) (emphasis added).

Nevertheless, Plaintiffs cite *Scanlan v. Texas A&M University* for the proposition that a third-party crime is not required. Resp. [Dkt. 89], 23-24. First *Scanlan* does not state that a third-party injury is not required. Second, at least three panels of the Fifth Circuit have recognized that *Scanlan* neither approves nor adopts the state-created-danger theory of liability. *See, e.g., Rio v. City of Del Rio*, 444 F.3d 417, 422-23 (5th Cir. 2006).

Like its sister circuits, the Fifth Circuit recognizes the state-created-danger theory of liability redresses a state actor's failure "to protect an individual from injuries inflicted by a third party if the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to [an] individual's injury" only. *See McClendon v. City of Columbia*, 305 F.3d

314, 324 (5th Cir. 2002).[1] Therefore, just like in other Circuits, a third-party crime is an essential element of a state-created-danger claim.

As an afterthought, Plaintiffs imply Trilogy committed a third-party crime against them. Plaintiffs' pleadings are wholly devoid of factual support for that implication. And, "claims and supporting factual allegations must be raised in a complaint; it is not enough to present supporting factual allegations in a response to a motion to dismiss." *Coleman v. Bunch*, Civ. Action No. 1:17-cv-186-HSO-JCG, 2018 U.S. Dist. LEXIS 81620, *6-*7 (S.D. Miss. Apr. 18, 2018) (citing *Cevallos v. Silva*, 541 F. App'x 390, 393-94 (5th Cir. 2013)); *see also R.S. v. Starkville Sch. Dist.*, Civ. Action No. 1:12-CV-88-SA-DAS, 2013 U.S. Dist. LEXIS 134264, *14 (N.D. Miss. Sept. 19, 2013) (refusing to consider additional facts in a response memorandum that do not appear in the complaint in ruling on a motion for judgment on the pleadings). The Court should not consider factual assertions raised in Plaintiffs' response. *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, Civ. No. 1:06CV433-HSO-RHW, 2015 U.S. Dist. LEXIS 197006, *37-38 (S.D. Miss. Aug. 6, 2015) (citing *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013)).

      B.    <u>A known victim is a requirement of a state-created-danger theory.</u>

Next, Plaintiffs misrepresent the City's briefing as to the known-victim requirement of a state-created-danger theory. Plaintiffs claim the City relies on an unpublished opinion to support its contention that the state-created-danger claim does not exist without a known victim. Resp. [Dkt. 89], 24. That is simply not true. Instead, the City states:

> The state-created-danger theory "is inapposite without a known victim." *Doe*, 675 F.3d at 865. A plaintiff must "demonstrate the

---

[1] Some Circuits read the language of *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), to impose a duty on state actors to protect individuals from injuries inflicted *by a third party* if the state actor played an affirmative role in creating or exacerbating the dangerous situation that led to the individual's injury.

> existence of an immediate danger facing a known victim." Id. at 866 (quoting *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999)). Identifying a known victim requires more than singling out a segment of the general public at large that may be affected by state action; the test articulated by the Fifth Circuit requires plaintiffs to plead the state actor was aware of an immediate danger to a specific and identifiable individual. See *id.* at 865; *see also Dixon*, 499 F. App'x at 368 (finding potential harm to students in general is inadequate to satisfy the known-victim requirement); *Doe*, 675 F.3d at 865-66 (same).

Mem. [Dkt. 71] at 17-18 (relying primarily on a reported case); *see also Rios*, 444 F.3d at 424 n.7 ("[L]iability exists only if the state actor is aware of an immediate danger facing a known victim and does not extend to all foreseeable victims.") (internal quotations and emphasis omitted).

Plaintiffs next baldly misrepresent the impact of Fifth Circuit precedent, holding a known victim is an element of a state-created-danger claim. Plaintiffs proclaim that requirement "allow[s] government officials to escape constitutional liability in the most heinous cases, where they knowingly injure entire communities." Resp. [Dkt. 89] at 24. That proclamation is patently false. The requirement precludes plaintiffs from asserting a limited exception to the general rule "a state's failure to protect an individual against **private violence** simply does not constitute a violation of the Due Process Clause"; it does not forestall all constitutional claims. The Court should not be swayed by Plaintiffs' histrionics.

## CONCLUSION

For the foregoing reasons, the City is entitled to dismissal of Counts I and II.

RESPECTFULLY SUBMITTED, this the 6th day of September, 2023.

                                                  */s/ Clarence Webster, III*
                                                  CLARENCE WEBSTER, III

Clarence Webster, III (MSB #102111)
Kaytie M. Pickett (MSB #103202)

#101635012v2

Adam Stone (MSB #10412)
JONES WALKER LLP
190 E. Capitol Street, Suite 800
Jackson, MS 39201
Telephone: (601) 949-4900
Facsimile: (601) 949-4804
cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
*Counsel for the City of Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2023, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

*/s/ Clarence Webster, III*
CLARENCE WEBSTER, III

#101635012v2