UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **Priscilla Sterling, Raine Becker, Shawn Miller, and John Bennett, individually and on behalf of all others similarly situated** | Plaintiffs |
| v. | Civil No. 3:22-cv-531-KHJ-MTP |
| **The City of Jackson, Mississippi; Chokwe A. Lumumba; Tony Yarber; Kishia Powell; Robert Miller; Jerriot Smash; Siemens Corporation; Siemens Industry, Inc.; and Trilogy Engineering Services LLC** | Defendants |

### THE CITY'S REPLY IN SUPPORT OF MOTION TO DISMISS
### THE SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs' Opposition—which is based on factually distinguishable cases and misrepresentations of their own pleadings—does not refute three pertinent points, each of which is fatal to Plaintiffs' bodily-integrity claim : A) no case has applied the deliberate-indifference culpability standard to a government official's public statements; B) the City's public statements were based on the information available at the time; and C) no case has expanded the scope of substantive due process to include liability for statements made to the general public. The Court should grant the City's Motion to Dismiss.

### ARGUMENT

I. **Plaintiffs misrepresent the City's arguments the culpability standard for statements made in response to a crisis should be intent-to-harm.**

Plaintiffs' opposition to the "intent to harm" standard of culpability is that heightened standard "is only applicable when an official does not have time for deliberation, such as when responding to a prison riot or engaging in high-speed police chases." Mem. in Opp'n [Doc. 115] at 14. Plaintiffs believe the City "concede[s]" that argument. *Id.* The City does not.

1

Plaintiffs completely ignore the precedent upon which the City relies, namely *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), and *Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007), both of which directly address the culpability standard that should apply to a government official's alleged misstatements in response to an environmental crisis. *See Benzman*, 523 F.3d at 128 (noting "it is far from clear that a complaint adequately alleging knowing falsity would have survived dismissal in the absence of an allegation of intent to injure").

Instead, Plaintiffs rely on inapplicable cases to support their position the Court should apply a lower, deliberate indifference, standard. *Rochin* involved law enforcement illegally breaking into the petitioner's home, struggling to open his mouth involuntarily, and forcibly extracting his stomach's contents. 342 U.S. 164, 166, 172 (1952) (finding the state could not force an "an emetic solution through a tube into [a claimant's] stomach"). *Abbott*[1] applied the deliberate indifference standard to a substantive-due-process claim by foster children because the state had an affirmative duty to the children. 907 F.3d 237, 248-49, 251 (5th Cir. 2018) (finding, unlike here, a special relationship exists between the state and foster children, imposing affirmative obligations on the state it would not owe the public). And *Wilson* involved sexual misconduct by an employee who had an "egregious" and "pervasive" history of sexual misconduct. 742 F.3d 775, 782 (7th Cir. 2014). None of those cases remotely relate to the claims

---

[1] Plaintiffs' amended pleadings do not include new allegations establishing a special relationship between themselves and the City. *See, e.g.*, Mem. in Opp'n [Doc. 115] at 5 (While, as shown below, the City disagrees, Plaintiffs claims the new allegations in the Second Amended Complaint establish Plaintiffs "heard the City statements", "relied on those statements", and "that this reliance was reasonable".). *See also id.* at 20. Nevertheless, Plaintiffs continue to incorrectly assert they should be treated like foster children or involuntarily committed patients. *Id.* at 15-16 (claiming the standard of culpability should be the same for non-custodial citizen as it is for foster children or involuntarily committed patients), 19-20 (same). The Court rejected that contention once. *Sterling*, 2024 U.S. Dist. LEXIS 19462, at *18 ("Plaintiffs are non-custodial citizens. They do not allege a 'special relationship between themselves and the City.'"). It should do so again.

of non-custodial plaintiffs, averring the statements of public officials induced them to consume water.

Plaintiffs also cite *Lewis*, 523 U.S. 833, while ignoring the Supreme Court's guidance that "deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." *Id.* at 850.  Relying on factually incongruent cases is not the "exact analysis" Supreme Court precedent demands to determine the standard of culpability in this case.

**II.     Plaintiffs concede they have not pleaded the City intended to harm them.**

The First Amended Complaint did not contain allegations establishing the City intended to harm Plaintiffs (or anyone else).  *See Sterling*, 2024 U.S. Dist. LEXIS 19462, at *25.  The Second Amended Complaint does not, either.  Therefore, Plaintiffs cannot meet the correct, intent-to-harm, standard of culpability for alleged representations public officials made in response to an environmental crisis.

**III.    Plaintiffs have not established the City's public pronouncements were made with deliberate indifference.**

A.     <u>Plaintiffs may not simply ignore their own pleadings and exhibits</u>.

Plaintiffs' pleadings and exhibits contradict key assertions and inferences in their Opposition. The Court does not have to accept the factual conclusions in the Opposition, or the inferences drawn therefrom, as true. *See Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2004) ("If an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls.") (internal quotations omitted).

Plaintiffs' pleadings and exhibits demonstrate the City was made aware of the lead-level exceedance on or about January 28, 2016. *See* 2nd Am. Compl. [Doc. 101] at 36 (¶ 147) ("**On**

3

**or about January 29, 2016, the MSDH formally notified Jackson** that it found lead in 22.4 percent of the 58 Jackson homes it sampled in June 2015.") (emphasis added); *id.* at 37 (¶ 150) ("On January 29, 2016, Powell **immediately** told the public that the June 2015 findings . . . .") (emphasis added); Anna Wolfe & Sara Fowler, *Jackson, MSDH Report Lead Detection in City Water*, Clarion-Ledger (Jan. 29, 2016), identified in 2nd Am. Compl. [Doc. 101] at 38 n.42 ("Though the Health Department conducted the study in June and received the results indicating higher than acceptable levels of lead in July, **the agency did not report the information to the city until Jan. 28**.")[2] (emphasis added).  Therefore, the Court does not have to accept as true the assertions the City knew Jackson's water system exceeded permissible lead levels in June 2015. *See* Mem. in Opp'n [Doc. 115], at 7 ("Yet the City did not notified [sic] residents whose lead levels exceeded the regulatory limit, nor did not notify the public until at least seven months later.") (emphasis omitted).

The Court also does not have to accept Plaintiffs' bald, often-repeated claims the City "covered up" or "[misled] the community about" the lead exceedance for not just months, but, inexplicably, **years.**  *E.g.*, Mem. in Opp'n [115] at 5 ("**For years**, the City knowingly fed lead-contaminated water to its residents' tap and encouraged them to drink and use that water.") (emphasis added); *id.* at 15 ("[T]he City had months, if not years, to deliberate before deciding to

---

[2] State Health officials explained why MSDH waited until January 28 to inform the City of the lead exceedance as follows:

> [B]ecause the sampling was part of a compliance test with the Environmental Protection Agency, which does not require immediate notification.
>
> The compliance period is three years.
>
> "**We don't actually calculate whether a system is in compliance until after that period is over**," Currier said. "Now let me assure you that we're going to take a look at how that's done and see if we don't need to change that."

*Id.* (emphasis added).

mislead the community about the dangers of the contaminated water it was providing."); *id*. at 18 ("[T]he City had days, months, and even years to deliberate about its response to the water crisis.").

The facts established by the Second Amended Complaint and its exhibits, are as follows. First, before January 28, 2016, the City never had a lead exceedance. *See generally* 2nd Am. Compl. [Doc. 101] at 25 (¶ 78) (stating 2013 lead testing results "were not high enough to exceed the lead MCL and trigger any mandatory action"). Second, the City has not had a lead exceedance since December 2016, *see* Notice, attached to 2nd Am. Compl. [Doc. 101] as Exhibit 5, at 3 (noting the last lead exceedance was found during the July-December 2016 monitoring period). Third, resolving the lead exceedance in approximately one year is not unusual. *See generally* Anna Wolfe, *A Year Later, Jackson's Lead-Water Issues Not Solved*, Hattiesburg American (Dec. 13, 2016), identified in 2nd Am. Compl. [Doc. 101] at 46 n.57 (EPA Region 4 stating "federal law gives a utility years to optimize corrosions control to come into compliance, so lead exceedances persisting a year after discovery is certainly not unusual").

Plaintiffs' assertions are not factually plausible, and the Court should "not strain to find inferences favorable to plaintiffs or accept conclusory allegations unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (internal quotations omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009) ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (cleaned up); *Petersen Indus., Inc. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-FKB, 2011 U.S. Dist. LEXIS 13338, *3-*4 (S.D. Miss. Feb. 9, 2011) ("A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

      B.      <u>The City made statements based on the information available at the time.</u>

To demonstrate deliberate indifference, Plaintiffs had to allege facts demonstrating the City "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and it must also draw that inference." *Abbott*, 907 F.3d at 252 (internal quotations omitted). A government actor "is not deliberately indifferent to a substantial risk of serious harm if, aware of the risk, it responds reasonably even if the harm ultimately was not averted." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)) (cleaned up).

As shown, *See* Mem. in Supp. [Doc. 107] 6-7, the City's public pronouncements were based on the information available to the City at that time, and were not intentionally false. Whether the City should have said more (or nothing at all) does not give rise to a substantive-due-process claim.

**IV.**    **There are no concrete examples arising from the established bodily integrity jurisprudence or from our Nation's history or traditions that support the right asserted here—protection from public statements.**

Substantive due process analysis "begin[s] with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). As the Court recognized in its prior Order, dismissing the First Amended Complaint, the Court "'must next determine whether there exist historical examples of recognition of the claimed liberty protection *at some appropriate level of specificity*.'" *Sterling*, 2024 U.S. Dist. LEXIS 19462, at *22 (emphasis added) (quoting *Morris v.*

*Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999)). A correct description of the claimed right at issue here shows there is no jurisprudence and no tradition that supports that right.[3]

Most generously construed, Plaintiffs are claiming a right to be protected from public statements that led them to ingest water. Plaintiffs point to *no* precedent existing in 2016 recognizing such a right.[4] Instead, they too-broadly define the right as a "liberty interest to refuse the government's issuance of chemicals into a person's body without that person's informed consent." Mem. in Opp'n [Doc. 115] at 6.

Plaintiffs did not plead that the City "issue[d] chemicals into a person's body," so Plaintiffs' description of the right at issue is inaccurate. Rather, Plaintiffs pleaded that they relied on the City's public statements in drinking the water. The claimed right should fit the actual allegations. Moreover, claiming a right to "informed consent" before drinking the water is claiming a right to be warned that the water contained lead. Putting aside the fact that the City *did* issue warnings, there is no substantive due process right to be warned. *See Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992) ("We also are not persuaded that the city's alleged failure . . . to warn them about known risks of harm, was an omission that can properly be

---

[3] Plaintiffs cite *Washington v. Glucksberg,* 521 U.S. 702, 722 (1997), to support their argument that the right at issue "is not and cannot be defined so narrowly." But in *Washington*, the Supreme Court rejected the plaintiffs' broad definitions of the interest at stake as the "right to die," the "right to control of one's final days," or "the right to choose a humane, dignified death." *Id. Washington* supports the City's position that the asserted right must be carefully described with specificity. And the claimed right at issue in *Washington*— "a right to commit suicide with another's assistance"—is not at issue in this case.

[4] Plaintiffs' reliance on *Guertin v. State*, 912 F.3d 907 (6th Cir. 2019), is unavailing, because *Guertin* was decided after the events giving rise to Plaintiffs' claim—Jackson's response to the lead exceedance. *See Morris*, 181 F.3d at 668 ("[W]e must assess what clearly established legal standards governed the defendant's actions at the time of the incident at issue."). As noted, there has not been a lead exceedance since December 2016.

characterized as arbitrary, or conscience shocking, in a constitutional sense. Petitioner's claim is analogous to a fairly typical state-law tort claim . . . .").

None of the cases Plaintiffs rely upon address a right to be protected from government statements. As shown in both sides' briefing, bodily integrity jurisprudence involves claims of sexual misconduct, compelled medical procedures, and assault, **and** individuals in the custody of the state as either a student, foster child, prisoner, or arrestee. *See* Mem. in Opp'n [Doc. 115] at 7-8; Mem. in Supp. [Doc. 107] at 11-13. No legal precedent has extended the right to bodily integrity to a case, like this, where the plaintiffs—none of whom are in the custody of the state— alleged public officials' statements, reassuring the public in the face of an ongoing environmental crisis, could give rise to a constitutional claim.

Plaintiffs unsuccessfully try to fit their square peg into the round hole of the case they cite by claiming "the liberty interest is concerned with the harm experienced by the individual, not the means by which the state carried out that harm." Mem. in Opp'n [Doc. 115] at 10. Nothing could be further from true. In determining the right implicated, the Court must "focus on the allegations in the complaint to determine how [plaintiffs'] describe[] the constitutional right at stake **and what [defendant] allegedly did to deprive [plaintiffs] of that right.**" *See Collins*, 503 U.S. at 125 (emphasis added).[5]

The conduct of the defendants in the cases upon which Plaintiffs rely is not akin to the City's conduct. It is not even a close call. One set of cases involve direct, physical intrusions

---

[5] Plaintiff must demonstrate the Constitution protects that right by presenting "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur,* 805 F.3d 543, 547 (5th Cir. 2015). Plaintiff cannot simply assert "[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts," as these fail to demonstrate a Constitutional right is "clearly established as to the specific facts of the case." *Id.*

on, or into, the plaintiffs' bodies, i.e., assaults and batteries, while this case involves reassuring words made in response to a crisis.

Courts have rejected other plaintiffs' attempts to rely on factually dissimilar cases to expand the constitutional protection of bodily integrity from one area into another.  For example, in *Morris*, the Fifth Circuit rejected an attempt to liken sexual molestation or lashing a child to a chair for two days to allowing a child to sit in a teacher's lap and guiding her to type vulgar and threatening message the child did not understand.  181 F.3d at 666 (finding that cases that "are so far removed factually from the circumstances of the case at bar . . . do not inform [the Court] decision").  The Court should reject Plaintiffs' attempt to do the same thing here.

## V. The Court should dismiss Plaintiffs' state-created-danger claim.

If Plaintiff did not intend to replead their state-created-danger claim, they should not have included it in the Second Amended Complaint. *See generally* 2d Am. Compl. [Doc. 101], at 86-89. Plaintiffs claim they included the claim "to preserve it for potential appellate proceedings." Mem. in Opp'n [Doc. 115] at 23. Plaintiffs cite no precedent for that contention. Regardless, because Plaintiffs included the claim in the Second Amended Complaint, the Court should dismiss it a second time to ensure the record is clear in any potential appellate proceedings.

## VI. The Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims if the Court dismisses Plaintiffs' due-process claim.

Plaintiffs and the City agree: the Court may decline to exercise supplemental jurisdiction over state-law claims where "the district court has dismissed all claims over which it has original jurisdiction." *See* Mem. in Opp'n [Doc. 115] at 25.  Plaintiffs and the City also appear to agree—should the Court dismiss the due-process claim—judicial economy, convenience, fairness, and comity weigh in favor of the Court dismissing their state-law claims without prejudice. Plaintiffs' only argument in favor of this court retaining jurisdiction over their state-law claims

9

rests exclusive upon the Court allowing Plaintiffs to proceed on their bodily-integrity claim. *Id*. ("Plaintiffs' federal due process claim should proceed against the City, and therefore there is no basis for the Court should [sic] decline to exercise supplemental jurisdiction over Plaintiffs' state law claims."). Plaintiffs do not dispute the indisputable: should the Court dismiss the remaining federal-law claim, there is no basis for the Court retaining jurisdiction over the state-law claims asserted herein.

## CONCLUSION

The Court should grant the City's Motion to Dismiss.

RESPECTFULLY SUBMITTED, this the 15th day of April, 2024.

                                                    */s/ Clarence Webster, III*
                                                    CLARENCE WEBSTER, III

Clarence Webster, III (MSB #102111)
Kaytie M. Pickett (MSB #103202)
Adam Stone (MSB #10412)
Abbey Reeves (MSB #105720)
JONES WALKER LLP
3100 North State Street, Suite 300
Jackson, MS 39216
Telephone: (601) 949-4900
Facsimile: (601) 949-4804
cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
areeves@joneswalker.com
*Counsel for the City of Jackson*

#102190059v6

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

*/s/ Clarence Webster, III*
CLARENCE WEBSTER, III

#102190059v6